## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANSELL HEALTHCARE PRODUCTS, LLC, and ANSELL PROTECTIVE PRODUCTS, INC.,** | ) ) ) | |
| | ) | **C.A. 1:08-cv-00585-RMC** |
| **Counterclaimants,** | ) ) | |
| **vs.** | ) ) ) | |
| **TILLOTSON CORPORATION,** | ) ) | |
| **Counterclaim Defendant.** | ) ) ) | |

## TILLOTSON'S MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(e)

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, defendant Tillotson Corporation moves this Court for an Order requiring Plaintiffs (collectively, "Ansell") to provide a more definite statement of their claims against Tillotson. Federal Rule of Civil Procedure 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."

Ansell's Counterclaim does not allege facts from which Tillotson can determine what law governs Ansell's claims. See Counterclaim, ¶¶ 8-16. Consequently, Tillotson cannot frame a responsive pleading or assert appropriate defenses that respond to Ansell's causes of action. Tillotson therefore requests that this Court enter an Order requiring Ansell to provide a more definite statement of its claims.

Respectfully submitted, this 23rd day of April, 2008.

KING & SPALDING LLP

/s  Brian Meiners
Brian Meiners
Washington D.C. Bar No. 482039

1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-2706
(202) 737-0500 (telephone)
(202) 626-3737 (facsimile)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANSELL HEALTHCARE PRODUCTS, LLC, and ANSELL PROTECTIVE PRODUCTS, INC.,** | ) ) ) ) | |
| **Counterclaimants,** | ) ) | **C.A. 1:08-CV-00585-RMC** |
| **vs.** | ) ) | |
| **TILLOTSON CORPORATION,** | ) ) | |
| **Counterclaim Defendant.** | ) ) ) | |

**TILLOTSON CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION FOR A MORE DEFINITE STATEMENT**

Defendant Tillotson Corporation ("Tillotson") submits this memorandum in support of its

motion requiring Plaintiffs Ansell Healthcare Products, LLC ("Ansell Healthcare") and

Ansell Protective Products, Inc. ("Ansell Protective Products") (collectively "Ansell") to file a

more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.

**Introduction**

Ansell's counterclaims of "unfair competition" and "tortious interference with contract

and prospective economic advantage" fail to give Tillotson sufficient notice of the nature and

material elements of Ansell's claims. Because Ansell does not alleged the facts required for

Tillotson to determine what law governs Ansell's claims, Tillotson cannot know what bases for a

Rule 12 motion are available to it, or -- if none are available -- what affirmative defenses it

should allege in its answer. Tillotson therefore cannot frame a proper response to Ansell's

Counterclaim. For this reason, this Court should grant Tillotson's motion for a more definite

statement.

**Facts**

Tillotson Corporation owns United States Patent No. Re. 35,616 ("the '616 patent"),

titled "Elastomeric Covering Material and Hand Glove Made Therewith."    On May 30, 2007,

Tillotson filed a Section 337 Complaint with the United States International Trade Commission

("ITC") requesting that ITC institute an investigation into the unlawful importation into the

United States, the sale for importation within the United States, and/or the sale within the United

States after importation of certain nitrile gloves that utilize the invention claimed in Tillotson's

valid United States patent. See In the Matter of Certain Nitrile Gloves, USITC Inv. No. 337-TA-

608. The ITC instituted Investigation Number 337-TA-608 on July 6, 2007. See 72 Fed. Reg.

37,052 (July 6, 2007). The ITC action named Ansell's parent company, Ansell Ltd., a

respondent in that investigation.[1]  See id.

On September 6, 2007, Tillotson moved to amend its original complaint to include

several additional respondents, including Ansell Healthcare and Ansell Protective Products. See

Order 21, In the Matter of Certain Nitrile Gloves, USITC Inv. No. 337-TA-608. That motion

was granted on September 20, 2007. See id.; 72 Fed. Reg. 5884 (October 17, 2007). Trial is

scheduled to begin in the ITC investigation on May 19, 2008.

On April 3, 2008, Ansell filed this counterclaim with the ITC under 19 U.S.C. § 1337(c)

and 19 C.F.R. § 210.14(e). Notice of Removal (filed April 4, 2008), ¶ 2. A day later, Ansell

removed the counterclaims to this Court under 19 C.F.R. § 210.14(e). Id., ¶ 3. Ansell invokes

this Court's jurisdiction under the diversity statute, 28 U.S.C. § 1332, and asserts that venue is

---

[1] On August 16, 2007, the ITC instituted Investigation Number 337-TA-612, which also involves
Tillotson's patented nitrile gloves. See In the Matter of Certain Nitrile Rubber Gloves, 337-TA-
612; 72 Fed. Reg. 47072 (August 22, 2007). On September 19, 2007, the ITC consolidated
Investigation Number 337-TA-608 with Investigation Number 337-TA-612. See Order 19, In
the Matter of Certain Nitrile Gloves, USITC Inv. No. 337-TA-608; 72 Fed. Reg. 5884 (October
17, 2007).

proper because "a substantial part of the events ... giving rise to the claim occurred" in this District. Counterclaim (filed April 3, 2008), ¶¶ 4, 5, 7 (citing 28 U.S.C. § 1391(a)(2)). The Counterclaim seeks generally various damages on claims of "unfair competition" and "tortious interference with contract and/or prospective economic advantage." Id., ¶¶ 17-24. Ansell apparently bases both of its claims on Tillotson's alleged "bad faith" procurement and enforcement of "a fraudulently procured patent" in unidentified "district court" lawsuits. Id., ¶¶ 10, 13.

Ansell's invocation of diversity jurisdiction implies that its claims arise under the law of *some* state or territory. Ansell's Counterclaim does not, however, allege:

- ❖ which "district court lawsuits" it alleges are "not designed to obtain an adjudication on the merits;"

- ❖ which "settlements" of those lawsuits Ansell believes are "coerced;"

- ❖ where the lost sales or interference with contract or prospective economic advantage occurred; or

- ❖ where Tillotson supposedly "publicized its litigations and its coerced settlements" to Ansell's disadvantage.

See Counterclaim, ¶¶ 10, 15, 16.

## Argument and Citations

### I.    The Standard That This Court Must Apply

Ansell must restate any claims "so vague and ambiguous that [Tillotson] cannot reasonably frame a response." Fed. R. Civ. Pro. 12(e); see also McQueen v. Woodstream Corporation, 244 F.R.D. 26, 35 (D.D.C. 2007) (granting motion for more definite statement where plaintiff failed to allege necessary elements of his fraudulent misrepresentation claim). Tillotson cannot reasonably frame its response if Ansell's Counterclaim denies Tillotson fair notice of what Ansell's counterclaims are and on what grounds they rest. Fed. R. Civ. P. 12(e);

see Dorsey v. American Express Company, 499 F. Supp. 2d 1, 3 (D.D.C. 2007) (granting motion for failure to give proper notice of what specific actions and events breached defendant's fiduciary obligation).

Rule 12(e) requires fair notice in order to give defendants like Tillotson a chance to properly plead and prepare their defense. If Ansell's counterclaim does not "give fair notice to [Tillotson] of the claims being asserted, sufficient to prepare a responsive answer, [and] to prepare an adequate defense," it does not satisfy the minimum pleading requirements. See Clariett v. Rice, 2005 U.S. Dist. LEXIS 42884, *14 (D.D.C. Oct. 17, 2005) (granting motion) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977)) (copy attached as Exh. A).

Moreover, a claim that does not allege the "material elements necessary to sustain recovery under some viable legal theory" does not provide sufficient notice. Id. Neither does one that fails to give the defendant knowledge of "what [it] has been charged with, or what [it] must defend." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 111 (D.D.C. 2003) (granting motion). Just as Rule 12(e) requires a more definite statement in those situations, it requires one here.

## II.    The Absence of Alleged Facts Prevents Tillotson From Being Able to Ascertain Which Law to Apply.

The District of Columbia's choice-of-law rules apply here. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Young Women's Christian Ass'n v. Allstate Ins. Co. of Canada, 275 F.3d 1145, 1150 (D.C. Cir. 2002). In deciding which jurisdiction's law to apply in a tort case, this Court "evaluate[s] the governmental policies underlying the applicable law and determine[s] which jurisdiction's policy would be more advanced by the application of its laws to the facts of the case under review." Drs. Goover, Christie & Merritt v. Burke, 917 A.2d 1110, 1117 (D.C. 2007). In doing so, the Court considers:

- ❖ where the injury occurred;

- ❖ where the conduct causing the injury occurred;

- ❖ the domicile, residence, nationality, place of incorporation and place of business of the parties; and

- ❖ where the relationship is centered.

Id. "When both jurisdictions have an interest in applying their own laws to the facts of the case, the forum law will be applied unless the foreign jurisdiction has a greater interest in the controversy." Id.

The absence of relevant alleged facts from Ansell's Counterclaim, however, makes Tillotson's use of these choice-of-law rules virtually impossible. Ansell alleges that Tillotson publicized certain unidentified lawsuits (and certain settlements of those lawsuits) to unidentified customers, causing those customers not to purchase gloves from unidentified "competitors," including (but apparently not limited to) Ansell. Counterclaim, ¶¶ 10, 15, 16. Tillotson therefore cannot determine:

- ❖ *where the injury occurred*, because the Complaint fails to identify where Tillotson allegedly filed, or threatened to file, the bad-faith lawsuits;

- ❖ *where the conduct causing the injury occurred*, because the Complaint fails to identify both the site of the lawsuits or which of Ansell's suppliers or customers Tillotson allegedly coerced into settlements or licenses; and

- ❖ *where the relationship is centered*, because the Complaint does not identify which suppliers have allegedly entered into licenses with Tillotson, or which customers Ansell has allegedly lost to Tillotson.

Ansell alleges facts from which Tillotson can determine only one of the four choice-of-law criteria: "the domicile, residence, nationality, place of incorporation and place of business of the parties." Counterclaim, ¶¶ 1-3; see Drs. Goover, Christie & Merritt, 917 A.2d at 1117. That single criterion, however, suggests four possible choices of law -- Delaware, Georgia, New

Jersey, and Massachusetts -- none of which are the default "forum law."  See <u>Drs. Goover,</u>
<u>Christie & Merritt v. Burke</u>, 917 A.2d at 1117.

## III.    Tillotson Cannot Properly "Prepare its Defense."

No one universal standard defines "unfair competition" or "tortious interference," either
with contract or with prospective economic advantage.  Because Ansell's Counterclaim fails to
allege facts from which Tillotson can determine the choice of law, Tillotson cannot know what
"material elements" compose Ansell's claims, or what "[it] must defend."  See <u>Clariett</u>,
2005 U.S. Dist. LEXIS 42884, *14;  <u>Burnett</u>, 274 F. Supp. 2d at 111.  Moreover, the undue
prejudice to Tillotson is immediate, because Tillotson cannot evaluate the viability of a Rule
12(b)(6) motion without knowing what substantive law governs Ansell's claims.  See <u>generally</u>
<u>Powers-Bunce v. District of Columbia</u>, 479 F. Supp. 2d 146, 158 (D.D.C. 2007) (granting motion
for more definite statement to avoid adjudicating issues and defenses that may dispose of the
claims at the pleadings stage).

Even restricted to the four jurisdictions suggested by the single choice-of-law criterion
for which Ansell has alleged relevant facts, important legal differences remain that prevent
Tillotson from preparing its defense.  The laws of "unfair competition" and "tortious
interference" in these states vary on multiple points, including whether Ansell has standing,
where the alleged misconduct must occur, what other facts Ansell must allege, and what
affirmative defenses are available to Tillotson.[2]  Tillotson cannot mitigate this immediate
prejudice through discovery.

---

[2] Work product protection obviously attaches to legal theories that Tillotson *might* assert in
response to a Counterclaim from which Tillotson can determine the governing law.  Tillotson
obviously declines to waive that protection at this point.

## Conclusion

For the reasons mentioned above, this Court should grant Tillotson relief under Rule 12(e) and require Ansell to submit a more definite statement.

This 23rd day of April, 2008.

KING & SPALDING LLP

   /s  Brian Meiners
Brian Meiners
Washington D.C. Bar No. 482039

1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-2706
(202) 737-0500 (telephone)
(202) 626-3737 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel on record:

On behalf of Ansell:

Thomas B. Kenworthy
David W. Marston Jr.
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000 (telephone)
(215) 963-5001 (facsimile)

and

David M. Morris
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000 (telephone)
(202) 739-3001 (facsimile)

This 23rd day of April, 2008.

KING & SPALDING LLP


 /s  Brian Meiners
Brian Meiners
Washington D.C. Bar No. 482039

1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-2706
(202) 737-0500 (telephone)
(202) 626-3737 (facsimile)

# EXHIBIT A

LEXSEE 2005 U.S. DIST. LEXIS 42884

**MARA K. CLARIETT, Plaintiff, v. CONDOLEEZZA RICE, [1] Secretary, United States Department of State, Defendant.**

1  The Court will grant plaintiff's "Motion for Substitution of Party" [Dkt. # 11]. Pursuant to Fed. R. Civ. P. 25(d)(1), the Court automatically substitutes current Secretary of State Condoleezza Rice for her predecessor, former Secretary of State Colin Powell.

**Civil Action No. 04-2250 (RJL)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 42884*

**October 17, 2005, Decided**
**October 18, 2005, Filed**

**SUBSEQUENT HISTORY:** Appeal dismissed by *Clariett v. Rice, 2006 U.S. App. LEXIS 20420 (D.C. Cir., Aug. 7, 2006)*

**COUNSEL:** [*1] MARA K. CLARIETT, Plaintiff, Pro se, Vienna, Austria.

For COLIN POWELL Secretary, United States Department of State, Defendant: Peter S. Smith, UNITED STATES ATTORNEY'S OFFICE, Civil Division, Washington, DC.

**JUDGES:** RICHARD J. LEON, United States District Judge.

**OPINION BY:** RICHARD J. LEON

**OPINION**

**MEMORANDUM OPINION and ORDER**

This matter is before the Court on consideration of defendant's motion to dismiss or, in the alternative, for summary judgment. Having considered defendant's motion, plaintiff's opposition, and the entire record of the case, the Court will grant the motion in part, and deny the motion in part without prejudice. In addition, the Court will order plaintiff to submit a more definite statement.

I. BACKGROUND

Plaintiff, "an American, black, female citizen" from California, was an employee of the American Embassy in Vienna, Austria from May 1996 through January 2000. Compl., P 2. Plaintiff entered into a personal services contract with the United States Department of State ("State Department") effective May 13, 1996. Def.'s Mot., Ex. 6 (Contract No. SOAU990-96-P-0034). According to the contract, plaintiff was to serve as an Administrative Assistant for the United [*2] States delegation to the Organization for Security and Cooperation in Europe ("USOSCE") for annual compensation of $ 21,344. *Id.* The term of the contract was one year, and the parties renewed the contract in 1997 and 1998. [2] *See id.* (Amendment of Solicitation/Modification of Contract, Nos. M0180 and M0106).

2  The contract renewal included a position upgrade and a salary increase to $ 34,165 effective June 16, 1998. Def.'s Mot., Ex. 6 (Amendment of Solicitation/Modification of Contract, No. M0106). Apparently the parties did not renew the contract formally upon its expiration effective May 12, 1999.

The USOSCE Executive Office found that the delegation lacked sufficient administrative resources to manage funds, track movements of contract staff administer contracts, or handle complex personnel matters. Def.'s Mot., Ex. 7 (DeSoto Aff.) at 5. Consequently, it established a "mission staffing unit" within the USOSCE, headed by a Foreign Service Officer to whom the Administrative Assistant, plaintiff, would [*3] report. *Id.*, Ex. 7 (Request for USOSCE Program Personnel Position and Proposed Position Description), Ex. 8 at 3, 5-6. In light of this organizational change, the work requirements of the Administrative Assistant were revised

somewhat. *Id.*, Ex. 8 at 6. Plaintiff allegedly opposed the restructuring plan, and actively resisted its implementation. *Id.* at 7. Evidently, plaintiff considered the revised work requirements a demotion to a purely clerical job. [3] *See* Compl., P 16(c).

> 3 Plaintiff was unsuccessful in an attempt to revise and expand her work requirements. *See* Def.'s Mot., Ex. 15 (February 4, 1999 memorandum regarding plaintiff's proposed work requirements).

Plaintiff alleges that she endured "hostile work environment, harassment, and racial and gender discrimination" under Jeffrey Hovenier, who became her supervisor in April 1999. Compl., P 16(c). Under Oscar DeSoto, who became her supervisor in December 1999, plaintiff alleges that her work environment "changed drastically." *Id.* [*4] For the alleged harassment and discrimination suffered under Hovenier's supervision, she states that she filed a formal complaint of discrimination with the Embassy Personnel Officer on December 19, 1999. *Id.*, P 6. Approximately one month later, she alleges that DeSoto demoted her to a purely clerical position on January 14, 2000 and placed her on probation, solely on the basis of her race and gender. *Id.*, PP 6,16(c). She further alleges that, barely two weeks later, on, January 24, 2000, DeSoto fired her. [4] *Id.*, PP 6,16(c), 17(4); Def.'s Mot., Ex. 10 (Amendment of Solicitation/Modification of Contract, No. M0005, effective January 25, 2000, and supporting memoranda).

> 4 A termination letter from the Embassy's Personnel Officer stated that plaintiff was separated for unsatisfactory performance, and that she was placed on administrative leave until February 25, 2000. Def.'s Mot., Ex. 10 (January 26, 2000 letter from Pat Lacina, Personnel Officer).

Plaintiff challenged her termination by filing a complaint [*5] with the State Department's Office of Equal Employment Opportunity and Civil Rights on March 3, 2000. [5] Compl., P 7; Def.'s Mot., Ex. 1 (Formal Complaint of Discrimination and attachment). Although the agency allegedly suggested a desire to settle the case after its initial investigation, plaintiff stated that the State Department issued its Final Agency Decision in November 2002 upholding the termination. Compl., PP 8-10. Plaintiff appealed the agency's decision to the Equal Employment Opportunity Commission ("EEOC") in December 2002. *Id.*, P 11. On May 13, 2004, the EEOC affirmed the State Department's decision, and in June 2004 denied plaintiff's request for reconsideration. *Id.*, PP 13-14 & Ex. B (EEOC Decision), D (Denial of Request for Reconsideration).

> 5 Plaintiff amended her Formal Complaint of Discrimination in March 2000. Compl., P 7; Def.'s Mot., Ex. 2 (Plaintiff's March 3, 2000 Memorandum). She alleged that she was scheduled to travel to the Republic of Georgia to serve as an election observer, and that members of the USOSCE delegation prevented her participation. Def.'s Mot., Ex. 1 at 1. According to plaintiff, such interference constituted harassment and reprisal. *Id.* at 2-5.

[*6] Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as amended, *42 U.S.C. § 2000e et seq.*, and under the Rehabilitation Act of 1973, as amended, *29 U.S.C. § 791 et seq.* Compl., P 41. She alleges that defendant terminated her employment unlawfully on the bases of her race, color, gender, and national origin, and in reprisal for having filed a complaint of discrimination. Id., P 44. In addition to these discrimination claims, plaintiff brings tort claims for "the publication of defamatory statements, . . . damage to her reputation, same, mortification, and emotional distress." [6] *Id.*, P 47.

> 6 The Court presumes that the "emotional distress" claim is a claim of intentional infliction of emotional distress. *See* Compl., P 46.

## II. DISCUSSION

### A. Standard of Review

1. Motion to Dismiss

A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts in support of his claim [*7] that would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80.(1957).* The ruling on a motion under *Rule 12(b)(6)* does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).* The factual allegations of the complaint are presumed to be true and are construed liberally in plaintiff's favor. *See, e.g., United States v. Phillip Morris, Inc., 116 F. Supp. 2d 131, 135 (D.D.C. 2001).* The Court is not obligated, however, to draw factual inferences that are not supported by the facts alleged. *Kowal v. MCI Communications Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271,1276 (D.C. Cir. 1994).* Because the Court has considered matters outside of the pleadings that the parties presented in support of their respective positions, it treats the motion in part as a motion for summary judgment. *See Fed. R. Civ. P. 12(b).*

2005 U.S. Dist. LEXIS 42884, *

2. Motion for Summary Judgment

Summary judgment is granted to the movant if it has shown, when the facts are viewed in the light most favorable to the non-movant, that there [*8] are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56(c)*. A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id. at 255; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*.

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 322 U.S. App. D.C. 35, 101 F.3d 145, 150 (D.C. Cir. 1996)*.

*B. Plaintiff has not exhausted administrative remedies with respect to [*9] her claims for hostile work environment, discrimination based on a disability, and reprisal for whistleblower activity.*

Generally, there are two prerequisites to maintaining a Title VII claim in district court: a plaintiff must timely file an EEOC charge and she must timely file a civil complaint after receipt of a right-to-sue letter. *See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)*. Title VII complaints are liberally construed. *See Caldwell v. Servicemaster Corp., 966 F. Supp. 33, 49 (D.D.C. 1997)*. Liberal interpretation, however, cannot be used to bypass Title VII's administrative processes. *Park v. Howard University, 315 U.S. App. D.C. 196, 71 F.3d 904, 907 (D.C. Cir. 1995), cert. denied, 519 U.S. 811, 117 S. Ct. 57, 136 L. Ed. 2d 20 (1996)*. The requirement that a plaintiff pursue employment discrimination claims before the EEOC prior to filing a civil action in federal court serves two important purposes: notice to the employer of claims of discrimination against it, and a narrowing of the issues for prompt adjudication and decision. *See Laffey v. Northwest Airlines, Inc., 185 U.S. App. D.C. 322, 567 F.2d 429, 472 n.235 (D.C. Cir. 1976), cert. denied, 434 U.S. 1086, 98 S. Ct. 1281, 55 L. Ed. 2d 792 (1978)*. [*10] A lawsuit following an EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ., 71 F.3d at 907* (quoting *Cheek v. Western*

*and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)* (citations and internal quotation marks omitted)).

The State Department's Office of Equal Employment Opportunity and Civil Rights accepted the following issue for investigation:

> That because of [plaintiff's] race, color, sex, national origin and reprisal, [she was:] 1) not allowed to perform the duties of [her] position as an Administrative Assistant to the U.S. OSCE Delegation; 2) terminated from [her] position as an Administrative Assistant to the U.S. OSCE Delegation; 3) denied the opportunity to serve as an election observer in the Republic of Georgia; and 4) denied payment of more than 260 hours of accrued overtime and 240 hours of accrued vacation leave [she is] entitled to for [her] time with the OSCE Delegation.

Def.'s Mot., Ex. 4 (May 1, 2000 letter regarding EEO Case Number 00-38). These were indeed the claims raised in [*11] plaintiff's Formal Complaint of Discrimination. *See id.*, Ex. 1 (Formal Complaint of Discrimination and attached Memorandum). In addition these were the only matters investigated at the agency level, and the only matters presented to the EEOC on appeal. *See* Def.'s Mot., Ex. 5 (Report of Investigation), 14 (EEOC Decision). Conspicuously absent were plaintiff's claims for hostile work environment, reprisal for whistleblower activity, and claims under the Rehabilitation Act. [7] *See* Def.'s Ex. 1-2 (Formal Complaint of Discrimination and March 30, 2000 Amendment, respectively), Ex. 3 (EEO Counselor's Report) at 1-2, Ex. 5 (Report of Investigation) at 1. It cannot be said that plaintiff gave defendant fair warning of these claims against the agency, such that the agency had an opportunity to address or correct them short of litigation. Plaintiff's failure to exhaust her administrative remedies with respect to these three claims bars their consideration by the Court. *See Hunt v. District of Columbia Dep't of Corrections, 41 F.Supp.2d 31, 36 (D.D.C. 1999)* (dismissing gender discrimination claim for failure to exhaust admin remedies because neither checked off box [*12] on EEOC complaint form nor mentioned claim in complaint itself).

7  On the Formal Complaint of Discrimination, plaintiff checked boxes indicating her intent to file a claim for discrimination based on race, color, reprisal, national origin, and sex. *See* Def.'s Mot., Ex. 1 at 1. Neither this form nor her lengthy supporting memorandum nor her amendment

mentions hostile work environment, whistle-
blower activity, or disability discrimination. Nor
is it clear from plaintiff's descriptions of addi-
tional proposed amendments that she intended to
raise claims of hostile work environment, reprisal
for whistleblower activity, or disability discrimi-
nation. *See* Pl.'s Opp. at 2-4.

*C. Plaintiff fails to state a claim regarding the process-
ing of her discrimination complaint.*

Plaintiff alleges that the State Department acted in
bad faith in its investigation of her discrimination com-
plaint. *See* Compl., P 34-40. She alleges that the depart-
ment conducted two investigations, the second of which
was designed "to suppress [*13] sworn testimony and
evidence collected in the initial official investigation."
*Id., P* 35. In addition, plaintiff asserts that the Report of
Investigation to the EEOC violated applicable regula-
tions, and that it was "incomplete, thus inaccurate, there-
fore misleading, and therefore false." *Id., P* 36. For de-
fendant's alleged wrongful acts, plaintiff demands,
among other things, an order compelling defendant to
produce a true and complete Report of Investigation that
is consistent with the "results of the initial Agency inves-
tigation conducted . . . in May 2000." *Id., P* 51(1-2). This
claim is not actionable.

Plaintiff's only cause of action under Title VII is for
discrimination. The provisions of Title VII "do[] not cre-
ate an independent cause of action for the mishandling of
an employee's discrimination complaints." *Young v. Sul-
livan, 733 F.Supp. 131, 132 (D.D.C. 1990),* affd, *292
U.S. App. D.C. 88, 946 F.2d 1568 (D.C.Cir. 1991); see
Nelson v. Greenspan, 163 F.Supp.2d 12, 18 (D.D.C.
2001)* (dismissing claim that defendant failed to follow
proper procedure in the processing of complaints which
ultimately resulted [*14] in settlement agreement).

*D. The Court will order plaintiff to file a more definite
statement.*

The Court has reviewed the complaint, keeping in
mind that a complaint filed by a *pro se* litigant is held to
a less stringent standard than a formal pleading drafted
by a lawyer. *See Haines v. Kerner, 404 U.S. 519, 520, 92
S. Ct. 594, 30 L. Ed. 2d 652 (1972).* Even a *pro* se liti-
gant, however, must comply with the Federal Rules of
Civil Procedure. *Jarrell v. Tisch, 656 F. Supp. 237, 239
(D.D.C. 1987).* Rule 8(a) of the Federal Rules of Civil
Procedure requires that complaints contain "a short and
plain statement of the claim showing that the pleader is
entitled to relief." The purpose of the minimum require-
ment of *Rule 8* is to give fair notice to defendants of the
claims being asserted, sufficient to prepare a responsive
answer, to prepare an adequate defense, and to determine

whether the doctrine of *res judicata* applies. *Brown v.
Califano, 75 F.R.D. 497, 498 (D.D.C. 1977).*

Plaintiff's legal training has not served the parties or
the Court well. [8] Her complaint is poorly organized, and
frequently makes vague or conclusory [*15] statements.
For example, it is unclear whether plaintiff exhausted
administrative remedies with respect to other Title VII
claims, whether any of her claims are time-barred, or
whether she adequately alleges discrimination on other
bases under Title VII, Additionally, plaintiff raises
claims of intentional infliction of emotional distress and
defamation without any supporting factual allegations.
Further, with respect to plaintiff's contract and tort claims
for money damages against the State Department, it is
unclear whether plaintiff has presented the claims to the
agency, and, if so, whether this Court has subject matter
jurisdiction over such claims. It is no surprise, then, that
defendant finds the pleading so vague and ambiguous
that it now moves for a more definite statement. *See*
Def.'s Mot at 21. The motion will be granted.

8    Plaintiff represents that she is a licensed
member of the California State Bar. *See* Def.'s
Mot., Ex. 1 (March 3, 2000 Memorandum) at 3.

III. CONCLUSION

The Court concludes [*16] that plaintiff failed to
exhaust administrative remedies with respect to her
claims for hostile work environment, reprisal for whis-
tleblower activity, and for discrimination under the Re-
habilitation Act. In addition, the Court concludes that
plaintiff fails to state a claim upon which relief can be
granted regarding the processing of her discrimination
claim. Defendant's motion will be granted in part and
denied in part, and plaintiff will be ordered to file *a* more
definite statement.

Accordingly, it is hereby

ORDERED that plaintiffs motion to substitute [Dkt.
# 11] is GRANTED. It is further

ORDERED that defendant's motion to dismiss [Dkt.
# 13] is GRANTED IN PART. Plaintiff's claim regarding
the processing of her discrimination complaint is dis-
missed for failure to state a claim upon which relief can
be granted. In all other respects, the motion to dismiss is
DENIED WITHOUT PREJUDICE. It is further

ORDERED that defendant's motion for summary
judgment [Dkt. # 14] is GRANTED IN PART, having
concluded that plaintiff failed to exhaust administrative
remedies on her claims of hostile work environment,
reprisal for whistleblower activity, and discrimination
based on disability. [*17] In all other respects, the sum-

2005 U.S. Dist. LEXIS 42884, *

mary judgment motion is DENIED WITHOUT PREJU-
DICE. It is further

    ORDERED that, within 45 days of entry of this Or-
der, plaintiff shall file a more definite statement. Plain-
tiff's failure to file a more definite statement timely may
result in dismissal of this action.

    SO ORDERED.

/s/

RICHARD J. LEON

United States District Judge

Date: October 17, 2005