**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ANSELL HEALTHCARE PRODUCTS
LLC, and ANSELL PROTECTIVE
PRODUCTS INC.,**

        **Counterclaimants,**

    **v.**

**TILLOTSON CORPORATION,**

        **Counterclaim Defendant.**

**C.A. 1:08-CV-585-RMC**

---

**TILLOTSON CORPORATION'S MEMORANDUM IN SUPPORT OF ITS
OPPOSITION TO ANSELL'S MOTION FOR RECONSIDERATION**

Despite Rule 59's stringent requirements, Ansell fails to allege any newly discovered evidence, any new law, or any clear error of law or fact affecting the Court's July 30 Order transferring this case to the District of Delaware. Ansell instead seeks reconsideration based on supposed "meritorious grounds" stated inaccurately and (even if true) insufficiently to satisfy Rule 59(e). The Court should deny Ansell's Motion for Reconsideration ("Motion").

**FACTS**

Ansell's Motion raises a number of facts that -- while not "newly discovered evidence" under Rule 59(e) -- demand greater context than its Motion provides. The Court should know, for example, that:

        ***Ansell chose first to challenge Tillotson's patents in Delaware because that court "has a national reputation for the expeditious and insightful handling of patent cases."*** Ansell's Answering Brief in Opposition to Tillotson's Motion to Transfer Venue to the Northern District of Georgia, p. 3 ("Ansell's Opposition to Motion to Transfer") (Exh. A). As late as July

2007 Ansell argued that the Delaware court should provide the venue for the parties' disputes, even though the "crisis" that Ansell now describes -- a single judicial vacancy in the district court -- was six months old by then. *See* Ansell's Reply Brief in Support of its Motion to Enjoin the Pursuit of New Later-Filed Georgia Action, p. 1 ("Ansell's Reply Brief to Enjoin") (Exh. B) (filed July 9, 2007); Exhibit C to the Motion [D.E. 22-5].

**After filing its claims in Delaware, Ansell sought to delay the Georgia litigation from proceeding against it** by arguing that "[w]here the same operative facts are at issue between parties in both suits, an injunction against the pursuit of a related entity in a later-filed suit is appropriate." Ansell's Reply Brief to Enjoin, p. 5 (Exh. B).

**Ansell first successfully opposed, and then sought and was granted, stays of the Delaware cases.** *See* Ansell's Brief in Opposition to Motion to Stay Proceedings Pending the Outcome of the ITC Investigation, p. 2 ("Ansell's Opposition to Motion to Stay") (Exh. C); Ansell's Unopposed Motion for Stay Pursuant to 28 U.S.C. § 1659(a), p. 2 (Exh. D) ("Ansell's Motion to Stay"); Nov. 14, 2007 Order, p. 1 (Exh. E) (granting a stay). Initially opposing a transfer of the Delaware actions, Ansell argued that the Delaware actions took precedence over the earlier-filed Georgia ones because suits between patent owners and manufacturers have priority over suits between patent owners and customers, and are thus exempt from the first-filed rule. *See* Ansell's Opposition to Motion to Transfer, pp. 9-10 (Exh. A). Ansell also opposed Tillotson's Motion to Stay the Delaware cases pending the outcome of the ITC investigation. *See* Ansell's Opposition to Motion to Stay, p. 5. After defeating Tillotson's motions, Ansell later denied that it was a manufacturer, and invoked its statutory right to a stay in Delaware "until the determination of the ITC … becomes final." *See* Ansell's Response to Tillotson's First Set of

Interrogatories in the Delaware Litigation, p. 5 (Exh. F); Ansell's Unopposed Motion for Stay, p. 2 (Exh. D).

▮▮▮▮▮    *In February 2008, Ansell learned that, after the Delaware court lifts the stays there, Ansell will face a motion* arising from Ansell's alleged violation of the Delaware protective order "by wrongly refusing to return inadvertently produced privileged documents and by using the privileged documents in the ITC proceedings." Feb. 26, 2008 Memorandum Order, pp. 1-2 (Exh. G).

▮    *About a month after that development in Delaware, Ansell removed and filed last-minute counterclaims against Tillotson in this Court.* Ansell could have asserted those counterclaims in the ITC as much as six months earlier; had it waited just one more month, in fact, its counterclaims would have been untimely. *See* Notice of Removal [D.E. 1] (case filed on April 4, 2008); Order 28, *In the Matter of Certain Nitrile Gloves,* U.S. Int'l Trade Comm'n, Inv. No. 337-TA-608, -612, p. 6 (ITC hearing scheduled to commence on May 19, 2008) (Exh. H); 19 C.F.R. § 210.14 (counterclaim from an ITC action must be removed no later than ten business days before commencement of the ITC hearing).

## ARGUMENT

### I.    Ansell Cites the Wrong Standard of Decision.

Ansell begins its Motion by claiming that previously unargued "meritorious grounds for not transferring this case to the District of Delaware" justify reconsideration. Motion at 2 [D.E. 22-2]. Reconsideration, however, is an *extraordinary* remedy not to be granted lightly. *See Brown v. Wachovia Bank,* 244 F.R.D. 16, 19 (D.D.C. 2007) (Collyer, J.) ("the reconsideration and amendment of a previous order is an extraordinary measure") (citing *Firestone v. Firestone,*

76 F.3d 1205, 1208 (D.C.Cir.1996)); *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 45 (D.D.C. 2005) (denying motion for reconsideration).

Ansell is entitled to reconsideration only if it demonstrates: "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Dean v. Am. Fed'n of Gov't Employees*, 549 F. Supp. 2d 115, 120 (D.D.C. 2008) (motion for reconsideration denied). Ansell may not use a motion for reconsideration as an opportunity to reargue facts and theories "upon which the court has already ruled" or that could have been heard during the pendency of the previous motion. *Id.* (quoting *Funds from Prudential Sec.*, 245 F. Supp. 2d at 44); *Sellmon v. Rielly*, No. 06-01650, 2008 WL 2470002, *1 (D.D.C. June 20, 2008) (Exh. I) (denying motions for reconsiderations) (quoting *Katten v. Dist. of Columbia*, 995 F. 2d 274, 276 (D.C. Cir. 1993)).

Ansell's Motion thus requires newly discovered evidence that could not have been heard before the previous order issued, a change in controlling law or a clear error of law or fact. "Meritorious grounds" for a different decision is not enough.

## II.     The "Meritorious Grounds" Urged by Ansell Do Not Justify Reconsideration.

Ansell's supposedly "meritorious grounds" for transfer include two purported facts not previously considered by the Court: (1) the related cases pending in Delaware are stayed; and (2) that district court is in "crisis." Motion at 3 [D.E. 22-2]. Neither suggest a change in controlling law since this Court's July 30 Order, and neither suggest that the Court committed a clear error of law or fact.

### A.     Ansell Adduces No "Newly Discovered Evidence" Under Rule 59.

Neither of the supposedly "meritorious grounds" on which Ansell bases its Motion were, as required by Rule 59(e), unavailable during the pendency of Tillotson's earlier motion to

dismiss or transfer. Both alleged facts predate that earlier motion, and Ansell could have sought to bring them to the Court's attention anytime during the eight weeks between Tillotson's filing of its Reply Brief and this Court's order transferring the case. *See* Tillotson's Reply Brief to Motion to Dismiss or in the Alternative to Transfer (filed June 6, 2008) [D.E. 12]; Court's Memorandum Opinion (signed July 30, 3008) [D.E. 20].

That neither party briefed the advisability of transfer to the District of Delaware is irrelevant under Rule 59(e): "This Court may order the transfer of a case, sua sponte, pursuant to 28 U.S.C. § 1404(a), which authorizes the transfer of cases 'for the convenience of parties and witnesses, [and] in the interests of justice.'" *See Wells v. Liddy*, 115 F. Supp. 2d 1, 1 (D.D.C. 2000*); see also Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006) ("A court may sua sponte cure jurisdictional and venue defects under the federal transfer statute").

For these reasons alone these supposedly new facts do not justify reconsideration.

B.    Ansell Sought the Stay in Delaware that It Now Tries to Avoid.

Moreover, Ansell neglects to inform this Court of additional undisputed facts that undermine these purported bases for reconsideration. The Delaware court has indeed stayed the actions that Ansell filed -- but at *Ansell's* request. *See* Ansell's Unopposed Motion for Stay, p. 2 (Exh. D). Ansell thus seeks to dodge transfer to Delaware in order to avoid a stay that it requested, and to leapfrog this case ahead of the ones it filed in Delaware in 2006 and early 2007.

The first-to-file rule bars Ansell's ploy. When two actions involving the same subject matter are pending, the earlier-filed action should proceed to the exclusion or stay of the later-filed one. *See Wash. Metro Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its

conclusion first") (citation omitted); *National R.R. Passenger Corp. v. R. and R Visual, Inc.*, No. 05-822, 2007 WL 2071652, *4 (D.D.C. July 19, 2007) (Exh. J) (the rule requires the action which is commenced first is to be allowed to proceed to its conclusion first). As Ansell argued to the Delaware court, "[w]here the same operative facts are at issue between parties in both suits, an injunction against the pursuit of a related entity in a later-filed suit is appropriate." Ansell's Reply Brief to Enjoin, p. 5 (Exh. B).

      C.     <u>No "Crisis" Threatens to Paralyze Ansell's Claims in the Delaware District Court.</u>

     A "serious crisis" supposedly grips the District of Delaware and "strongly militates against transferring this case to that District." Ansell's Motion at 3 [D.E. 22-2]. That "crisis" arises from a single "unusually long vacancy on the federal bench" there. *Id.* Transfer of this case to that jurisdiction would supposedly "exacerbate[]" the "strain that already exists" in that court. *Id.*

     Just as it has on whether a stay in Delaware is advisable, Ansell's view of the Delaware court's capabilities has apparently changed. When Tillotson sought to consolidate the later-filed Delaware cases with others in the Northern District of Georgia, Ansell touted the Delaware court's "reputation for the expeditious and insightful handling of patent cases." Ansell's Opposition to Motion to Transfer, pp. 3, 10 (Exh. A). Ansell also argued in July 2007 -- six months into the "crisis" -- that Delaware, over any other court, was most suited to decide the validity and enforceability of the '616 patent. *See* Ansell's Reply Brief to Enjoin, p. 5 (Exh. B)

     Ansell also ignores that the Delaware court will almost certainly consolidate this case with the other two already pending before Judge Farnan. A "crisis" that has allegedly caused the assignment of some "newly filed" cases to federal judges in other district courts does not threaten to slow the administration of a case likely to be consolidated with others already assigned to Judge Farnan and stayed by him at Ansell's request. Even if (contrary to fact) Ansell

had raised this issue before the Court ruled on Tillotson's motion, the supposed "crisis" in

Delaware does not justify litigating Tillotson's patent issues in Washington, DC as well.

## CONCLUSION

For the foregoing reasons, Tillotson respectfully submits that the Court deny Ansell's

Motion for Reconsideration.

Respectfully submitted this 18th day of August, 2008.

/s  Brian Meiners
Brian R. Meiners (D.C. Bar No. 482039)

KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-2706
Telephone:  (202) 626-2910

/s/ Asha C. Jennings
M. Russell Wofford, Jr.
Stephen P. Cummings
Asha C. Jennings

KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4711

Admitted *Pro Hac Vice*

*Counsel for Counterclaim Defendant*
*Tillotson Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ANSELL HEALTHCARE PRODUCTS
LLC, and ANSELL PROTECTIVE
PRODUCTS INC.,

                Counterclaimants,

      v.

TILLOTSON CORPORATION,

             Counterclaim Defendant.

C.A. 1:08-CV-585-RMC

---

**[PROPOSED] ORDER DENYING COUNTERCLAIMANTS' MOTION FOR**
**RECONSIDERATION OF THE COURT'S JULY 30, 2008 ORDER**
**<u>TRANSFERRING THE CASE TO THE DISTRICT OF DELAWARE</u>**

Upon consideration of the Motion for Reconsideration of the Court's July 30, 2008 Order

Transferring the Case to the District Court of Delaware filed in the above-captioned action, the

applicable law, and the record in this case, it is, by the Court, this ___ day of August 2008

ORDERED that the Motion for Reconsideration is hereby DENIED.

Dated: _____

_____
Rosemary M. Collyer
United States District Judge

Notice of Order to be provided to:

David Michael Morris
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202)739-3000
Fax: (202)739-3001

Thomas B. Kenworthy
MORGAN, LEWIS & BOCKIUS
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5702
Fax: (215) 963-5001
Admitted *Pro Hac Vice*

*Counsel for Counterclaim Plaintiffs*
*Ansell Healthcare Products LLC, and Ansell*
*Protective Products, Inc.*

Brian R. Meiners (D.C. Bar No. 482039)
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-2706
Telephone:  (202) 626-2910

M. Russell Wofford, Jr.
Stephen P. Cummings
Asha C. Jennings
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4711
Admitted *Pro Hac Vice*

*Counsel for Counterclaim Defendant*
*Tillotson Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ANSELL HEALTHCARE PRODUCTS LLC, and ANSELL PROTECTIVE PRODUCTS INC.,** | |
| Counterclaimants, | **C.A. 1:08-CV-585-RMC** |
| v. | |
| **TILLOTSON CORPORATION,** | |
| Counterclaim Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Plaintiffs Motion for Reconsideration were served on counsel of record, via the Court's CM/ECF electronic file and serve, this 18th day of August.

/s  Brian Meiners
Brian Meiners
Washington D.C. Bar No. 482039

KING & SPALDING LLP

1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-2706
(202) 737-0500 (telephone)
(202) 626-3737 (facsimile)

Attorney for Tillotson Corporation

10

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE PRODUCTS LLC,    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        C.A. No. 06-527 (JJF)
                                   )
TILLOTSON CORPORATION,             )
                                   )
                Defendant.         )

**ANSELL HEALTHCARE PRODUCTS LLC'S
ANSWERING BRIEF IN OPPOSITION TO TILLOTSON'S MOTION
TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
*Attorneys for Plaintiff
Ansell Healthcare Products LLC*

OF COUNSEL:

Thomas B. Kenworthy
David W. Marston, Jr. (#3972)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

October 11, 2006

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                          ii

NATURE AND STAGE OF THE PROCEEDING                                           1

SUMMARY OF ARGUMENT                                                               3

STATEMENT OF PERTINENT FACTS                                                   3

ARGUMENT                                                                               4

I.    ANSELL'S CHOICE TO BRING SUIT IN THE DISTRICT OF DELAWARE SHOULD BE GIVEN PARAMOUNT CONSIDERATION                                                                   4

II.   THE ALLEGED INFRINGEMENT DID NOT ARISE IN GEORGIA                                                                             5

III.  TILLOTSON IS A MULTIMILLION DOLLAR GLOBAL COMPANY BASED IN MASSACHUSETTS, AND LITIGATING IN DELAWARE WOULD CAUSE NO UNDUE HARDSHIP                                                                             5

IV.   THE CONVENIENCE OF THE EXPECTED WITNESSES DOES NOT FAVOR TRANSFER                                                   6

V.    THE LOCATION OF BOOKS AND RECORDS DOES NOT FAVOR TRANSFER                                                             7

VI.   THE PUBLIC INTEREST FACTORS DO NOT SUPPORT A TRANSFER TO GEORGIA                                                       8

      A.    The "first-filed rule" does not weigh in favor of Tillotson.        8

      B.    Practical considerations regarding the ease, speed or expense of trial.                                                              10

VII.  THE CASES CITED BY TILLOTSON INVOLVED MARKEDLY DIFFERENT FACTS FROM THOSE PRESENTED BY THIS CASE                                                            13

VIII. THE "CUSTOMER CLAIMS" IN GEORGIA AND THE DIRECT CLAIMS IN THIS COURT WILL NOT REQUIRE DUPLICATIVE LITIGATION                                                     14

CONCLUSION                                                                             15

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*Allergan, Inc. v. Alcon Labs, Inc.,*
    C. A. No. 02-1682-GMS (D. Del. Feb. 25, 2003)      13

*American Bio Medica Corp. v. Peninsula Drug Analysis Corp.,*
    C. A. No. 99-218-SLR, 1999 WL 615175 (D. Del. Aug. 3,
    1999)      13

*Apple Computer, Inc. v. Unova, Inc.,*
    C. A. No. 03-101-JJF, 2003 WL 22928034  (D. Del. Nov.
    25, 2003)      6, 10

*Bayer Bioscience N.V. v. Monsanto Co.,*
    C. A. No. 03-023-GMS, 2003 WL 1565864 (D. Del. Mar.
    25, 2003)      14

*Brunswick Corp. v. Precor, Inc.,*
    C. A. No. 00-691-GMS, 2000 WL 1876477
    (D. Del. Dec. 12, 2000)      13

*Codex Corp. v. Milgo Elec. Corp.,*
    553 F.2d 735 (1st Cir. 1977)      11

*Crosley v. Hazeltine Corp.,*
    122 F.2d 925 (3d Cir. 1941)      10

*Derry Finance N.V. v. The Christiana Cos., Inc.,*
    555 F. Supp. 1043 (D. Del. 1983)      7

*Enzo Biochem, Inc. v. Calgene, Inc.,*
    C. A. No. 93-110-JJF, 1993 WL 266518 (D. Del. May 18,
    1993)      10

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995)      4, 6, 7, 13

*Optical Recording Corp. v. Capitol-EMI Music, Inc.,*
    803 F. Supp. 971 (D. Del. 1992)      8, 10

*Ricoh Co. Ltd. v. Aeroflex Inc.,*
    279 F. Supp. 2d 554 (D. Del. 2003)      9, 14

*Sony Electronics, Inc. v. Orion IP, LLC,*
   C. A. No. 05-255 (GMS), slip op. (D. Del. May 14, 2006)          10, 11

*Stratos Lightwave, Inc. v. E20 Communications, Inc.,*
   C. A. No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 (D.
   Del. Mar. 26, 2002)                                              5, 6, 8

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials,
   Inc.,*
   C. A. No. 04-852-SLR, 2005 WL 735880 (D. Del. Mar. 30,
   2005)                                                            14

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
   C.A. No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15,
   2005)                                                            4, 5, 7

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,*
   157 F.R.D. 215 (D. Del. 1993)                                    12

Statutes

28 U.S.C. § 1404(a)                                                 4

Other Authorities

Herbert F. Schwartz, <u>Patent Law and Practice</u> (5th ed. 2005)          9

## NATURE AND STAGE OF THE PROCEEDING

This is a declaratory judgment action filed by Ansell Healthcare Products LLC ("Ansell"), a manufacturer/supplier of nitrile gloves, against Tillotson Corporation ("Tillotson"), the record owner of U.S. Reissue Patent No. Re. 35,616 ("the '616 patent"), seeking a declaration that Ansell has not infringed any valid and enforceable claim of the '616 patent. Although Ansell has been manufacturing and selling the Micro-Touch nitrile gloves that Tillotson contends infringe the '616 patent since 2000, and notwithstanding that one of the named inventors of the '616 patent, Luc DeBecker, had worked for a predecessor company of Ansell immediately prior to joining Tillotson, Tillotson has <u>never</u>, even to this date, filed suit against Ansell charging Ansell with infringement of the '616 patent. Tillotson, however, has filed a series of fifteen law-suits in Georgia, mostly against foreign manufacturers of nitrile gloves and their distributors/customers.

In one of those suits, the distributor of one of the named foreign manufacturers, Darby Dental Supply Co., Inc. ("Darby Dental") is also a customer of Ansell.[1] When counsel for Darby Dental informed Ansell about the Georgia lawsuit in the summer of 2006, Ansell's counsel contacted Katrina Quicker, one of Tillotson's counsel in this action, to inquire whether Tillotson's claims against Darby Dental were based on Ansell gloves. (Declaration of Thomas B. Kenworthy ("Kenworthy Decl.") ¶ 2). Ms. Quicker informed Ansell's counsel that Tillotson's claims against Darby Dental were not based on Ansell gloves (*Id.*). Ansell's counsel

---

[1]    Darby Dental filed a Third-Party Complaint asserting customer claims for indemnification against Ansell and four other suppliers. Tillotson has moved to strike the Third-Party Complaint, arguing that the presence of these five additional parties would delay, lengthen, complicate and confuse the case. *See* discussion at pp. 9-11 *infra*.

2.

thereupon sent a letter to Darby Dental's counsel, with a copy to Ms. Quicker, communicating these facts. (*Id.*, ¶ 3 and Ex. 1). Tillotson's counsel did not respond to this letter, but Darby Dental's counsel supplied Ansell's counsel with information that was inconsistent with what Ms. Quicker had said. (*Id.*, ¶¶ 3, 4 and Ex. 2). Ansell's counsel wrote to Tillotson's counsel asking for an explanation of the differing information. (*Id.*, Ex. 3).

When Tillotson's counsel subsequently advised that Tillotson's claim against Darby Dental was based in part on Ansell gloves, Ansell's counsel made several requests of Tillotson to hold Darby Dental harmless based on Ansell gloves without prejudice to Tillotson's right to pursue infringement claims against Ansell for those gloves. (*Id.*, Exs. 5, 7, 11 & 17). Tillotson    ately declined. (*Id.*, Ex. 18). On several occasions Ansell's counsel asked Tillotson's counsel whether it intended to assert a claim of infringement of the '616 patent             Georgia action. (*Id.*, Exs. 19 & 21). Tillotson first said that it wouldn't be able to do so until after the Court ruled on the motion to strike the Third-Party Complaint that Tillotson had fil    (*Id.*, Ex. 20). When asked again, Tillotson's counsel did not reply. (*Id.*,              n filed this suit.

         notes  has filed an Answer and Counterclaim (D.I. 8) and Ansell has filed its Reply to the Counterclaim (D.I. 14). Tillotson has also filed a motion to transfer venue to the Northern District of Georgia. (D.I. 10). This is Ansell's brief in opposition to that motion.

3.

## SUMMARY OF ARGUMENT

Notwithstanding assurances by Tillotson's counsel to the contrary, on July 27, 2006, Ansell learned that claims based in part on Ansell gloves were seemingly being asserted by Tillotson against Ansell's customer Darby Dental in the United States District Court for the Northern District of Georgia. After unsuccessful efforts on the part of Ansell to (1) get Tillotson to hold Ansell's customers harmless, without prejudice to Tillotson's right to pursue infringement claims directly against Ansell, and (2) get Tillotson to state whether it intended to assert a claim directly against Ansell in the Georgia case, Ansell filed this suit on August 25, 2006, seeking a declaratory judgment that Ansell's gloves do not infringe any valid and enforceable claim of the '616 patent and an injunction to preclude Tillotson from pursuing claims against Ansell customers.

Ansell chose to litigate in this forum because Ansell is a Delaware limited liability company with its principal place of business close by; this Court has a national reputation for the expeditious and insightful handling of patent cases; and litigation here between only the manufacturer/supplier and patent owner can proceed unencumbered by the numerous unrelated parties and collateral issues present in Georgia. Moreover, the Georgia litigation against Ansell's customer has recently been reassigned to a new judge who has no experience with the '616 patent and the technology thereof. The *Jumara* factors do not weigh in favor of a transfer, and certainly not strongly in favor of transfer as would be required.

## STATEMENT OF PERTINENT FACTS

The facts pertinent to Ansell's arguments are set forth in Section I, *supra* and Section IV, *infra*.

4.

# ARGUMENT

Tillotson brings its motion to transfer pursuant to 28 U.S.C. § 1404(a) which provides that "(f)or the convenience of the parties and the witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Third Circuit has identified certain private and public interest factors which a court must consider when addressing a motion to transfer under § 1404(a). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The private interests are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected wit-nesses; and (6) the location of books and records. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial of the case easy, expeditious or inexpensive; (3) the relative administrative difficulty due to court congestion; (4) the local interest in deciding local controversies in the home forum; (5) the public policies of the two fora; and (6) the trial court's familiarity with applicable state law.

An analysis of these factors, particularly in light of Tillotson's burden to demonstrate that these factors strongly favor a transfer to Georgia, supports the denial of Tillotson's motion.

## I.    ANSELL'S CHOICE TO BRING SUIT IN THE DISTRICT OF DELAWARE SHOULD BE GIVEN PARAMOUNT CONSIDERATION

All of the *Jumara* factors are not given equal weight. Indeed, "(o)rdinarily, a court will give 'paramount consideration' to a plaintiff's choice of forum." *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, C.A. No. 04-360-JJF, 2005 WL 441077 *2 (D. Del. Feb. 15, 2005). That consideration is lessened if the plaintiff chooses to litigate away from its "home

5.

turf"[2] and it has no legitimate, rational reason to do so. *Id.* Although Ansell's principal place of business is in the neighboring State of New Jersey, it is a Delaware company. This Court[3] has recognized that the fact that the plaintiff is incorporated in Delaware "is a rational and legitimate reason to choose to litigate in that state." *Id.* Thus, Ansell's choice to litigate in the state of its incorporation must be given paramount consideration, and Tillotson must show that the other relevant factors strongly favor a transfer to Georgia. *Id.* "A transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, C. A. No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 *5 (D. Del. Mar. 26, 2002).

## II.    THE ALLEGED INFRINGEMENT DID NOT ARISE IN GEORGIA

infringement case and the only situs of infringement set forth in Tillotson's counterclaim is alleged infringement in Delaware. (*See* D. I. 8 at p. 5, ¶ 11). This factor not support Tillotson's motion to transfer.

## III.   TILLOTSON IS A MULTIMILLION DOLLAR GLOBAL COMPANY BASED IN MASSACHUSETTS, AND LITIGATING IN DELAWARE WOULD CAUSE NO UNDUE HARDSHIP

Tillotson suggests that its principal place of business is in Georgia by ambiguously stating that it has a "principal place of business in Georgia" "at Best Manufacturing

---

[2]     Under section 1404(a), the term "home turf" generally refers to a corporation's principal place of business. *Trilegiant*, 2005 WL 441077 at *2.

[3]     Tillotson has used the term "this Court" to refer to all judges in the District of Delaware. Ansell uses the term in this brief to refer only to The Honorable Joseph J. Farnan, Jr.

6.

Company in Menlo, Georgia."[4] (Tillotson Brief[5] at 2). When not trying to influence a transfer motion, however, Tillotson recently described itself as follows: "Tillotson Corp. is a large diversified holding company that is **based in Lexington, Massachusetts** and that owns a worldwide network of companies." (Kenworthy Decl., Ex. 22 at 3 (emphasis added)). Additionally, a Dunn & Bradstreet Report discloses that Tillotson has a strong financial condition with annual sales of over $118 million and a net worth of approximately $90 million. (Kenworthy Decl., Ex. 23 at p. 1). Tillotson is clearly a sophisticated and substantial global corporation with ample means to litigate in Delaware. *See, e.g., Apple Computer, Inc. v. Unova, Inc.*, C. A. No. 03-101-JJF, 2003 WL 22928034 *5 (D. Del. Nov. 25, 2003) ("all of the parties are sophisticated and substantial enough to litigate in Delaware."). This factor does not weigh in favor of a transfer to Georgia.

IV.    **THE CONVENIENCE OF THE EXPECTED WITNESSES DOES NOT FAVOR TRANSFER**

As an initial matter, the *Jumara* Court limited this factor to witnesses who might not be available if the trial is conducted in a certain forum. *Jumara*, 55 F.3d at 883. Tillotson has not identified any "witness, reluctant to testify, beyond the subpoena power of the Court." *See Stratos*, 2003 U.S. Dist. LEXIS 5653 at *5. The locations of witnesses employed by

---

[4]    Any company that has any place of business in a state will have "a principal place of business within that state." That does not make it *the* principal place of business of the corporation.

[5]    References to "Tillotson Brief" refer to Tillotson's Corrected Opening Brief (D.I. 13) filed on October 3, 2006.

Tillotson thus "carry no weight in the 'balance of convenience' analysis."[6] *Trilegiant*, 2005 WL 441077 at *3. Ansell witnesses that Tillotson may want to appear at trial who are located at Red Bank, New Jersey, are within the subpoena power of this Court. Finally, even if the convenience of party witnesses were pertinent, it is well-settled that it is inappropriate to transfer a case so as to substitute inconvenience to the plaintiff for inconvenience to the defendant. *See Derry Finance N.V. v. The Christiana Cos., Inc.*, 555 F. Supp. 1043, 1046 (D. Del. 1983). This factor does not support transfer to Georgia.

## V.    THE LOCATION OF BOOKS AND RECORDS DOES NOT FAVOR TRANSFER

Although Tillotson states that its pertinent records are located in Georgia, (Tillotson Brief at 17), Tillotson does not contend that they could not be produced or would be unavailable in Delaware. Accordingly, aside from the fact that Ansell's books and records are located within the subpoena power of the Court, the location of books and records does not weigh in favor of a transfer to Georgia. *See Trilegiant*, 2005 WL 441077 at *2. *See also, Jumara*, 55 F.3d at 879.

---

[6]    Tillotson's unsupported statement that "all damages witnesses . . . are located in Georgia" is not accurate. In its Initial Disclosures in the Georgia action against Ansell's customer, Tillotson identified two witnesses who it asserts have knowledge of discoverable facts relating to damages. Of those two, the only one who Tillotson says "will be present at trial" is Mr. Frederick Tillotson whose location is stated to be in **Colebrook, New Hampshire**. (*See* Kenworthy Decl., Ex. 24, Attachment A). New Hampshire is substantially closer to Delaware than to Georgia.

## VI.    THE PUBLIC INTEREST FACTORS DO NOT SUPPORT A TRANSFER TO GEORGIA

Many of the "public interest factors" have no applicability whatsoever and none of them weigh in favor of transfer. "Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable." *Stratos*, 2003 U.S. Dist. LEXIS 5653 at *2. Tillotson concedes that the enforceability of any judgment does not favor one forum over the other. (Tillotson Brief at 13). The remaining two public interest factors not only fail to strongly favor transfer, they weigh against transfer.

### A.    The "first-filed rule" does not weigh    in    favor    of Tillotson.

Tillotson makes much of its 12 actions alleging infringement of the '616 patent that were filed chronologically before this action.[7] The only one of those that could even arguably be called a "first-filed" case, however, is Civil Action No. 4:05-cv-118-HLM.[8] Tillotson's description of that case is inaccurate, incomplete and misleading.

---

[7]    In actuality, there have been 15 actions alleging infringement of the '616 patent filed by Tillotson in the Northern District of Georgia, another 3 in addition to the cases identified by Tillotson. (*See* Kenworthy Decl., Exs. 25-30). On a number of occasions Tillotson voluntarily dismissed a case while contemporaneously refiling the same case. This would appear to have been done to manipulate the assignment of cases under the related case doctrine, by always having at least one case pending.

[8]    The "first filed rule" is implicated where two District Courts both have before them "a dispute involving the exact same issues and parties." *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 973 (D. Del. 1992). As previously mentioned, there has been no assertion of patent infringement by Tillotson against Ansell in the Georgia case.

First, Tillotson's statement that "Tillotson filed this case on June 7, 2005 against . . . Island Dental Co., Inc.; and Darby Supply Co., Inc." (Tillotson Brief at 6) is not accurate. The Complaint filed on June 7, 2005 did not include either Island Dental or Darby Dental as parties. (*See* Dorsney Decl. (D.I. 12), Ex. O). Second, although Ansell is a third-party defendant in the Georgia case, the claim is merely a customer claim for indemnification; no claim for patent infringement has been asserted against Ansell in Georgia. More importantly, Tillotson has moved in the Georgia action to <u>strike</u> the Third-Party Complaint, a fact that Tillotson has not disclosed to this Court. (*See* Kenworthy Decl., Ex. 31). Thus, if Tillotson is successful, Ansell will not even be a party in the Georgia action.

Aside from all the foregoing, Tillotson's suit in Georgia against Island Dental and Darby Dental is a "customer suit." (*See* Kenworthy Decl., Ex. 2, Tab B at 2). In circumstances such as presented here, where "the first-filed suit is for patent infringement and is brought by the patent owner against a customer who uses an infringing product (rather than against the manufacturer of that product either alone or together with a customer), and the second-filed suit is for a declaratory judgment brought by the (allegedly) infringing manufacturer against the patent owner, then the priority rule is usually not followed." Herbert F. Schwartz, *Patent Law and Practice*, (5th ed. 2005) at 59. *See also Ricoh Co. Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003) ("Under Federal Circuit precedence (sic), a manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products."). This well-recognized exception to the first-filed rule which gives priority to this action over the Georgia customer suit weighs against Tillotson's motion to transfer. *See Optical*

*Recording*, 803 F. Supp. at 973 (the same circumstances that justify an exception to the first-filed rule support denial of a motion to transfer).[9]

### B.    Practical considerations regarding the ease, speed or expense of trial.

It cannot seriously be disputed that the adjudication of whether Ansell gloves infringe any valid and enforceable claim of the '616 patent will be decided more quickly, more easily and less expensively in this Court than in Georgia. First, in this Court, as opposed to the Georgia action, the pleadings are closed.[10] More importantly, here, the only parties are the supplier of the accused products and the patent owner. In the Georgia action, there are also two customers as well as four other suppliers/manufacturers totally unrelated to Ansell. The presence of multiple parties in the proposed transferee Court that are not involved in this case is a factor that weighs against transfer. *See Apple Computer v. Unova*, 2003 WL 22928034 at *5.

In addition, Tillotson fails to disclose to this Court all of the problems that it has acknowledged bear on the ease, speed, and expense of a trial of the infringement claims and defenses between Tillotson and Ansell if they were tried with the Georgia case. Tillotson argued in the Georgia Court as follows:

---

[9]    Tillotson claims to have "a vested interest" in the Northern District of Georgia (Tillotson Brief at 17), but this Court has recognized that "(n)o party has a vested right to have his cause tried by one judge rather than by another of equal jurisdiction." *Enzo Biochem, Inc. v. Calgene, Inc.*, C. A. No. 93-110-JJF, 1993 WL 266518 at *1 (D. Del. May 18, 1993), quoting *Crosley v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941). Moreover, simply because Tillotson initiated litigation in Georgia "involving one set of parties, it should not be able to 'bootstrap itself into staying there' when subsequent litigation arises involving a different set of parties." *Sony Electronics, Inc. v. Orion IP, LLC*, C. A. No. 05-255 (GMS), slip op. at 5 (D. Del. May 14, 2006) (citation omitted) (Exhibit A hereto).

[10]    In the Georgia action, no answer has yet been filed by Cardinal or Supermax Inc. Corp.

11.

> "Darby Dental's and Island Dental's Third-Party Claims Will Cause Needless Delay and Prejudice . . . and Confuse the Jury"

(Kenworthy Decl., Ex. 31. at 7).

> The presence of "the five Third-Party Defendants in the Georgia action will inevitably lengthen the resolution of the underlying case."

(*Id.* at 8).

> The presence of the five Third-Party Defendants in the Georgia action and the legal issues involving the claims against them "will no doubt require additional discovery and potential witnesses" and "will inevitably delay and lengthen the underlying patent infringement case."

(*Id.*).

> The presence of the claims against the Third-Party Defendants in the Georgia action "will confuse and complicate the case."

(*Id.* at 9).

In light of the foregoing assertions by Tillotson to the Georgia Court, Tillotson cannot credibly argue in this Court that litigation of the discrete issues between Tillotson and Ansell can be tried with greater ease, speed and expense in Georgia. Tillotson ignores the teaching "that collateral issues specific to any one of the many unrelated parties involved in (the Georgia case) may create inefficiencies that would not arise if the proceedings remained separate." *Sony Electronics, Inc. v. Orion IP, LLC*, C. A. No. 05-255 (GMS), slip op. at 5; *see also Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir. 1977) ("Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which incidentally, may have different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be.").

12.

The reasons that Tillotson gives are the unsupported attorney arguments that (1) "Judge Murphy's familiarity with the '616 patent and the very type of products at issue in this case as well as with Tillotson and Ansell and the likely discovery required to litigate this dispute makes litigation in the Northern District of Georgia more practical and most likely less expensive and more expeditious" (Tillotson Brief at 13); (2) "Judge Murphy has expended substantial judicial resources in addressing the twelve Georgia cases and garnered a substantial body of knowledge about the specific issues and facts likely at issue in the instant case" (*id.* at 14); and (3) "(i)f this case were to proceed, this Court would necessarily have to duplicate Judge Murphy's work." (*Id.*). None of these arguments hold water.

First, notwithstanding the fact that Tillotson has filed fifteen (15) lawsuits alleging infringement of the '616 patent, there have been **no contested rulings on substantive issues**. In not one of those cases has there even been full briefing on claim construction, let alone any *Markman* hearing or construction by the Court. Tillotson references the fact that "Judge Murphy has already addressed . . . one summary judgment motion" (Tillotson Brief at 13), but that motion was unopposed. (*See* Kenworthy Decl., Ex. 32). A District Court's purported familiarity with technology underlying a patent infringement case due to a prior case involving the same patents does not favor the forum of the prior case in the context of a motion to transfer when the prior case was settled before the Court invested substantial time in attempting to understand the technology. *See Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 219 (D. Del. 1993). Moreover, whatever body of knowledge Judge Murphy may have gained over the past seven years pertinent to litigation of claims of infringement of the '616 patent, clearly does not support transfer because **Judge Murphy has recused himself** from the

13.

Georgia case and the **case has been reassigned** to a judge with no experience whatsoever with the technology of the '616 patent. (*See* Kenworthy Decl., ¶ 18 and Ex. 33).

Practical considerations regarding the ease, speed and expense of trial favor proceeding in this Court where only the claims and defenses of Ansell and Tillotson are involved.

## VII. THE CASES CITED BY TILLOTSON INVOLVED MARKEDLY DIFFERENT FACTS FROM THOSE PRESENTED BY THIS CASE

The cases cited by Tillotson are inapposite to the facts of this case. In *American Bio Medica Corp. v. Peninsula Drug Analysis Corp.*, C. A. No. 99-218-SLR, 1999 WL 615175 (D. Del. Aug. 3, 1999), the case was transferred to California because the District of Delaware could not exercise jurisdiction over the manufacturer of the allegedly infringing products. *Id.* at *5. ("Given the court's conclusion that it cannot exercise personal jurisdiction over defendant Pharmatech, the manufacturer of the accused products, transfer of this case to the Southern District of California is warranted."). No such problem exists here.

*Brunswick Corp. v. Precor, Inc.*, C. A. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000), involved a substantially different balance of the *Jumara* factors. The witnesses and records of the plaintiff were not within the subpoena power of the District of Delaware. More importantly, there had been related patent litigation in the transferee forum **between the parties to the Delaware action** that had been adjudicated by summary judgment and trial. The suit in the transferee forum was also not a "customer suit" and did not involve extraneous parties and collateral issues that would complicate and delay resolution of the dispute. *Allergan, Inc. v. Alcon Labs, Inc.*, C. A. No. 02-1682-GMS (D. Del. Feb. 25, 2003), is distinguishable for essentially the same reasons as *Brunswick*. Here, there is no prior

14.

litigation in Georgia between Tillotson and Ansell, no substantive rulings addressing issues between the parties in Georgia, and no "mirror image" claim by Tillotson against Ansell in Georgia.

Bayer Bioscience N.V. v. Monsanto Co., C. A. No. 03-023-GMS, 2003 WL 1565864 (D. Del. Mar. 25, 2003), also involved a circumstance where there had been ongoing patent litigation in the transferee forum involving the technology at issue and where there were "mirror image" suits **between the same parties** in both jurisdictions. Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc., C. A. No. 04-852-SLR, 2005 WL 735880 (D. Del. Mar. 30, 2005), likewise involved a situation where there had been related patent litigation **between the same parties** and involving the same patent in the transferee forum, and the judge to whom the case was transferred had already "considered and ruled on many of the issues presented by plaintiffs' amended complaint" in the Delaware action. Id. at *3. Here there are no claims between Tillotson and Ansell in Georgia, and newly assigned Judge Vining has no prior experience with the '616 patent.

## VIII.  THE "CUSTOMER CLAIMS" IN GEORGIA AND THE DIRECT CLAIMS IN THIS COURT WILL NOT REQUIRE DUPLICATIVE LITIGATION

This Court's "determination regarding infringement and validity of the ('616) patent will efficiently dispose of the infringement issues regarding (Ansell's) customers in (the Georgia) case." See Ricoh, 279 F. Supp. 2d at 558. Either Ansell will prevail and the sale and use of its gloves will be determined to be noninfringing, or Tillotson will prevail, and Ansell will be forced to pay damages or license the patent, in which case Ansell's customers would be immune from liability. Id. If, after its motion to transfer is ruled upon, Tillotson does not agree to stay or withdraw its claims against Darby Dental and Island Dental based on Ansell gloves,

15.

Ansell will move to stay or enjoin Tillotson's pursuit of those claims in either the Georgia action

or this Court.   (*See* Kenworthy Decl., Ex. 34 at p. 10, ¶ 5(b)).

## CONCLUSION

For all the foregoing reasons, Ansell respectfully submits that Tillotson's motion

to transfer should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Jack B. Blumenfeld (#1014)*

Jack B. Blumenfeld (#1014)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
jblumenfeld@mnat.com
(302) 658-9200
  *Attorneys for Plaintiff*
  *Ansell Healthcare Products LLC*

OF COUNSEL:

Thomas B. Kenworthy
David W. Marston, Jr. (#3972)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

October 11, 2006
540918

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on October 11, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
Potter Anderson & Corroon LLP

I further certify that copies of the foregoing document were also served upon the following in the manner indicated:

### BY HAND DELIVERY

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, Sixth Floor
1313 N. Market Street, P. O. Box 951
Wilmington, Delaware  19899-0951

### BY FEDERAL EXPRESS

Anthony B. Askew, Esquire
Katrina M. Quicker, Esquire
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309

/s/    *Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONY ELECTRONICS, INC., | ) | |
| | ) | |
| SONY COMPUTER ENTERTAINMENT | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| SONY PICTURES ENTERTAINMENT, | ) | |
| INC., | ) | |
| | ) | |
| SONY CONNECT, INC., | ) | |
| | ) | |
| SONY ONLINE ENTERTAINMENT, INC.,) | | |
| | ) | |
| SONY CORPORATION OF AMERICA, | ) | C.A. No. 05-255 (GMS) |
| | ) | |
| SONY BMG MUSIC ENTERTAINMENT, | ) | |
| INC., | ) | |
| | ) | |
| SONY ERICSSON MOBILE | ) | |
| COMMUNICATIONS (USA), INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORION IP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

On November 23, 2004, Orion IP, LLC ("Orion"), a Delaware corporation headquartered in

Texas, filed a patent infringement suit in the United States District Court for the Eastern District of

Texas against fifteen individual defendants, none of whom are parties to this action. However, on

February 10, 2005, Orion amended its complaint to add additional parties, including Sony

Corporation of America ("SCA"). On April 7, 2005, SCA responded by filing an answer in the

Texas action asserting the affirmative defenses of non-infringement and invalidity as to both patents

in suit. Then, on May 2, 2005, SCA and seven other so-called non-SCA plaintiffs filed an action in this court seeking a declaratory judgment of non-infringement and invalidity with respect to the same patents as those asserted against SCA in the Texas action. However, although the patents at issue are the same, the potentially-infringing products of the non-SCA plaintiffs – their websites – are allegedly different than the accused SCA website. Presently before the court is Orion's motion to either dismiss or stay this case under the first-filed rule, or alternatively, to transfer it to the Eastern District of Texas pursuant to 28 U.S.C.A. § 1404(a) (1993). (D.I. 11.)

Generally speaking, the first-filed rule is as simple as its name suggests: "[w]here two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Corixa Corp. v. IDEC Pharm. Corp.*, No. 01-615-GMS, 2002 WL 265094, at *1 (D. Del. Feb. 25, 2002). The present case presents a small complication, however, because only one of the plaintiffs in this action is a defendant in the Texas action. But, that complication is not too difficult to overcome because "Civil Procedure Rule 21 permits any claim against a party to be severed and proceeded with separately." *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp.*, 125 F.2d 1008, 1009 (3d Cir. 1942). Moreover, "Rule 21 permits a court to sever claims *sua sponte*." *United States v. AMTRAK*, No. 86-1094, 2004 U.S. Dist. LEXIS 10867, at *21 (E.D. Pa. June 15, 2004). That being the case, and there being no discernable prejudice in severing SCA's claims against Orion, the court will exercise its power to do so. As a result, the court is confronted with a declaratory judgment action by SCA alone, the inverse of which (i.e., an infringement action) was filed about three months earlier in Texas. Therefore, pursuant to the first-filed rule, SCA must be dismissed from this case. *Cf. Triangle Conduit*, 125 F.2d at 1009 (holding that this district was under a duty to enjoin a patent-

2

holding defendant in a declaratory judgment action from pursuing an infringement action in another district against the declaratory judgment plaintiff, even though the infringement action in the other district would proceed against other parties in the absence of the declaratory judgment plaintiff).

With SCA out of the case, the court must still decide the fate of the non-SCA plaintiffs. Orion first argues that, like SCA itself, the non-SCA plaintiffs are subject to the first-filed rule under the holding of *Corixa*, where this court granted a motion to transfer a patent infringement action, based on the first-filed rule, to a district where a previous declaratory judgment action had been filed, even though one of the plaintiffs in the patent infringement action was not a defendant in the declaratory judgment action. 2002 WL 265094, at *1-*2. However, that plaintiff was a licensee of a defendant in the declaratory judgment action, and could therefore request permission to join that action after the transfer. *Id.* at *2. In this case, the non-SCA plaintiffs cannot be licensees of SCA because SCA is not the patentee. Moreover, the "accused products" in this action are the websites of the non-SCA plaintiffs, which are allegedly different than the SCA website accused in the Texas action. Thus, *Corixa* is distinguishable, and the first-filed rule does not apply to the non-SCA plaintiffs.

Orion's next argument is that the action should be transferred pursuant to § 1404(a). In *Jumara v. State Farm Insurance Co.*, the Third Circuit outlined six private interests and six public interests relevant to such a transfer. The private interests are:

    (1)    The plaintiff's forum preference as manifested in the original choice;

    (2)    The defendant's preference;

    (3)    Whether the claim arose elsewhere;

    (4)    The convenience of the parties as indicated by their relative physical and

financial condition;

    (5)    The convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

    (6)    The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

55 F.3d 873, 879 (3d Cir. 1995). Aside from Orion's preference for Texas and the non-SCA plaintiffs' preferences for Delaware, none of the other private interests are particularly relevant. Orion disagrees, and argues that convenience weighs in favor of transfer. Although Texas may indeed be more convenient for Orion, all of the non-SCA plaintiffs (and Orion) are incorporated in Delaware – a fact that certainly weighs against transfer. At best, then, the private interests are a wash.

The public interests outlined in *Jumara* include:

    (1)    The enforceability of the judgment;

    (2)    Practical considerations that could make the trial easy, expeditious, or inexpensive;

    (3)    The relative administrative difficulty in the two fora resulting from court congestion;

    (4)    The local interest in deciding local controversies at home;

    (5)    The public policies of the fora; and

    (6)    The familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80. Here, Orion argues that although it and the remaining plaintiffs are all Delaware corporations, the local interest favors Texas because Orion has offices in that state. In *Corixa*, three parties were Delaware corporations, and yet, that fact did not weigh against transferring the case to

4

California because the "patents deal[t] with the treatment of lymphoma, . . . . [which] has far-reaching implications [beyond Delaware's borders]." 2002 WL 265094, at *4. By the same token, the fact that Orion has offices in Texas does not weigh in favor of transfer where the patents deal with technology used in internationally-accessible websites. Orion also argues that because litigation involving the same patents is already underway in Texas, judicial resources will be saved granting a transfer. Although there may be some efficiency to be gained by consolidating certain aspects of discovery, Orion ignores the possibility that collateral issues specific to any one of the many unrelated parties involved in both cases may create inefficiencies that would not arise if the proceedings remained separate. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir. 1977) ("Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which, incidentally, may have very different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be."). Moreover, simply because Orion initiated an action in Texas involving one set of parties, it should not be able to "bootstrap itself into staying there" when subsequent litigation arises involving a different set of parties. *Id.*

In short, the *Jumara* interests do not weigh in favor of transfer, and therefore, Orion's motion must be denied as to the non-SCA plaintiffs.

Dated: March 1⁴ , 2006

UNITED STATES DISTRICT JUDGE

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SONY ELECTRONICS, INC.,                    )
                                           )
SONY COMPUTER ENTERTAINMENT               )
AMERICA, INC.,                             )
                                           )
SONY PICTURES ENTERTAINMENT,              )
INC.,                                      )
                                           )
SONY CONNECT, INC.,                        )
                                           )
SONY ONLINE ENTERTAINMENT, INC.,)
                                           )
SONY CORPORATION OF AMERICA,              )
                                           )       C.A. No. 05-255 (GMS)
SONY BMG MUSIC ENTERTAINMENT, )
INC.,                                      )
                                           )
SONY ERICSSON MOBILE                       )
COMMUNICATIONS (USA), INC.,               )
                                           )
          Plaintiffs,                      )
                                           )
     v.                                    )
                                           )
ORION IP, LLC,                             )
                                           )
          Defendant.                       )

**ORDER**

IT IS HEREBY ORDERED THAT:

1.    Orion's motion to dismiss (D.I. 11) be GRANTED in part and DENIED in part; and

2.    The claims of SCA against Orion be SEVERED and DISMISSED.


Dated: March 14 , 2006

                                    UNITED STATES DISTRICT JUDGE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE PRODUCTS LLC,           )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        C.A. No. 06-527 (JJF)
                                          )
TILLOTSON CORPORATION,                    )
                                          )
                    Defendant.            )

**ANSELL HEALTHCARE PRODUCTS LLC'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO ENJOIN THE PURSUIT OF A NEW
LATER-FILED GEORGIA ACTION AGAINST ADDITIONAL ANSELL ENTITIES,
AND FOR SANCTIONS AGAINST TILLOTSON AND ITS GEORGIA ATTORNEYS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
mnoreika@mnat.com
(320) 658-9200

*Attorneys for Plaintiff
Ansell Healthcare Products LLC*

*Of Counsel*:

Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 9, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ............................................................................................................. ii

INTRODUCTION IN REPLY .................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

    A.    This Court's Application Of The "Customer Suit" Exception, To Deny
             Tillotson's Motion To Transfer This Case To Georgia Where Tillotson
             Had Sued A Mere Customer, Was Not Dependent On Ansell Healthcare
             Products' Status As The Physical Manufacturer Of The Gloves ............................. 1

    B.    Even If There Were Any Basis For Liability Against The Additional Ansell
             Entities In The New Georgia Mega-Action, It Would Be Dependent Upon
             Direct Liability On The Part Of Ansell Healthcare Products Or Ansell
             Protective Products ................................................................................................... 2

    C.    Based On Tillotson's Own Arguments, Tillotson's Pursuit Of Claims Against
             Additional Ansell Entities In The New Georgia Action Should Be Enjoined ........ 4

    D.    Injunctions Of Later-Filed Duplicative Suits Against Related Entities Are
             Entirely Appropriate ................................................................................................ 5

    E.    The "Customer Suit" Exception Provides No Basis To Give Tillotson's Recent
             Belatedly-Filed Suit In Georgia Priority Over This Suit That Was Filed Last
             August ....................................................................................................................... 6

CONCLUSION .............................................................................................................................. 7

# TABLE OF CITATIONS

**Cases**                                                                                                                    **Page(s)**

*ATSPI, Inc. v. Sharper Image, Inc.,*
   677 F. Supp. 842 (W.D. Pa. 1988) .......................................................................................2, 6

*BBC Int'l Ltd v. Lumino Designs, Inc.,*
   441 F. Supp. 2d 438 (E.D. N.Y. 2006) ..................................................................................2

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.,*
   265 F. Supp. 2d 445 (D. Del. 2003) ......................................................................................5

*Codex Corp. v. Milgo Elec. Corp.,*
   553 F.2d 735 (1st Cir. 1977)..................................................................................................6

*Cosden Oil & Chemical Co. v. Foster Grant Co., Inc.,*
   432 F. Supp. 956 (D. Del. 1977), *aff'd,* 577 F.3d 725 (3d Cir. 1978)..........................4

*Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.,*
   130 F. Supp. 2d 1152 (C.D. Cal. 2001) ...............................................................................3

*Kash 'N Gold, Ltd. v. ATSPI,*
   690 F. Supp. 1160 (E.D. N.Y. 1988) ...................................................................................2

*Rhode Gear U.S.A. v. Frank's Spoke N Wheel, Inc.,*
   225 USPQ 1256, 1985 WL 72065 (D. Mass. 1985)............................................................2

*Span-Eng Associates v. Weidner,*
   771 F.2d 464 (10th Cir. 1985) ...........................................................................................5-6

## STATUTES

35 U.S.C. § 271(a) .................................................................................................................3

## INTRODUCTION IN REPLY

Tillotson Corporation ("Tillotson") has filed papers in opposition to the motion of Ansell Healthcare Products LLC ("Ansell Healthcare Products") to enjoin the pursuit of the recently-filed mega-action in Georgia that are over one foot high. Nothing in those opposition papers, however, in any way supports allowing Tillotson to evade the import of this Court's order denying Tillotson's earlier motion to transfer this action to Georgia. No claim against the Ansell entities in the new Georgia action could be decided without deciding the very claims of direct infringement that Tillotson has already asserted in this Court against Ansell Healthcare Products and Ansell Protective Products Inc. ("Ansell Protective Products"), together with the associated defenses. Case law clearly supports the issuance of the injunction sought in the pending motion. If there is truly a need and basis for Tillotson to assert claims against additional Ansell entities in the chain of distribution, provision has been made, based on Tillotson's own proposed scheduling order, for the joinder of additional parties in this action up until July 24, 2007. [D.I. 50, ¶ 2].

As to Ansell Healthcare Products, which in fact was made a party to the new Georgia mega-action (*see* p. 5, *infra*.), that new action is an unreasonable multiplication of proceedings for which Ansell Healthcare Products should be awarded its costs and expenses incurred in bringing this motion.

## ARGUMENT

**A.    This Court's Application Of The "Customer Suit" Exception, To Deny Tillotson's Motion To Transfer This Case To Georgia Where Tillotson Had Sued A Mere Customer, Was Not Dependent On Ansell Healthcare Products' Status As The Physical Manufacturer Of The Gloves**

This suit filed by Ansell Healthcare Products seeks a declaration that Ansell's branded Micro-Touch nitrile examination gloves do not infringe any valid claim of the '616

1

patent. Ansell Healthcare Products is the sole source of Micro-Touch nitrile gloves in the United States and it – not the foreign entities who have made these gloves for it – is the real party in interest with the obligation to indemnify its customers. That Ansell Healthcare Products is not the physical manufacturer of the gloves[1] was not critical to the application of the customer suit exception. *See Rhode Gear U.S.A. v. Frank's Spoke N Wheel, Inc.*, 225 USPQ 1256, 1259, 1985 WL 72065 (D. Mass. 1985) (holding that an importer could be considered to be in the shoes of a manufacturer for the purposes of the customer suit exception); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842, 843 (W.D. Pa. 1988) (characterizing the customer suit exception as "where the earlier action is against a mere customer and the later suit is a declaratory judgment suit brought by the manufacturer, **supplier or importer of the accused devices**." (Emphasis added)).[2]

**B.    Even If There Were Any Basis For Liability Against The Additional Ansell Entities In The New Georgia Mega-Action, It Would Be Dependent Upon Direct Liability On The Part Of Ansell Healthcare Products Or Ansell Protective Products**

Aside from the total lack of any factual basis to assert patent infringement liability against most of the Ansell entities named in the new Georgia mega-action, there is no basis for liability that would not be dependent upon the direct liability of either Ansell Healthcare Products or Ansell Protective Products against whom Tillotson is already pursuing claims for infringement of the '616 patent in this Court.

---

[1]    Ansell Healthcare Products regrets any language in its briefing last fall that might have suggested that it was presently the physical manufacturer of the Micro-Touch nitrile gloves.

[2]    Neither *Kash 'N Gold, Ltd. v. ATSPI*, 690 F. Supp. 1160 (E.D. N.Y. 1988), nor *BBC Int'l Ltd v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438 (E.D. N.Y. 2006), cited by Tillotson [Tillotson Br. at 11], hold to the contrary. Indeed, in *Kash 'N Gold*, the Court made clear that it was not deciding which suit took priority since the customer action had already been stayed. 690 F. Supp. at 1164. Interestingly, the original Georgia customer suit in this case is about to be stayed. [*See* Declaration of Thomas B. Kenworthy ("Kenworthy Decl."), ¶ 2 and Ex. A].

Notwithstanding having been advised to the contrary, Tillotson contends that at least some of the additional Ansell entities that it has named in the new Georgia action are importers of nitrile gloves into the United States and are thus direct infringers because, under 35 U.S.C. § 271(a), "it is an act of infringement to import into the United States, without permission, a product covered by a United States Patent." [Tillotson Brief at 12]. Tillotson bases its assertions that these entities are "importers" on 12 inches of unauthenticated documentation that purports to identify these entities as the shipper/exporter on bills of lading. [*See* Tillotson Brief at 12-13 & Appendices J – O]. This same issue was presented to the Court in *Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.*, 130 F. Supp. 2d 1152, 1173-76 (C.D. Cal. 2001). Shipping from outside the United States to the United States **does not** constitute importing into the United States for purposes of liability under 35 U.S.C. § 271(a). *Id.* "[L]iability may only attach to that entity which actually 'imports into the United States,' and in this case that entity is either [Ansell Healthcare Products] or [Ansell Protective Products]." *Id.* at 1176.[3/]

Because **none** of the additional Ansell entities named in the new Georgia action are even arguably direct infringers, their derivative liability, if any, would be dependent upon the direct liability of either Ansell Healthcare Products or Ansell Protective Products. That issue will be decided by this Court, as will the question of whether these imported gloves infringe the '616 patent.

---

[3/]   In addition to Ansell Healthcare Products and Ansell Protective Products, the consignees of nitrile gloves shipped from outside the country identified in Tillotson's unauthenticated documentation include Ansell Edmont Industrial Inc. and Ansell Perry Inc. The name of Ansell Edmont Industrial Inc. is now Ansell Protective Products. [*See* Kenworthy Decl., ¶ 3 and Ex. B]. Ansell Healthcare Products is the successor-by-merger of Ansell Perry Inc. [*See* Kenworthy Decl., ¶¶ 4 & 5, Exs. C & D].

**C.    Based On Tillotson's Own Arguments, Tillotson's
Pursuit Of Claims Against Additional Ansell Entities
In The New Georgia Action Should Be Enjoined**

Given that there is no basis for any liability for direct infringement on the part of

any of the additional Ansell entities that Tillotson has recently sued in Georgia, the adjudication

of these claims (viewed in the light most favorable to Tillotson) will require litigation of the

**identical** issues of infringement, invalidity and unenforceability that are already pending before

this Court, where Tillotson is pursuing patent infringement counterclaims against the alleged

direct infringers – Ansell Healthcare Products and Ansell Protective Products.  When Tillotson

moved to transfer this case to Georgia last October, it argued that the interest of justice required

these same issues to be adjudicated in a single court, and that having the issues decided by one

court would further not only judicial economy, but "protect litigants, witnesses and the public

against unnecessary inconvenience and expense."  [D.I. 13 at 10].  Tillotson also argued that

allowing the litigation of the same issues to proceed in two fora would not only result in a

duplication of effort, "but raises the potential for inconsistent judicial outcomes that should be

avoided."  [*Id.* at 17-18].

No cogent argument can be made as to why Tillotson should now be permitted to

litigate the very same issues against Ansell entities in both Delaware and Georgia.  As to the

Ansell entities, the recent Georgia suit should be enjoined because Ansell "is entitled to be free

from the 'vexation of subsequent litigation over the same subject matter' . . . and the courts are

entitled to be free from the waste and inefficiency involved in duplicative litigation."  *Cosden Oil

& Chemical Co. v. Foster Grant Co., Inc.*, 432 F. Supp. 956, 960 (D. Del. 1977), *aff'd*, 577 F.3d

725 (3d Cir. 1978).

**D.    Injunctions Of Later-Filed Duplicative Suits
Against Related Entities Are Entirely Appropriate**

Tillotson argues that it should not be enjoined from pursuing suit in Georgia against the Ansell entities because the suits are not against the same parties. [Tillotson Brief at 14-16]. Tillotson's central premise that there is no same-party nexus because Ansell Healthcare Products was not a party to the recent Georgia mega-action [*id.* at 15] is not correct. One of the named defendants in Georgia is Ansell Services Inc. [D.I. 80, Ex. A]. Ansell Services Inc. was merged with and into Ansell Healthcare Products in 2005. [Kenworthy Decl., ¶ 6 and Ex. E]. As the surviving entity, Ansell Healthcare Products was the actual party sued by Tillotson in Georgia.[4/]  Where the same operative facts are at issue between the parties in both suits, an injunction against the pursuit of a related entity in a later-filed suit is appropriate. *See Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 447, 451 (D. Del. 2003).

*Span-Eng Associates v. Weidner*, 771 F.2d 464 (10th Cir. 1985), relied upon by Tillotson, is totally inapposite. That case did not involve a circumstance where the defendants in the second lawsuit were related corporate entities with a party in the first suit and whose liability, if any, would be derivative of that of the related corporate entities in the first suit. Tillotson's pursuit of claims against the Ansell entities in Georgia after this Court denied its motion to transfer this case to Georgia is precisely the type of avoidance of a court's ruling that the *Span-Eng* Court recognized would warrant an injunction. *Id.* at 470. Moreover, in contrast to *Span-*

---

[4/]    Any effort by Tillotson to dismiss Ansell Services Inc./Ansell Healthcare Products from the new Georgia action without prejudice *after* the filing of the motion for injunction by Ansell Healthcare Products should not deprive Ansell Healthcare Products of its right to the requested injunctive relief.

*Eng*, Tillotson has not even tried to add the additional Ansell entities to the counter-claims in this Court.

### E.    The "Customer Suit" Exception Provides No Basis To Give Tillotson's Recent Belatedly-Filed Suit In Georgia Priority Over This Suit That Was Filed Last August

Tillotson's arguments based on the "customer-suit" exception [Tillotson Brief at 10-12] are wholly without merit.  The customer-suit exception is only applicable "where the earlier action is an infringement suit **against a mere customer** and the later suit is a **declaratory judgment** action **brought by the manufacturer, supplier or importer** of the accused devices." *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. at 843 (emphasis added).  Tillotson has cited no case, and Ansell Healthcare Products is aware of none, in which priority was given to a later-filed infringement suit by the patentee over an earlier-filed declaratory judgment action brought by the accused infringer.  Moreover, Ansell Healthcare Products, whose branded gloves are at issue, is not a "mere customer," but the real party in interest with the greatest interest in defending the charges of infringement against its branded Micro-Touch nitrile gloves.  Finally, Tillotson's recent mega-action in Georgia was not brought "no later than promptly" after Ansell Healthcare Products filed its declaratory judgment suit last August. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977).  The "customer suit" exception provides no basis to give Tillotson's recent belatedly-filed suit in Georgia priority over this suit that was filed last August.

## CONCLUSION

For all the foregoing reasons, together with those set forth in its opening brief, Ansell Healthcare Products respectfully requests the Court to enter an order (1) enjoining Tillotson and its Georgia attorneys from pursuing any claims of infringement of the '616 patent against any Ansell entity in any court other than this Court; and (2) awarding to Ansell Healthcare Products its attorneys' fees and expenses incurred in bringing this motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
(302) 658-9200
*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

*Of Counsel:*

Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 9, 2007

7

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on July 9, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
Potter Anderson & Corroon LLP

I further certify that copies of the foregoing document were also served upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, Sixth Floor
1313 N. Market Street
Wilmington, DE  19801

### BY ELECTRONIC MAIL and FIRST CLASS MAIL

Anthony B. Askew, Esquire
Katrina M. Quicker, Esquire
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA  30309

Jack B. Blumenfeld
jblumenfeld@mnat.com

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
TILLOTSON'S MOTION TO STAY PROCEEDINGS PENDING THE
OUTCOME OF THE INTERNATIONAL TRADE COMMISSION'S INVESTIGATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(320) 658-9200
*Attorneys for Plaintiffs*
*Ansell Healthcare Products LLC and*
*Ansell Protective Products Inc.*

*Of Counsel*:
Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 26, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 2

STATEMENT OF PERTINENT FACTS ......................................................................... 2

ARGUMENT ...................................................................................................................... 3

    A.    Tillotson Has Repeatedly Conjured Up Ways To Try To Avoid
    An Adjudication By This Court ................................................................... 3

    B.    Until Ansell Brought The Issues Of The Noninfringement, Invalidity
    And Unenforceability Of The '616 Patent Before This Court, Tillotson
    Had No Concerns For Either Judicial Economy Or A Comprehensive
    Resolution Of Its Claims In One Proceeding ............................................. 4

    C.    A Stay Of This Action Would Seriously Prejudice Ansell Healthcare
    And Ansell Protective Products ................................................................... 5

        (1)  A stay would prejudice plaintiffs' ability to obtain a
        prompt summary judgment ruling by an Article III Court
        that would be binding on the ITC ................................................ 5

        (2)  A stay would require duplicative depositions ............................. 7

    D.    Staying This Action Would Not Simplify The Issues Between
    The Parties And Before This Court ............................................................. 8

    E.    Tillotson's Reliance On Cases Addressing Which Of Two District
    Courts Should Take Priority Has No Bearing On The Issue Of
    Whether A District Court Action Should Be Stayed In Favor Of
    An Administrative Adjudicatory Proceeding ............................................. 9

    F.    The Two District Cases Cited By Tillotson Are Distinguishable
    And Not Persuasive ...................................................................................... 9

    G.    Granting A Stay Would Be Wholly Inconsistent With Congressional
    Intent In Enacting 28 U.S.C. § 1659 ......................................................... 10

CONCLUSION ................................................................................................................ 12

## TABLE OF AUTHORITIES

CASES

*Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*,
No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) .................................... 9-10

*Hester Indus., Inc. v. Stein, Inc.*,
142 F.3d 1472 (Fed. Cir. 1998)..............................................................................6

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
183 F.3d 1369 (Fed. Cir. 1999)..............................................................................6

*Iljin USA v. NIN Corp.*,
No. 06-10145, 2006 WL 568351 (E. D. Mich. Mar. 7, 2006) ........................................... 9-10

*Nupla Corp. v. IXL Mfg. Co., Inc.*,
114 F.3d 191 (Fed. Cir. 1997)..............................................................................7

*Pannu v. Storz Instruments, Inc.*,
258 F.3d 1366 (Fed. Cir. 2001)..............................................................................6

*Pegasus Development Corp. v. DirecTV, Inc.*,
No. C. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ................................9

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed.Cir. 1996)..............................................................................8

*Tillotson, Ltd. v. Walbro Corp.*,
831 F.2d 1033 (Fed.Cir. 1987)..............................................................................6

*Vectra Fitness, Inc. v. TNWK Corp.*,
162 F.3d 1379 (Fed. Cir. 1998)..............................................................................6

*Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*,
721 F.2d 1305 (Fed. Cir. 1983)........................................................................... 8-9

STATUTES

28 U.S.C. § 1659 ...................................................................................... 9-11

35 U.S.C. § 251..............................................................................................5

OTHER AUTHORITIES

H. R. Rep. No. 103-826(I) (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773 ....................................11

RULES

Fed. R. Civ. P. 1..............................................................................................12

## NATURE AND STAGE OF THE PROCEEDINGS

These are declaratory judgment actions filed respectively by Ansell Healthcare Products LLC ("Ansell Healthcare") and Ansell Protective Products Inc. ("Ansell Protective Products"), U.S.-based suppliers of nitrile gloves, against Tillotson Corporation ("Tillotson"), the record owner of U.S. Patent No. Re. 35,616 ("the '616 patent"), seeking declarations that certain gloves that Tillotson had accused of infringing did not infringe any valid and enforceable claim of the '616 patent. The first action was filed on August 25, 2006 and discovery has been ongoing in that action since October of 2006. Ansell Heathcare has served three sets of interrogatories and one set of requests for production of documents and things. [*See* C.A. 06-527-JJF, D.I. 21; 48; 62]. Ansell Protective Products has served three sets of interrogatories, one set of requests for production of documents and things and one set of requests for admission. [*See* C.A. 07-93-JJF, D.I. 10; 11; 18; 19; 20]. In the two actions, Tillotson has served four sets of interrogatories, one set of requests for production of documents and things, and one set of requests for admission. [*See* C.A. 06-527-JJF, D.I. 34; 40; 68; 71; C.A. 07-93-JJF, D.I. 9]. The Court has heard and ruled on three discovery motions. [*See* C.A. 06-527-JJF, D.I. 44; 64; 66]. This is the third motion that has addressed efforts by Tillotson to have the dispute decided in another forum and to avoid a ruling on the merits by this Court. [*See id.,* D.I. 10; 75; 90].

Although a specific trial date has not been set, by Order dated July 13, 2007, the Court has directed that trial in the Ansell Healthcare case will commence in the 120-day period between September 4, 2008 and January 2, 2009 and that counsel should make themselves available for trial during that period. [*See id.,* D.I. 92].

## SUMMARY OF ARGUMENT

Even though Ansell Healthcare's case has been pending for 11 months, and is before an Article III Court, Tillotson argues that this Court should stay its cases in favor of an administrative adjudicatory body – the ITC. No issues would be narrowed if a stay were granted because any ruling by the ITC will have no binding effect on either this Court or the parties. Moreover, the grant of a stay would substantially prejudice Ansell Healthcare and Ansell Protective Products, particularly insofar as it would delay the determination of a discrete motion for summary judgment of invalidity that involves no issues of fact and that is ripe for decision now. Such a determination by this Court would be binding on Tillotson in the ITC.

Tillotson's motion for stay should be denied and Ansell Healthcare and Ansell Protective Products should be granted leave to file at this point in the proceedings a motion for summary judgment of invalidity on the grounds set forth herein.[1/]

## STATEMENT OF PERTINENT FACTS

The pertinent facts are set forth in the Nature and Stage of the Proceedings section and in the Argument section in the context of the points to which they relate.

---

[1/]    To the extent the Court feels that this request should be by a separate formal motion, Ansell Healthcare and Ansell Protective Products will do so promptly.

2

## ARGUMENT

### A.    Tillotson Has Repeatedly Conjured Up Ways To Try To Avoid An Adjudication By This Court

Tillotson has repeatedly conjured up ways to have the dispute between the Ansell parties and Tillotson first raised in this Court decided by some other tribunal and to avoid an adjudication of the merits by this Court:

- **Motion To Transfer** - Tillotson's first effort to avoid a ruling by this Court was its motion to transfer the Ansell Healthcare case to Georgia. That was a legitimate motion, albeit lacking in merit, and this Court denied it on February 2, 2007. [*See* C.A. 06-527-JJF, D.I. 10; 44].

- **Suit Against Additional Entities In Georgia** - Tillotson next tried to accomplish indirectly what this Court had denied when done directly – on May 30, 2007, it filed suit in Georgia against a host of Ansell entities, including a company that had been merged into Ansell Healthcare. In the face of a motion to enjoin pursuit of those claims against the Ansell entities and for sanctions, Tillotson withdrew all claims against Ansell entities in the new Georgia action. [*See id.*, D.I. 88].

- **Motion To Stay Or Transfer These Proceedings In Favor Of New Georgia Action** - On June 21, 2007, Tillotson's counsel stated that Tillotson was "considering asking the Delaware court to either stay or transfer the AHP [Ansell Healthcare] and the Ansell Protective Products cases to Georgia in favor of the Georgia case . . . ." [*See* Declaration of Thomas B. Kenworthy filed contemporaneously herewith ("Kenworthy Decl."), ¶ 2 and Ex. A].

3

- **Motion To Stay These Proceedings Pending Adjudication In The ITC** - On July 12, 2007, Tillotson filed this motion to stay the proceedings in this Court pending an adjudication in the ITC.

B.   **Until Ansell Brought The Issues Of The Noninfringement, Invalidity And Unenforceability Of The '616 Patent Before This Court, Tillotson Had No Concerns For Either Judicial Economy Or A Comprehensive Resolution Of Its Claims In One Proceeding**

Over 9 months *after* Ansell Healthcare brought this declaratory judgment action to obtain a judicial resolution of Tillotson's charge that the Micro-Touch nitrile glove infringed the '616 patent, Tillotson filed a complaint in the ITC. A month and a half later, Tillotson has filed a motion to stay this judicial proceeding pending a resolution of the recently-filed administrative proceeding in which Tillotson did not name either Ansell Healthcare or Ansell Protective Products as a respondent.[2] In support of this motion for a stay, Tillotson now touts the purported benefits of a comprehensive disposition against all pertinent parties and the conservation of judicial resources. These new-found "positions" are the antithesis of Tillotson's actual conduct prior to the bringing of declaratory judgment actions in this Court by Ansell Healthcare and Ansell Protective Products. Indeed, over an 8-year period, Tillotson has filed at least 18 separate actions alleging infringement of the '616 patent, none of which it has sought to consolidate for any purpose. Given this course of conduct whereby Tillotson and various opposing parties were simultaneously addressing the same issues of infringement, invalidity and

---

[2] Tillotson makes the statement in its brief, unsupported by any declaration, that "Tillotson is in the process of seeking to amend its ITC Complaint to include Ansell HC [Ansell Healthcare] and Ansell PP [Ansell Protective Products] as respondents." [Tillotson Br. at 2]. A review of the ITC docket as of July 26, 2007, however, reflects no effort on the part of Tillotson to amend its ITC Complaint to include either Ansell Healthcare or Ansell Protective Products as respondents. [*See* Kenworthy Decl., ¶ 3 and Ex.B].

enforceability in three or more proceedings at the same time, Tillotson's objection – when it is outside its favored forum – to proceeding in two fora at the same time rings hollow. That is particularly so, given that it was Tillotson that brought the second proceeding on itself over 9 months after this suit had begun.

### C.    A Stay Of This Action Would Seriously Prejudice Ansell Healthcare And Ansell Protective Products

#### (1)    A stay would prejudice plaintiffs' ability to obtain a prompt summary judgment ruling by an Article III Court that would be binding on the ITC.

Ansell Healthcare and Ansell Protective Products initiated these declaratory judgment actions because of Tillotson's accusations against them (but failure to sue), and to seek a judgment by an Article III Court to remove the cloud in the marketplace posed by Tillotson's unfounded accusations of the infringement of an invalid and unenforceable patent. The stay now requested by Tillotson would undercut that objective and seriously prejudice Ansell Healthcare and Ansell Protective Products.

Before Tillotson filed its motion for a stay, it was aware that Ansell Healthcare and Ansell Protective Products intended to ask this Court for leave to file now a motion for summary judgment of the invalidity of the '616 patent. [*See* Kenworthy Decl., ¶ 4]. As shown below, the two grounds for that motion are straightforward, involve no disputed issues of fact, and are legally unassailable:

#### (a)    Invalidity because of a broadening of the claims during reissue after more than two (2) years.

- A patentee may not broaden the scope of the claims of the original patent in a reissue patent unless the patentee applies for the reissue within two years from the date the original patent was granted. 35 U.S.C. § 251.

- Whether amendments made during reissue or reexamination proceedings enlarge the scope of a claim is a matter of claim construction and thus purely a question of law for the Court. *See Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1373 (Fed. Cir. 1999).

- "A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n.2 (Fed.Cir. 1987).

- "A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id.*

- The original claims of the '362 patent were limited by the requirement that the glove "initially exert[] **a predetermined** pressure on the hand." (Emphasis added).

- During reissue, the term "predetermined" was replaced with the term "initial."

- All gloves that exert any pressure on the hand at all will exert an initial pressure on the hand after being stretched to fit about the hand.

- The effect of the reissue amendment was to eliminate the "predetermined" limitation altogether. There clearly are gloves that would have an **initial** pressure on the hand and thus potentially within the scope of the reissue claims, that would not have a **predetermined** pressure and would have been outside the scope of the original claims. A reissue claim that does not include a limitation in the original claim is broader than the original claim. *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1371 (Fed. Cir. 2001) quoting *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998).

- The broadening of the claims during reissue after two years renders the broadened claims of the '616 patent invalid. *See Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1380-81, 1384-85 (Fed. Cir. 1998).

6

        **(b)**    **The reissue declaration is defective**
                      **so as to invalidate the claims.**

- The reissue regulations require a declaration identifying each error sought to be corrected and explaining how each such error arose or occurred, and that it was without deceptive intent. *See Nupla Corp. v. IXL Mfg. Co., Inc.*, 114 F.3d 191, 195 (Fed. Cir. 1997).

- Neither the original nor supplemental reissue declaration submitted by Tillotson during the reissue proceedings that led to the '616 patent identified the original use of the term "predetermined" as an error, explained how it arose or occurred, or stated that it arose without deceptive intent.

- All the reissue claims contain the limitation of "an initial pressure" in lieu of the original "a predetermined pressure."

- The inadequacy of the reissue declaration renders all of these claims invalid. *See Nupla*, 114 F.3d at 195.

    **(2)**    **A stay would require duplicative depositions.**

Whereas the denial of a stay would not cause any duplicative depositions at all,[3/] staying this case would because there would be a need to redepose persons who had knowledge relevant to issues before this Court but not the ITC, *i.e.*, a myriad of damages-related issues. Moreover, if depositions involving confidential subjects were taken only in the ITC proceeding, the Protective Order in the ITC would preclude the use of the depositions in this Court. [*See* Kenworthy Decl., ¶ 5 and Ex. C].

---

[3/]    All depositions could be double captioned and the use of the depositions would be governed as to each tribunal by its rules and protective order. The depositions would thus cover all matters reasonably calculated to lead to the discovery of admissible evidence in *either* proceeding.

**D.    Staying This Action Would Not Simplify The Issues
Between The Parties And Before This Court**

Tillotson **argues** that "staying the instant action will greatly simplify the issues between the parties and before the Court." [Tillotson Br. at 11]. Nowhere, however, does Tillotson **explain how** the issues would be simplified. It is an established principle that no ruling in the ITC on even common issues such as claim construction, infringement, validity and enforceability will have any *res judicata* or collateral estoppel effect in this Court. *See Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed.Cir. 1996). Tillotson has also declined to agree to be bound in this Court by any determination of noninfringement, invalidity or unenforceability in the ITC. [*See* Kenworthy Decl., ¶ 6]. Thus, if a stay were granted, the issues would not be narrowed at all.

On the other hand, however, if this Court grants summary judgment in favor of Ansell Healthcare and Ansell Protective Products and finds the '616 patent to be invalid, this Court's ruling will be binding on Tillotson in the ITC, and in every other District Court in which it is attempting to enforce this invalid patent. *See Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1315-16 (Fed. Cir. 1983). Thus, to the extent that considerations of efficiency and judicial economy come into play, they clearly weigh in favor of denying the requested stay. As the Federal Circuit aptly noted in *Young Engineers*, "the evils of vexatious litigation and waste of resources are no less serious because the second proceeding is before an administrative tribunal." *Id.* at 1315.

8

E.    **Tillotson's Reliance On Cases Addressing Which
       Of Two District Courts Should Take Priority Has
       No Bearing On The Issue Of Whether A District
       Court Action Should Be Stayed In Favor Of An
       Administrative Adjudicatory Proceeding**

Tillotson's first argument based on the priority between a first-filed **District Court** action and a second-filed **District Court** action [Tillotson Br. at 8-11] has no applicability here at all.  In the circumstances addressed in that section of Tillotson's brief, an adjudication of the common issues by one court will be binding on the parties in the second court under principles of claim preclusion or issue preclusion.  *See Young Engineers*, 721 F.2d at 1316.  As shown above, that is not so in a patent case where one of the two fora is an administrative adjudicatory tribunal.  Equally inapplicable are cases involving stays pending reexamination.  In a reexamination proceeding, the PTO can materially affect the issues by having the subject claims found unpatentable or narrowed in scope by amendment.  *See e.g.*, *Pegasus Development Corp. v. DirecTV, Inc.*, No. C. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003).

F.    **The Two District Cases Cited By Tillotson
       Are Distinguishable And Not Persuasive**

Tillotson relies on two cases addressing stays of District Court cases pending a determination by the ITC: *Iljin USA v. NIN Corp.*, No. 06-10145, 2006 WL 568351 (E. D. Mich. Mar. 7, 2006) and *Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*, No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005).  Both of these cases are distinguishable from the circumstances presented here and neither are persuasive authority for this case.

The *Flexsys* case involved a motion by ITC respondents and related companies who were also defendants in a District Court proceeding that involved allegations of infringement of four patents, three of which were also the subject of the ITC proceeding.  Thus, under 28 U.S.C. § 1659, three of the movants were absolutely entitled to a stay of the District

9

Court action as to three of the four patents. The fourth patent was a member of the same family. The reasons that the *Flexsys* Court stayed the entire litigation after the core of the case was required to be stayed provide no support whatsoever for a stay in this case where no part of it is required to be stayed at Tillotson's request.

In *Iljin*, the District Court action was filed over 2 ½ months after the filing of the ITC complaint and only five months before the ITC hearing was to be held. The party that filed the **later** District Court action opposed the stay. Here, the litigation in this Court began over 10 months before the ITC investigation was instituted and the party opposing the stay filed the **earlier** District Court proceeding. Aside from this significant factual distinction, it also appears that the *Iljin* Court was influenced by the view that "the ITC is more experienced in deciding patent disputes that the district court." 2006 WL 568351 at *2. With all due respect to the experience Administrative Law Judge Bullock has obtained in patent litigation since being appointed as an Administrative Law Judge in the ITC in 2003,[4/] surely Tillotson is not suggesting that he has more experience in deciding patent cases than this Court.

Finally, the *Iljin* Court did not appear to appreciate that an ITC decision will have no *res judicata* or collateral estoppel effect. Thus, its belief that if the ITC investigation proceeded first, it would narrow the issues, was not well-grounded.

### G.    Granting A Stay Would Be Wholly Inconsistent With Congressional Intent In Enacting 28 U.S.C. § 1659

Contrary to Tillotson's suggestion, Congress did not express any view that there were inherent benefits in staying a District Court action pending the resolution of parallel proceedings before the ITC. Neither the language of 28 U.S.C. § 1659 nor the Legislative

---

[4/]    Prior to that, Administrative Law Judge Bullock was an Administrative Law Judge at the EPA and FERC. [*See* Kenworthy Decl., ¶ 7 and Ex. D].

History support such a proposition. To the contrary, allowing Tillotson to obtain a stay based on its belated filing of a Complaint in the ITC would be wholly inconsistent with Congressional intent in enacting 28 U.S.C. § 1659.

In November 1989, the General Agreement on Tariffs and Trade (GATT) adopted a dispute settlement report that found that ITC investigation procedures were inconsistent with the national treatment rule because they treat imported goods less favorably than the procedures that District Courts apply to domestic goods in infringement proceedings. H. R. Rep. No. 103-826(I) (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773, 3912. In particular, the panel found, *inter alia*, that importers and producers of imported products may have to defend claims in both the ITC and in District Court, possibly at the same time, whereas infringement claims against domestic goods can be heard only in District Court. *Id.* In order to rectify this disparate treatment, 28 U.S.C. § 1659 was enacted so as to give importers and producers of imported goods, the ability, **at their election**, to preclude two parallel proceedings, and there is a short window within which to exercise that right. *Id.* at 3913.

Here the importers of goods **do not want** to have the declaratory judgment actions, which they instituted to remove the cloud over their gloves, derailed by the belated ITC investigation initiated by Tillotson. Application of the national treatment rule which underlies 28 U.S.C. § 1659 should result in the denial of Tillotson's requested stay, because Tillotson would not be able to use the pendency of ITC proceedings to derail an earlier declaratory judgment action filed by a supplier of domestic gloves. A stay of a District Court proceeding (pending completion of an ITC proceeding) at the patentee's request and over the respondents' objections is not only inconsistent with the policies giving rise to 28 U.S.C. § 1659, but also is inconsistent

with the bedrock precept that cases be administered "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1.

## CONCLUSION

For all the foregoing reasons, plaintiffs Ansell Healthcare and Ansell Protective Products respectfully request the Court to (1) deny Tillotson's motion for a stay; and (2) grant plaintiffs' leave to file within ten (10) days hereof a motion for summary judgment as to the invalidity of the '616 patent on the grounds set forth herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(302) 658-9200

*Attorneys for Plaintiffs*
*Ansell Healthcare Products LLC and*
*Ansell Protective Products Inc.*

*Of Counsel:*

Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 26, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this _____ day of _____, 2007, upon consideration

of Defendant Tillotson Corporation's Motion To Stay Proceedings Pending The Outcome Of The

International Trade Commission's Investigation, and the response thereto, it is hereby

ORDERED THAT:

      (1)    The motion is DENIED; and that

      (2)    Ansell Healthcare and Ansell Protective Products may file a motion for

summary judgment as to the invalidity of the '616 patent within ten (10) days hereof.

BY THE COURT:

_____
United States District Judge

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on July 26, 2007, I electronically filed

the foregoing document with the Clerk of the Court using CM/ECF, which will send notification

of such filing to the following:

> Richard L. Horwitz, Esquire
> Kenneth L. Dorsney, Esquire
> Potter Anderson & Corroon LLP

I further certify that copies of the foregoing document were also served upon the

following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

> Richard L. Horwitz, Esquire
> Kenneth L. Dorsney, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza, Sixth Floor
> 1313 N. Market Street
> Wilmington, DE 19801

### BY ELECTRONIC MAIL and FIRST CLASS MAIL

> Anthony B. Askew, Esquire
> Katrina M. Quicker, Esquire
> King & Spalding
> 1180 Peachtree Street, N.E.
> Atlanta, GA 30309

Maryellen Noreika
mnoreika@mnat.com

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR STAY PURSUANT TO 28 U.S.C. § 1659(a)

Pursuant to 28 U.S.C. § 1659(a), plaintiffs Ansell Healthcare Products LLC ("Ansell Healthcare") and Ansell Protective Products Inc. ("Ansell Protective Products") respectfully move for a stay of these actions until the determination of the United States International Trade Commission ("ITC") in Inv. No. 337-TA-608 becomes final. The following facts are pertinent:

- Civil Action No. 06-527 (JJF) between Ansell Healthcare and Tillotson Corporation ("Tillotson") involves issues relating to the alleged infringement, validity and enforceability of the U.S. Patent No. Re. 35,616 ("the '616 patent").

- Civil Action No. 07-93 (JJF) between Ansell Protective Products and Tillotson also involves issues relating to the alleged infringement, validity and enforceability of the '616 patent.

- Tillotson is the complainant in Inv. No. 337-TA-608 pending before the ITC which investigation also involves issues relating to the alleged infringement, validity and enforceability of the '616 patent.

- By Notice published at 72 F.R. 58884 – 58885 on October 17, 2007, Ansell Healthcare and Ansell Protective Products were named as respondents in ITC Inv. No. 37-TA-608, although they have not yet been served with a copy of the Complaint or Amended Complaint.

- This request for stay pursuant to 28 U.S.C. § 1659(a) is made within 30 days after Ansell Healthcare and Ansell Protective Products were named as respondents in ITC Inv. No. 337-TA-608.

Under the facts of this case and in light of this timely request, Ansell Healthcare and Ansell Protective Products have a statutory right to a stay of these proceedings pursuant to 28 U.S.C. § 1659(a). *See In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007).

For the foregoing reasons, Ansell Healthcare and Ansell Protective Products respectfully request that these actions be stayed until the determination of the ITC in Inv. No. 337-TA-608, in which they are now named respondents, becomes final. Plaintiffs' counsel has discussed this motion with Tillotson's counsel and understands that Tillotson does not oppose this motion, and both sides concur that at such time as the stay is lifted, a conference with the Court should be held to set a new scheduling order which would address, *inter alia*, additional discovery that may need to be taken in these actions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_Maryellen Noreika_

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(302) 658-9200

*Of Counsel:*

Thomas B. Kenworthy
David W. Marston Jr.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

Dated: November 13, 2007

*Attorneys for Plaintiffs*
  *Ansell Healthcare Products LLC and*
  *Ansell Protective Products Inc.*

3

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on November 13, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

> Richard L. Horwitz, Esquire
> Kenneth L. Dorsney, Esquire
> POTTER ANDERSON & CORROON LLP

I further certify that copies of the foregoing document were also served upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 N. Market Street
Wilmington, DE 19801

### BY ELECTRONIC MAIL and FIRST CLASS MAIL

Stephen M. Schaetzel, Esquire
Anthony B. Askew, Esquire
Katrina M. Quicker, Esquire
KING & SPALDING
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Maryellen Noreika (#3208)
mnoreika@mnat.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER**

AND NOW, this _____ day of November, 2007, upon consideration of
Plaintiffs' Unopposed Motion For Stay Pursuant To 28 U.S.C. § 1659(a), it is hereby ORDERED
that said motion is GRANTED.  The above-captioned actions are hereby STAYED until the
determination of the United States International Trade Commission in Inv. No. 337-TA-608
becomes final or further order of this Court.

_____

J.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER**

AND NOW, this __14__ day of November, 2007, upon consideration of

Plaintiffs' Unopposed Motion For Stay Pursuant To 28 U.S.C. § 1659(a), it is hereby ORDERED

that said motion is GRANTED.  The above-captioned actions are hereby STAYED until the

determination of the United States International Trade Commission in Inv. No. 337-TA-608

becomes final or further order of this Court.

_____ J.

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE
PRODUCTS LLC,

                    Plaintiff,

          v.

TILLOTSON CORPORATION,

                    Defendant.

Civil Action No. 06-527-JJF

## PLAINTIFF ANSELL HEALTHCARE PRODUCTS LLC'S
## RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ansell

Healthcare Products LLC ("Ansell"), by and through its undersigned counsel, hereby responds to

the First Set of Interrogatories propounded by Defendant Tillotson Corporation ("Tillotson") as

follows:

## GENERAL OBJECTIONS

### General Objection No. 1:

Ansell objects to the "Definitions" and "Instructions" contained in the interrogatories to

the extent that they are inconsistent with or seek to impose obligations beyond those imposed by

the Federal Rules of Civil Procedure, the Local Rules for the District of Delaware or any

applicable Court Order.

**General Objection No. 2:**

Ansell objects to the interrogatories, and to each and every individual interrogatory contained therein, to the extent that they would require disclosure of either documents or information protected by the attorney-client privilege or the work product doctrine, or of otherwise privileged material.

**General Objection No. 3:**

Ansell objects to the interrogatories as unduly burdensome and oppressive to the extent that they purport to require Ansell to search Ansell facilities and inquire of Ansell employees other than those facilities and employees that would reasonably be expected to have responsive information.

**General Objection No. 4:**

Ansell objects to the interrogatories to the extent they require Ansell to search for and reveal privileged information from its and its attorney's litigation files relating or referring to this case.

**General Objection No. 5:**

Ansell objects to the interrogatories to the extent that they seek information which is confidential or proprietary to, or the trade secrets of, either Ansell or a third party.

**General Objection No. 6:**

Ansell objects to the interrogatories to the extent that they seek information that is publicly available, not uniquely within the control of Ansell, and/or is equally available to all of the parties of this proceeding.

**General Objection No. 7:**

Ansell objects to the interrogatories to the extent that they seek information that is not relevant to the subject matter of this litigation and that is not reasonably calculated to lead to the discovery of admissible evidence relevant and material to a claim or defense of any party to this action.

**General Objection No. 8:**

Ansell objects to the interrogatories to the extent that they purport to compel Ansell to draw legal conclusions in order to respond.

**General Objection No. 9:**

Ansell objects to Definition A on the grounds that the definition of "Ansell" to mean "Ansell Healthcare Products, LLC, [and] any of its current or former U.S. and foreign parents, subsidiaries, affiliates, divisions, and companies or corporations owned by Ansell in whole or in part, collectively and individually, and all other persons acting or purporting to act on behalf of Ansell, for example its officers, directors, agents, and attorneys, both present and past, as well as its current employees" is vague, ambiguous, and unintelligible; and that it is so excessively broad that it is unduly burdensome, oppressive, and harassing. Ansell will construe the terms "Ansell" wherever used in the Interrogatories to refer only to Ansell Healthcare Products LLC.

3

Ansell expressly incorporates the above General Objections as though set forth fully in the response to each of the following individual Interrogatories, and, to the extent that they are not raised in any particular response, Ansell does not waive those objections. An answer to an Interrogatory shall not be deemed a waiver of any applicable specific or general objection to a discovery Interrogatory. Moreover, by responding to any of the Interrogatories, Ansell does not waive any objections it may have that the information requested is not relevant or inadmissible at trial in this proceeding, and expressly reserves the right to assert those objections.

## SPECIFIC RESPONSES

**Interrogatory No. 1:**

Identify all of Ansell's current and former manufacturers, importers, distributors, and suppliers of hand gloves, including specifically Ansell's current and former manufacturers, importers, distributors, and suppliers of Ansell's NitraTex®, NitraTex® EP, and Micro-Touch nitrile gloves, and for each entity identified, identify the Ansell hand gloves which that entity has manufactured, imported, distributed, or supplied.

**Response to Interrogatory No. 1:**

Ansell objects to this interrogatory on all of the grounds set forth in its General Objections and incorporates those objections as if set forth in full herein. Ansell further objects to this interrogatory as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action, particularly insofar as the interrogatory seeks information concerning hand gloves other than the Micro-Touch nitrile gloves that Tillotson has accused of infringing U.S. Reissue Patent No. 35,616. Ansell further objects to identifying its distributors because such information is not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action and because

4

Tillotson has shown a propensity for suing Ansell's customers. Ansell further objects to the

temporal scope of this interrogatory to the extent it seeks the identity of any former

manufacturers, importers, distributors and/or suppliers whose involvement fell outside the

applicable statute of limitations. Subject to these objections and without waiver thereof, Ansell

responds as follows: The importer of the Micro-Touch nitrile gloves is Ansell. The

manufacturers/suppliers of the Micro-Touch nitrile gloves are:

> Perusahaan Getah Asas Sdn Bhd
> Lot 754 Jalan Haji Sirat off Jalan Kapar
> Klang 41720 Selangor
> Malaysia
>
> Seal Polymer Industries Bhd
> Lot 72706 Jalan Lahat
> Kawasan Perindustrian Bukit Merah
> Lahat 31500 Perak
> Malaysia

DATE: January 5, 2007

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, Delaware  19899
(302) 658-9200

OF COUNSEL:

Attorneys for Plaintiff
Ansell Healthcare Products LLC

Thomas B. Kenworthy
David W. Marston Jr. (#3972)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5000

5

## VERIFICATION

Scott Papier, acknowledging that this verification is made under penalty of perjury, states that he is the Regional Director, Professional/Consumer – Americas Region and a Senior Vice President of plaintiff Ansell Healthcare Products LLC, that he has read the foregoing Plaintiff Ansell Healthcare Products LLC's Response to Defendant's First Set of Interrogatories, and that to the best of his knowledge, information and belief, the facts set forth therein are true and correct.

DATED

_____
Scott Papier

## CERTIFICATE OF SERVICE

I, David W. Marston Jr., do hereby certify that on this date, true and correct copies of the

foregoing Plaintiff Ansell Healthcare Products LLC's Response to Defendant's First Set of

Interrogatories were served upon defendant's counsel, as follows:

## VIA ELECTRONIC TRANSMISSION AND FIRST CLASS U.S. MAIL:

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19899

Anthony B. Askew, Esquire
taskew@kslaw.com
Katrina M. Quicker, Esquire
kquicker@kslaw.com
King & Spalding
1180 Peachtree Street, NE
Atlanta, Georgia  30309

DATE: January 5, 2007

_____
David W. Marston Jr.

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE PRODUCTS,    :
                                                     :
      Plaintiff,              :
                                                     :
   v.                                     : C.A. No. 06-527 JJF
                                                     :
TILLOTSON CORP.,                      :
                                                     :
      Defendant.             :
                                                     :

## MEMORANDUM ORDER

Pending before the Court is the Motion for Enforcement of the Parties' Protective Order filed by Defendant Tillotson Corp. ("Tillotson"). (D.I. 121.)

On November 14, 2007, the Court granted Plaintiff's unopposed Motion to Stay pursuant to 28 U.S.C. § 1659(a), staying this action until a final determination by the United States International Trade Commission ("ITC"). (D.I. 119.)

By its motion, Tillotson requests the Court to lift the stay for the limited purpose of enforcing the protective order entered in this case prior to the stay (D.I. 65). Tillotson contends that Plaintiff Ansell Healthcare Products ("Ansell") has violated the protective order by wrongly refusing to return inadvertently produced privileged documents and by using the privileged documents in the ITC proceeding.

In response, Ansell contends the Court lacks authority to resolve the protective order issue and that lifting the stay

would allow the two-front litigation that 28 U.S.C. § 1659(a) was enacted to prevent.

After considering the parties' papers, the Court concludes that it lacks the authority, during the time a § 1659 stay is in effect, to consider the alleged conduct of counsel which violated an order of this Court. The Federal Circuit in *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) stated that "[t]he purpose of § 1659 is to prevent separate proceedings on the same issues occurring at the same time." The Court questions whether the "same issues" principle encompasses a possible violation of an order of this Court, and whether the underlying issues of privilege can be addressed by the ITC administrative law judge. However, there will be opportunity for the Court to address the alleged protective order violation after the conclusion of the ITC proceeding.

NOW THEREFORE, IT IS HEREBY ORDERED that Tillotson's Motion for Enforcement (D.I. 121) is **DENIED**.

February 26, 2008

UNITED STATES DISTRICT JUDGE.

2

# EXHIBIT H

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN NITRILE GLOVES** | **Inv. No. 337-TA-608** |

### AND

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN NITRILE RUBBER GLOVES** | **Inv. No. 337-TA-612** |

## ORDER NO. 28: SETTING THE PROCEDURAL SCHEDULE

### (October 5, 2007)

Investigation 337-TA-608 was instituted by the Commission on June 29, 2007 and the notice of investigation was published in the Federal Register on July 6, 2007.[1]  The Administrative Law Judge set a fourteen-month target date of September 8, 2008 for completion of this investigation by the Commission in Order No. 2.  Order No. 2 also requested discovery statements from the parties by August 10, 2007.

Investigation 337-TA-612 was instituted by the Commission on August 16, 2007 and the notice of investigation was published in the Federal Register on August 22, 2007.[2]  On September 19, 2007, the Administrative Law Judge issued an initial determination, Order No. 19, which consolidated investigation 337-TA-608 and 337-TA-612.  In that initial determination, the Administrative Law Judge set a fifteen-month target date of November 22, 2008 for Inv. No. 337-

---

[1] *See* 72 Fed. Reg. 37,052 (July 6, 2007).
[2] *See* 72 Fed. Reg. 47,072 (August 22, 2007).

TA-612 and extended the target date in Inv. No. 337-TA-608 to sixteen-and-a-half months, or November 22, 2008.[3] Order No. 19 also requested discovery statements from the parties by October 1, 2007. On September 28, 2007, Complainant Tillotson Corporation ("Tillotson") filed a motion for extension of time to file the requested discovery statement, which was granted by Order No. 24, extending the time to file discovery statements to October 3, 2007.

On October 1, 2007, separate discovery statements were received from the following Respondents: Cardinal Health, Inc.; Cardinal Health 200, Inc.; and Cardinal Health Malaysia 211 Sdn. Bhd. (collectively "Cardinal Health"), and Henry Schein, Inc. and HSI Gloves, Inc. (collectively "HSI"). On October 3, 2007, Complainant and Respondents Ansell, Ltd.; Darby Group Companies, Inc.; Dynarex Corporation; Liberty Glove and Safety Co.; Protective Industrial Products Inc.; Tronex International Inc.; Top Glove Corporation Bhd.; Laglove (M) Sdn. Bhd.; Smart Glove Holdings Sdn. Bhd.; YTY Holdings Sdn. Bhd.; Kossan Rubber Industries Bhd., Ltd.; Riverstone Resources Sdn. Bhd.; PT Shamrock Manufacturing Corporation; JDA (Tianjin) Plastic Rubber Co.; Hartalega Holdings Bhd.; PT Medisafe Technologies and Latexx Partners Berhad filed a joint proposed procedural schedule. On October 3, 2007, separate discovery statements were received from the Commission Investigative Staff ("Staff") and Respondents Seal Polymer Industries Bhd. ("Seal Polymer"), Supermax Corporation Bhd. ("Supermax"), and Latexx Partners Berhad ("Latexx") agreeing with the joint proposed procedural schedule filed by Complainant.

Although the undersigned strongly encouraged the parties to "make intensive good faith efforts to agree to a procedural schedule" in Order No. 19, the parties were unable to agree on a

---

[3] Note that November 22, 2008 falls on a Saturday. Therefore, the target date is actually set for November 24, 2008.

procedural schedule. The dispute between the parties is the proposed scope and date of the *Markman* hearing. In Order No. 19, the undersigned proposed a *Markman* hearing for December 13-14, 2007. Cardinal Health and HSI oppose a December *Markman* hearing and propose that the *Markman* hearing take place in late February. In the alternative, Cardinal Health and HSI propose that the *Markman* hearing that is in December be limited to the issues raised in the current pending motions for summary judgment. Cardinal Health and HSI assert that it is unreasonable to have a *Markman* hearing just four months after the investigation is instituted, and note that in Inv. No. 337-TA-600, the *Markman* hearing was scheduled for seven months after the investigation was instituted.

The undersigned does not find Cardinal Health and HSI's arguments to be persuasive. The target date in Inv. No. 337-TA-600 is 19 months. Therefore, the longer than usual target date allowed the undersigned to schedule the *Markman* hearing in Inv. No. 337-TA-600 at a later time. In these two investigations the target date is only 16 1/2 and 15 months. The undersigned notes that in previous cases where the target date was set at 15 months, a *Markman* hearing was held five months after the investigation was instituted.[4] In Inv. No. 337-TA-547, there were five patents at issue involving more complex technology than the technology involved in the one patent-at-issue in this investigation. Accordingly, the undersigned finds that a December *Markman* hearing is reasonable.

In addition, the undersigned has no intention of limiting the December *Markman* hearing to only the claim terms at issue in the pending motions for summary judgement. As noted in the Ground Rules, the purpose of the *Markman* hearing is for "construing any disputed claim terms of the patents at issue in the investigation" and that after the order construing the disputed claims is issued, "discovery and briefing . . . shall be limited to that claim construction." The parties are expected to

---

[4] *See* Inv. No. 337-TA-547, Order No. 3, September 19, 2005.

brief all disputed claim terms during the December *Markman* hearing . All other claim terms shall

be deemed as undisputed.[5]

Based on a review of the proposed procedural schedules, the undersigned hereby adopts the

following procedural schedule:

| Event | Deadline Date |
|---|---|
| Exchange list of terms each party contends requires construction | October 29, 2007 |
| First settlement conference | By October 31, 2007 |
| File identification of claim construction expert witnesses, including their expertise and curriculum vitae for claim construction hearing | November 2, 2007 |
| Submission of first settlement conference joint report | November 5, 2007 |
| Exchange interpretations by the private parties for each term the parties contend require construction, along with preliminary identification of supporting intrinsic and extrinsic evidence (including claim construction expert reports, if any) | November 9, 2007 |
| Exchange of rebuttal claim construction expert reports | November 16, 2007 |
| Meet and confer in effort to narrow the list of terms that each party contends require construction. Submission of final list of terms that each party contends require construction. | November 16, 2007 |
| File tentative list of witnesses a party will call to testify at the *Markman* hearing, with an identification of each witness' relationship to the party | November 16, 2007 |
| File opening claim construction briefs - private parties | November 21, 2007 |
| File opening claim construction brief - Staff | November 29, 2007 |

---

[5] *See the* undersigned previous statements in previous issued Orders construing the terms of the asserted claims of the patents at issue that "All other claim terms shall be deemed as undisputed and shall be interpreted by the undersigned in accordance with 'their ordinary meaning as viewed by one of ordinary skill in the art.'" *Certain Personal Computers, Server Computers, and Components Thereof,* Order No. 15 (February 8, 2005) at 23; *Certain Personal Computers, Monitors and Components Thereof,* Order No. 22 (March 10, 2005) at 20 (citations omitted).

| Event | Deadline Date |
|---|---|
| File rebuttal claim construction briefs - private parties | December 5, 2007 |
| File rebuttal claim construction brief - Staff | December 11, 2007 |
| Tutorial (if necessary) and *Markman* hearing | December 13-14, 2007 at 9:00 a.m. in Courtroom A |
| File notice of prior art | December 19, 2007 |
| Submission of *Markman* joint proposed claim construction chart | December 21, 2007 |
| File identification of expert witnesses on issues other than claim construction, including their expertise and curriculum vitae | January 4, 2008 |
| Second settlement conference | By January 18, 2008 |
| Exchange of initial expert reports on issues other than claim construction | January 25, 2008 |
| File tentative list of witnesses a party will call to testify at the hearing, with an identification of each witness' relationship to the party | January 25, 2008 |
| Submission of second settlement conference joint report | January 25, 2008 |
| Fact discovery cutoff and completion | February 19, 2008 |
| Exchange of rebuttal expert reports on issues other than claim construction | February 22, 2008 |
| Expert discovery cutoff and completion | March 21, 2008 |
| Deadline for filing summary determination motion | March 27, 2008 |
| Deadline for motions to compel | March 28, 2008 |
| Exchange of exhibit lists among the parties | April 7, 2008 |
| Third settlement conference | By April 11, 2008 |
| Submit and serve direct exhibits (including witness statements), with physical and demonstrative exhibits available – Complainant(s) and Respondent(s) | April 14, 2008 |
| Submit and serve direct exhibits (including witness statements), with physical and demonstrative exhibits available -- Staff | April 17, 2008 |

| Event | Deadline Date |
|---|---|
| Submission of third settlement conference joint report | April 18, 2008 |
| File objections to direct exhibits (including witness statements) | April 21, 2008 |
| Submit and serve rebuttal exhibits (including witness statements), with rebuttal physical and demonstrative exhibits available -- all parties | April 28, 2008 |
| File responses to objections to direct exhibits (including witness statements) | April 28, 2008 |
| File pre-trial statements and briefs -- Complainant(s) and Respondent(s) | April 30, 2008 |
| File requests for receipt of evidence without a witness | May 5, 2008 |
| File objections to rebuttal exhibits (including witness statements) | May 5, 2008 |
| Deadline for motions *in limine* | May 6, 2008 |
| File pre-trial statement and brief -- Staff | May 7, 2008 |
| File high priority objections statement | May 9, 2008 |
| File responses to objections to rebuttal exhibits (including witness statements) | May 12, 2008 |
| File responses to high priority objections statement | May 13, 2008 |
| File responses to motions *in limine* | May 13, 2008 |
| Pre-trial conference | May 16, 2008 at 10:00 a.m. in Courtroom B |
| Opening Statements | May 16, 2008 following pre-trial conference |
| Trial | May 19-23, 2008 and May 27-30, 2008 at 9:00 a.m. in Courtroom B[6] |

---

[6] In the undersigned's view, 9 days of trial time is excessive when considering that there is only one patent-at-issue, that there no live direct testimony, and that claim construction issues will already have been decided. The parties should reevaluate their approximation of time needed to present their case closer to the trial date.

| Event | Deadline Date |
|---|---|
| File initial post-trial briefs, proposed findings of fact and conclusions of law, and final exhibit lists | June 13, 2008 |
| File reply post-trial briefs, objections and rebuttals to proposed findings of fact | June 27, 2008 |
| Initial Determination due | August 25, 2008[7] |
| Target date for completion of investigation | November 24, 2008 |

For the dates set forth above that require a submission or filing, the date set forth is the date that the submission or filing must be at or filed at the Commission (by the close of business) and is not the date that such submission or filing is merely served.


**SO ORDERED.**

Charles E. Bullock
Administrative Law Judge

---

[7] August 24, 2008 falls on a Sunday.

**IN THE MATTER OF CERTAIN NITRILE GLOVES**        337-TA-608 & 337-TA-612

### CERTIFICATE OF SERVICE

I, Marilyn R. Abbott, hereby certify that the attached **ORDER** was served upon, **Vu Q. Bui, Esq.,** Commission Investigative Attorney, and the following parties via first class mail and air mail where necessary on <u>October 5          </u>, **2007.**

*Marilyn R. Abbott*

Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, DC   20436

**FOR COMPLAINANT TILLOTSON CORPORATION:**
    Gilbert B. Kaplan, Esq.
    Jeffrey M. Telep, Esq.
    Taryn L. Koball, Esq.
    **KING & SPALDING LLP**
    1700 Pennsylvania Avenue, N.W.
    Washington, DC 20006-4706

    Anthony B. Askew, Esq.
    Katrina M. Quicker, Esq.
    Jason M. Pass, Esq.
    **KING & SPALDING LLP**
    1180 Peachtree Street
    Atlanta, GA 30309

    Gregory C. Dorris, Esq.
    Charles H. Carpenter, Esq.
    Sean P. Bamford, Esq.
    **PEPPER HAMILTON, LLP**
    600 Fourteenth Street, N.W.
    Washington, DC 20005-2004

    William D. Belanger, Esq.
    Aaron J. Levangie, Esq.
    **PEPPER HAMILTON, LLP**
    101 Federal Street, Suite 1010
    Boston, MA 02110-1817

**IN THE MATTER OF CERTAIN NITRILE GLOVES**          **337-TA-608 & 337-TA-612**

**FOR RESPONDENT ANSELL LTD.:**
  Thomas B. Kenworthy, Esq.
  David W. Marston Jr., Esq.
  Rebecca J. Hillyer, Esq.
  **MORGAN, LEWIS & BOCKIUS LLP**
  1701 Market Street
  Philadelphia, PA 19103-2921

**FOR RESPONDENTS CARDINAL HEALTH, INC., CARDINAL HEALTH 200, INC. & CARDINAL HEALTH MALAYSIA 211 Sdn. Bhd.:**
  Paul F. Brinkman, Esq.
  Jeffrey Schwartz, Esq.
  **ALSTON & BIRD LLP**
  950 F Street, N.W.
  Washington, DC 20004-1404

**FOR RESPONDENT DARBY GROUP COMPANIES, INC.:**
  Michael S. French, Esq.
  Shanon J. McGinnis, Esq.
  Sarah-Nell H. Walsh, Esq.
  Joseph D. Wargo, Esq.
  **WARGO & FRENCH, LLP**
  1170 Peachtree Street NE, Suite 2020
  Atlanta, GA 30309

**FOR RESPONDENT DYNAREX CORPORATION:**
  Merritt R. Blakeslee, Esq.
  Donald E. DeKieffer, Esq.
  J. Kevin Horgan, Esq.
  Gregory S. Menegaz, Esq.
  **DEKIEFFER & HORGAN**
  729 Fifteenth Street, N.W., Suite 800
  Washington, DC 20005

**IN THE MATTER OF CERTAIN NITRILE GLOVES**     **337-TA-608 & 337-TA-612**

**FOR RESPONDENTS**
 **HARTALEGA HOLDINGS Bhd.**
 **JDA (TIANJIN) PLASTIC RUBBER CO. LTD**
 **KOSSAN RUBBER INDUSTRIES Bhd. Ltd.**
 **LAGLOVE (M) Sdn. Bhd.**
 **LATEXX PARTNERS BERHAD**
 **PT MEDISAFE TECHNOLOGIES**
 **PT SHAMROCK MANUFACTURING CORPORATION**
 **RIVERSTONE RESOURCES Sdn. Bhd.**
 **SMART GLOVE HOLDINGS Sdn. Bhd.**
 **YTY HOLDINGS Sdn. Bhd.**
 **TOP GLOVE CORPORATION Bhd.:**
  Perry R. Clark, Esq.
  Jenny Lee, Esq.
  Michael T. Pieja, Esq.
  Kenny Nguyen, Esq.
  **KIRKLAND & ELLIS LLP**
  555 California Street
  San Francisco, CA 94104-1501

**FOR RESPONDENT SMART GLOVE HOLDINGS, Sdn.Bhd.**
  Scott M. Daniels, Esq.
  Ken-Ichi Hattori, Esq.
  Ryan B. Chirnomas, Esq.
  Kumiko Ide, Esq.
  Shuji Yoshizaki, Esq.
  **WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP**
  1250 Connecticut Avenue, N.W.
  Suite 700
  Washington, DC  20036

**FOR RESPONDENTS HENRY SCHEIN, INC. & HSI GLOVES INC.:**
  Lawrence K. Nodine, Esq.
  Robin L. Gentry, Esq.
  J. Scott Anderson, Esq.
  **NEEDLE & ROSENBERG, P.C.**
  999 Peachtree Street, Suite 1000
  Atlanta, GA 30309-3915

**IN THE MATTER OF CERTAIN NITRILE GLOVES**          **337-TA-608 & 337-TA-612**


**FOR RESPONDENT LIBERTY GLOVE, INC.:**

Rosa S. Jeong, Esq.
Philippe M. Bruno, Esq.
Mark L. Hogge, Esq.
Shailendra K. Maheshwari, Esq.
Kate A. Jefcoat, Esq.
**GREENBERG TRAURIG, LLP**
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006

**FOR RESPONDENT PROTECTIVE INDUSTRIAL PRODUCTS, INC.:**

J. Rodgers Lunsford III, Esq.
Elizabeth Borland, Esq.
**SMITH, GAMBRELL, AND RUSSELL LLP**
Promenade II, Suite 3100
Atlanta, GA 30309

**FOR RESPONDENT TRONEX INTERNATIONAL, INC.:**

Maureen F. Browne, Esq.
Jenny L. Workman, Esq.
**HELLER EHRMAN, LLP**
1717 Rhode Island Avenue, N.W.
Washington, DC 20036-3001

**FOR RESPONDENT QRP INC. d/b/a QRP GLOVES:**

Daniel J. Quigley, Esq.
QUIGLEY & WHITEHILL P.L.C.
2730 E. Broadway Blvd., Suite 160
Tucson, AZ 85716-5384

**FOR RESPONDENTS SEAL POLYMER INDUSTRIES Bhd & SUPERMAX CORPORATION Bhd:**

Todd L. Juneau, Esq.
**JUNEAU PARTNERS, PLLC**
2121 Eisenhower Avenue #200
Alexandria, VA 22314

**IN THE MATTER OF CERTAIN NITRILE GLOVES**          **337-TA-608 & 337-TA-612**

**FOR RESPONDENT YEE LEE CORPORATION Bhd.:**
    Keith R. Marino, Esq.
    Ralph A. Mittelberger, Esq.
    **ARENT FOX LLP**
    1050 Connecticut Avenue NW
    Washington, DC 20036-5339

**RESPONDENTS:**
    **ADENNA, INC.**
    12216 McCann Drive
    Santa Fe Springs, CA 90670

    **DASH MEDICAL GLOVES, INC.**
    c/o Robert J. Sullivan
    1018 South 54th Street
    Franklin, WI 53132

    **DENTEXX/FIRST MEDICA INFECTION CONTROL ASSOCIATE**
    3704C Boren Drive
    Greensboro, NC 27407

    **MEDTEXX PARTNERS INC.**
    102 Engle St. FL2
    Englewood, NJ 07631

    **Ansell (Thailand) Ltd.**
    110 Moo 4
    Chalongkrung Road
    Bangkok, Thailand 10520

    **Ansell Healthcare Products LLC**
    200 Schulz Drive
    Red Bank, NJ 07701

    **Ansell Protective Products Inc.**
    200 Schulz Drive
    Red Bank, NJ 07701

    **Top Glove Sdn. Bhd.**
    Lot 4968
    Jalan Teratai
    Batu 6

IN THE MATTER OF CERTAIN NITRILE GLOVES          337-TA-608 & 337-TA-612

Off Jalan Meru
41050 Klang
Selangor D.E.
Malaysia

**TG Medical (USA) Inc.**
165 North Aspen Ave.
Azusa, CA 91702

**Hartalega Sdn. Bhd.**
Lot 9
Jalan Kuang Bulan
Taman Kepong Industrial Estate
52100 Kuala Lumpur
Malaysia

**Pharmatex USA Inc.**
77530 Enfield Lane Bldg. 1
Suite 203
Palm Desert, CA 92211

**Perusahaan Getah Asas Sdn. Bhd.**
Lot 754
Jalan Haji Sirat
Off Jalan Kapur
42100 Klang
Selangor D.E.
Malaysia

**Kossan Gloves Inc. d/b/a Sintex**
16810 Baker Springs #219
Houston, TX 77084

**PT Haloni Jane**
JL. Raya Serang KM 13.8 Cikupa Tangerang
Indonesia

**Shamrock Manufacutring Company Inc.**
5445 Daniels Street
·Chino, CA 91710

IN THE MATTER OF CERTAIN NITRILE GLOVES        337-TA-608 & 337-TA-612

**Smart Glove Corporation Sdn. Bhd.**
Lot 6487
Batu 5 3/4
Sementajln Kapar
42100 Klang
Selangor D.E.
Malaysia

**YTY Industry (Manjung) Sdn. Bhd.**
Lot 1422-1424
Batu 10 Lekir
32020 Sitiawan
Perak Darul Ridzuan
Malaysia

## PUBLIC MAILING LIST

Sherry Robinson
LEXIS - NEXIS
8891 Gander Creek Drive
Miamisburg, OH   45342

Ronnita Green
Thomson West
1100 – 13th Street NW
Suite 200
Washington, DC   20005

# EXHIBIT I

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

**H**Sellmon v. Reilly
D.D.C.,2008.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Tony R. SELLMON, et al., Plaintiff,
v.
Edward F. REILLY, Jr., Chairman of the United
States Parole Commission, et al., Defendants.
**Civil Action No. 06-01650 (ESH).**

June 20, 2008.

**Background:** District of Columbia inmates, each of
whom committed his crime and was sentenced prior
to date when the United States Parole Commission
(USPC) took over responsibility from the District of
Columbia Parole Board for conducting parole
hearings for D.C. Code offenders, brought § 1983
action against USPC chairman and its
commissioners, alleging that USPC retroactively
applied its own parole guidelines and practices in
violation of the Ex Post Facto Clause of the
Constitution. The District Court, Ellen Segal Huvelle,
J., 551 F.Supp.2d 66, granted in part and denied in
part inmates' summary judgment motion. Inmates and
USPC moved for reconsideration.

**Holdings:** The District Court held that:
(1) inmate was not entitled to additional discovery
regarding board's alleged practice of not using
offense accountability to determine inmate's
suitability for parole prior at time of his offense;
(2) USPC's retroactive application of 2000
guidelines, rather than 1987 regulations, did not
substantially increase inmates' risk of lengthier
incarceration;
(3) parole policy guideline, which had been part of
record before District Court, was not proper subject
for argument on motion for reconsideration; and
(4) USPC was limited to the permissible grounds to
depart from parole action indicated by board
regulations in effect at time of inmates' offenses.

Motions denied.

**[1] Federal Civil Procedure 170A** ⮞2641

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(G) Relief from Judgment
      170Ak2641 k. In General. Most Cited
Cases
A motion for reconsideration pursuant to rule
governing motions to alter or amend a judgment will
not be lightly granted. Fed.Rules Civ.Proc.Rule
59(e), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ⮞2653

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(G) Relief from Judgment
      170Ak2651 Grounds
        170Ak2653 k. Error in General. Most
Cited Cases

**Federal Civil Procedure 170A** ⮞2655

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(G) Relief from Judgment
      170Ak2651 Grounds
        170Ak2655 k. Further Evidence or
Argument. Most Cited Cases
Reconsideration under rule governing motions to
alter or amend a judgment is only appropriate when
the moving party shows new facts or clear errors of
law which compel the court to change its prior
position. Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** ⮞2641

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(G) Relief from Judgment
      170Ak2641 k. In General. Most Cited
Cases

**Federal Civil Procedure 170A** ⮞2651.1

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(G) Relief from Judgment
      170Ak2651 Grounds

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

170Ak2651.1 k. In General. Most Cited Cases
Reconsideration motions under rule governing motions to alter or amend a judgment are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances. Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞2655**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2655 k. Further Evidence or Argument. Most Cited Cases
Reconsideration under rule governing motions to alter or amend a judgment is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞2657.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2657 Procedure
                170Ak2657.1 k. In General. Most Cited Cases
Inmate, who committed his crime and was sentenced prior to date when the United States Parole Commission (USPC) took over responsibility from the District of Columbia Parole Board for conducting parole hearings for D.C.Code offenders, was not entitled to additional discovery regarding board's alleged practice of not using offense accountability to determine inmate's suitability for parole at time of his offense, in inmate's motion for reconsideration of court's grant of USPC's motion for judgment on the pleadings on inmate's ex post facto claims, where the board's stated policy contradicted inmate's position and no evidence justified further discovery. U.S.C.A. Const. Art. 1, § 9, cl. 3; Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ☞1772**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1772 k. Insufficiency in General. Most Cited Cases

**Federal Civil Procedure 170A ☞1829**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1829 k. Construction of Pleadings. Most Cited Cases

**Federal Civil Procedure 170A ☞1835**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
In considering a motion to dismiss, the court must consider the facts presented as true and construe them in the light most favorable to plaintiff, but the facts alleged must be enough to raise a right to relief above the speculative level, and the Court need not consider inferences that are unsupported by facts or legal conclusions framed as facts.

**[7] Constitutional Law 92 ☞2823**

92 Constitutional Law
    92XXIII Ex Post Facto Prohibitions
        92XXIII(B) Particular Issues and Applications
            92k2823 k. Parole. Most Cited Cases

**Pardon and Parole 284 ☞49**

284 Pardon and Parole
    284II Parole
        284k48 Eligibility for Parole or Parole Consideration
            284k49 k. Factors Governing Decision, in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00561-UNA    Document 25-10    Filed 08/18/2008    Page 4 of 8
--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

Page 3

General. <u>Most Cited Cases</u>
Even if District of Columbia Parole Board's informal practice, at time inmate committed offense, had been to not consider offense accountability in determining an inmate's suitability for parole, United States Parole Commission's (USPC) retroactive application of guideline permitting consideration of offense accountability would not have been ex post facto violation, since consideration of offense accountability would not have substantially increased inmate's risk of lengthier incarceration, given totally unstructured character of Board's parole decisions at the time. <u>U.S.C.A. Const. Art. 1, § 9, cl. 3</u>; <u>Fed.Rules Civ.Proc.Rule, 59(e), 28 U.S.C.A.</u>

**[8] Constitutional Law 92 €—2823**

92 Constitutional Law
   92XXIII Ex Post Facto Prohibitions
      92XXIII(B) Particular Issues and Applications
         92k2823 k. Parole. <u>Most Cited Cases</u>

**Pardon and Parole 284 €—49**

284 Pardon and Parole
   284II Parole
      284k48 Eligibility for Parole or Parole Consideration
         284k49 k. Factors Governing Decision, in General. <u>Most Cited Cases</u>
United States Parole Commission's (USPC) retroactive application of 2000 Guidelines, rather than application of 1987 Regulations, in denying inmates parole on basis of "unusual cruelty" of their crimes, did not substantially increase inmates' risk of lengthier incarceration, in violation of ex post facto doctrine, given that USPC's stated reasons for denying parole would have supported finding of "unusual cruelty" under 1987 regulations. <u>U.S.C.A. Const. Art. 1, § 9, cl. 3</u>; <u>Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.</u>

**[9] Federal Civil Procedure 170A €—2662**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(G) Relief from Judgment
      170Ak2657 Procedure
         170Ak2662 k. Hearing and

Determination. <u>Most Cited Cases</u>
Parole policy guideline, which had been part of record before District Court on motion for summary judgment on inmates' claims arising out of parole denials, was not proper subject for argument on motion for reconsideration. <u>Fed.Rules Civ.Proc.Rule 59, 28 U.S.C.A.</u>

**[10] Pardon and Parole 284 €—49**

284 Pardon and Parole
   284II Parole
      284k48 Eligibility for Parole or Parole Consideration
         284k49 k. Factors Governing Decision, in General. <u>Most Cited Cases</u>
Parole policy guideline relating to how the District of Columbia Parole Board determined the set-off time between parole reconsideration hearings had no relevance to actual parole decisions, and thus United States Parole Commission (USPC) was limited to the permissible grounds to depart from parole action indicated by board regulations in effect at time of inmates' offenses, and before USPC took over responsibility from the board for conducting parole hearings for D.C.Code offenders, in determining whether to grant parole to inmates.

Jason Drew Wallach, Dickstein Shapiro LLP, Washington, DC, for Plaintiff.
Kenneth Adebonojo, U.S. Attorney's Office, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

ELLEN SEGAL HUVELLE, District Judge.
*1 Plaintiffs, eight inmates serving prison sentences for committing criminal offenses under the District of Columbia Code, filed suit alleging that the United States Parole Commission ("USPC" or "the Commission") retroactively applied its own parole guidelines and practices thereby significantly increasing the risk that they would serve longer terms of incarceration in violation of the *Ex Post Facto* Clause. After considering the plaintiffs' motion for summary judgment and the defendants' motion for judgment on the pleadings, the Court issued a Memorandum Opinion on May 5, 2008. *See Sellmon v. Reilly,* 551 F.Supp.2d 66 (D.D.C.2008). Plaintiffs Phillips, Sellmon, and Swinton have now moved, pursuant to <u>Fed.R.Civ.P. 59(e)</u>, to alter or amend the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

Court's judgment. Defendants have also moved for reconsideration. For the reasons stated herein, both motions will be denied.

### ANALYSIS

[1][2][3][4]"A motion for reconsideration ... will not be lightly granted."*Mobley v. Cont'l Cas. Co.*, 405 F.Supp.2d 42, 45 (D.D.C.2005). Reconsideration is only appropriate when "the moving party shows new facts or clear errors of law which compel the court to change its prior position."*Nat'l Ctr. for Mfg. Sci. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C.Cir.2000).*See also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996). Such motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."*Niedermeier v. Office of Baucus*, 153 F.Supp.2d 23, 28 (D.D.C.2001)."Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996).*See also Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C.Cir.1993).

### I.    PLAINTIFFS'    MOTION    FOR RECONSIDERATION

#### A. Phillips

[5] Phillips moves for reconsideration arguing that the Court erred in granting defendant's motion for judgment on the pleadings with respect to his case. (*See* Pls.' Mot. 5.) Phillips, like the remaining seven plaintiffs, alleged that defendants violated the *Ex Post Facto* Clause by applying the 2000 Guidelines, rather than the 1987 Regulations, to his case, and thereby substantially increased his risk of increased incarceration. *Sellmon*, 551 F.Supp.2d at 68-69.The Court held, however, that because Phillips committed his offense prior to 1987, he was not entitled to rely on the 1987 Regulations to demonstrate an *ex post facto* violation, since those regulations did not apply when he committed his offense. *Id.* at 84-87.

In moving for reconsideration, Phillips argues that the Court erred by failing to credit as true the allegation in his *pro se* complaint that at the time he committed his offense, "the D.C. Parole Board's

policy and practice was to consider offense accountability as satisfied by an inmate's service of his or her minimum sentence and not as a proper consideration in determining the inmate's suitability for parole."(Pls.' Mot. 4.) This was the case under the Board's 1987 Regulations, but as Phillips appears to concede, this was not the Board's policy at the time of his offense.[FN1]Nonetheless, Phillips requests discovery in order to prove his assertion that the Parole Board's practice was not to use offense accountability to determine an inmate's suitability for parole prior to 1987. (*Id.* 6.)[FN2]

*2 [6] Phillips has failed to offer *any* basis to support this contention. The Board's stated policy contradicts his position and Phillips has not provided any facts which would justify further discovery. It is true that in considering a motion to dismiss, the Court must consider the facts presented as true and construe them in the light most favorable to plaintiff. *Williams v. Johnson*, 537 F.Supp.2d 141, 148 (D.D.C.2008). However, the facts alleged "must be enough to raise a right to relief above the speculative level,"*Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and the Court need not consider inferences that are unsupported by facts or legal conclusions framed as facts. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). That is all that Phillips has offered here.

Moreover, Phillips's unsupported characterization of the Parole Board's practice prior to 1987 is insufficient under the D.C. Circuit's precedent in *Fletcher v. Reilly*, 433 F.3d 867 (C.A.D.C.2006), to warrant discovery. In that case, the Court concluded based upon facial differences between the new and old reparole guidelines, and Fletcher's credible allegation that these changes had personally affected his parole consideration, that Fletcher had "made out a *prima facie* case that his rights under the *Ex Post Facto* Clause had been violated," and thus he was entitled to "factual development on his habeas petition."*Id.* at 878-79. *Fletcher* does not, as Phillips contends, permit a prisoner to engage in a fishing expedition about the Board's actual practices over twenty years ago based solely on the prisoner's contention that those practices were different than those currently in effect, particularly when that assertion has no relationship to any written policy, regulation, or guideline. Rather, *Fletcher* requires a "searching comparison" of the parole regimes only

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

after plaintiff has made out his *prima facie* case, which Phillips has failed to do.

[7] Finally, even if the Court credited Phillips's allegation that the Board's informal practice was to not to consider offense accountability in determining the inmate's suitability for parole, Phillips still could not show that the outcome in his case would have been any different under the pre-1987 regime, given the totally unstructured character of the Board's parole decisions prior to 1987. Unlike the 1987 Regulations, which based the presumption of parole eligibility on a numerical calculation and limited the grounds on which the Board could depart to an enumerated list, under the pre-1987 regime, the Board's discretion to grant or deny parole was totally unfettered. It could grant parole only if, after weighing a variety of factors, it "appeared ... that there [was] a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release [was] not incompatible with the welfare of society, and that he [had] served the minimum sentence imposed...." 9 D.C.R.R. § 105 (1972). In Phillips's case, parole was denied on the grounds that he hadn't yet sufficiently accounted for his offense and that he presented a more serious risk than his point score indicated. (*See* Phillips Ex. 3 [Initial Hearing Summary] at 4; Phillips Ex. 4 [Notice of Action, Dec. 13, 2002] at 1; Phillips Ex. 5 [Hearing Summary] at 2-3; Phillips Ex. 6 [Notice of Action, Nov. 18, 2005] at 1.) Therefore, even if Phillips could make a factual showing that the Board would not have considered offense accountability in making its parole determination in his case, he still would have to demonstrate that the Board would not have exercised its unlimited discretion to deny parole for other reasons. Given that the risk posed by an offender was the central question in the Board's considerations pre-1987, Phillips would likely "have been denied parole under either set of guidelines." *Glascoe v. Bezy,* 421 F.3d 543, 549 (7th Cir.2005). Thus, discovery on the issue of offense accountability would make no difference to the resolution of Phillips's *ex post facto* claim because even if his factual allegations are accepted as true and considered to be sufficient, he could not, as a matter of law, show that the consideration of offense accountability substantially increased his risk of lengthier incarceration, as required under *Fletcher.*

*3 The motion for reconsideration will therefore be

denied with respect to Phillips.

**B. Sellmon and Swinton**

[8] Plaintiffs Sellmon and Swinton move for reconsideration on the basis that the record in their cases was insufficiently clear to support the Court's holding. (Pls.' Mot. 6.) With respect to Sellmon and Swinton, the Court held that based on the facial differences between the Parole Board's 1987 Regulations and the Commission's 2000 Guidelines, plaintiffs could make a *prima facie* case that the application of the 2000 Guidelines substantially increased their risk of increased incarceration. *Sellmon,* at 88-90. The Court determined, however, that Sellmon and Swinton failed to demonstrate that the application of the 2000 Guidelines significantly increased their risk of lengthier incarceration because the reason given by defendants for denying parole under the 2000 Guidelines-the "unusual cruelty" of plaintiffs' crime-would have been a permissible reason for denying parole under the 1987 Regulations. *Id.* at *93-96. Thus, the Court concluded that plaintiffs failed to show that the application of the 2000 Guidelines to their cases had any practical effect on the length of their incarceration. *Id.* In their motion for reconsideration, plaintiffs argue that the Court erred in its determination that defendants' stated reasons for the parole denials were equivalent to a finding of "unusual cruelty" and request that the Court remand to the USPC for clarification of the record. (*See* Pls.' Mot. 7-8.)

Plaintiffs' argument, in essence, is that remand is required because the Commission did not use the exact words of the 1987 Regulations in denying them parole. The Court disagrees with plaintiffs' contention that such technical parsing of the language is required. The burden is on plaintiffs, even after a *prima facie* case is made, to demonstrate that the practical effect of the application of the new parole guidelines to their individual cases was to substantially increase the risk of lengthier incarceration. Given that the Commission's stated reasons for denying parole in each case would have supported a finding of "unusual cruelty" under the 1987 Regulations, plaintiffs have not met *their* burden.[FN2]*See Glascoe,* 421 F.3d at 545-49. Plaintiffs' motion for reconsideration will therefore be denied.

**II.    DEFENDANTS'    MOTION    FOR**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00561-UNA     Document 25-10     Filed 08/18/2008     Page 7 of 8

--- F.Supp.2d ----                                                                        Page 6
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

## RECONSIDERATION

Defendants challenge the Court's holding that in determining whether to depart from the parole action indicated by the 1987 Regulations, the Board limited itself to the permissible grounds for departure enumerated in the Regulations and in the 1991 Policy Guideline. (Defs.' Mot. 1.) They request that the Court amend its judgment to permit the Commission to depart on any basis when considering whether to grant parole to the four plaintiffs for whom the Court ordered new hearings. (*Id. 2-3.*) In support of this position, defendants point, for the first time in this litigation, to a policy guideline, entitled "Reconsideration Hearings-Establishing Dates" that was issued by the Board on April 27, 1992. (*Id. 2.*) In Section VI, paragraph A.2., the Board states that: "The Board, in its discretion, may schedule a reconsideration date later than the prescribed set-off if one or more aggravating factors are present. The aggravating factors considered by the Board include, but are not limited to the following,...."(*Id.*)Defendants argue that this is "persuasive evidence" that the Board's discretion to depart from the recommended parole action was unlimited. (*Id.*)

**\*4** [9] As a preliminary matter, defendants' argument fails to satisfy Rule 59. A reconsideration motion "is not simply an opportunity to reargue facts and theories upon which a court has already ruled."*New York v. United States,* 880 F.Supp. 37, 38 (D.D.C.1995). Nor is it "a vehicle for presenting theories or arguments that could have been advanced earlier."*Fox v. American Airlines, Inc.,* 295 F.Supp.2d 56 (D.D.C.2003). The 1992 Policy Guideline was part of the record before this Court on the motion for summary judgment, and defendants have offered no reason for their failure to make this argument prior to the Court's ruling.

[10] Moreover, even were the Court to consider their claim on the merits, defendants' argument would fail. As defendants recognize, this guideline governs how the Board determined the setoff time between reconsideration hearings. (*Id.*) On its face, it has *no* relevance to the actual parole decisions, the criteria for which are described in detail in the 1987 Regulations and the 1991 Guidelines. The government offers no persuasive reason why the Court should extrapolate from the policy guideline on

setting rehearing dates that the Board did not follow its written policy on parole determinations.[FN4]

In their reply, defendants *again* raise a new argument. They claim, based on the D.C. Circuit's opinion *Ellis v. District of Columbia,* 84 F.3d 1413 (D.C.Cir.1996), that the Board's discretion to depart from its regulations was unlimited. (*See* Defs.' Mot. 2.) It is well-established, however, that this Court may not address arguments raised for the first time on reply. *EchoStar Commc'ns Corp. v. FCC,* 292 F.3d 749, 754 (D.C.Cir.2002).*See also Medina v. Dist. of Columbia,* 517 F.Supp.2d 272, 294 n. 18 (D.D.C.2007). This is particularly true in this case, as defendant offers no reason for its failure to raise this argument *either* in its briefing on the motion for summary judgment or in its motion for reconsideration.

Again, however, *Ellis* fails to support defendants' position. Although defendants are correct that the *Ellis* Court noted that "Other" and "Other Change in Circumstances" are categories justifying departure from the action indicated by the prisoner's total point score under the 1987 Regulations, defendants fail to recognize that these options are applicable *only* when determining that an offender is a "better risk" than indicated by his score. Therefore "other" considerations may be taken account only when determining that a prisoner should be released *before* his total point score indicates. *See*D.C. MUN. REGS. tit. 28, app. 2.1, at 2-35.

Moreover, the facts of Ellis's case do not support defendants' position that in practice, the Board declined to follow its own guidelines in deciding whether to grant or deny parole. The Board denied Ellis parole because of the "unusual cruelty" of his crime (a specified factor) and because of the results of his psychological evaluation (an unspecified factor).*Ellis,* 84 F.3d at 1419.Thus, *Ellis* provides further evidence that the Board in fact followed its written policy and justified its decisions with reference to the listed "unusual circumstances."[FN5]Defendants' motion for reconsideration is therefore denied.

## CONCLUSION

**\*5** For the reasons stated herein, plaintiffs' motion for reconsideration [Dkt. 70] is **DENIED** and defendants'

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

motion for reconsideration [Dkt. 71] is **DENIED**.

FN1. As the Court explained in its Memorandum Opinion, under the regulations that were in place at the time Phillips committed his offense, "the Board had almost unbridled discretion to grant parole '[w]henever ... [it appeared] that there [was] a reasonable probability that a prisoner [would] live and remain at liberty without violating the law, that his release [was] not incompatible with the welfare of society, and that he [had] served the minimum sentence imposed...." _Sellmon, 551 F.Supp.2d at 86_ (quoting 9 D.C.R.R. § 105 (1972)). These regulations specified a list of factors that the Board was to consider in making this determination, but offered no guidance as to how these factors should be weighted in making the decision. _Id._ (citing 9 D.C.R.R. § 105.1).

FN2. Notably, Phillips has already received significant discovery in this case, and any outstanding requests (_see_ Dkt. 40, 43, 44), which were held in abeyance pending the outcome of the motions, do not appear to have any relationship to the issue he now wishes to explore.

FN3. Under the 1987 Regulations, a departure from the recommended parole action could be justified by the "unusual cruelty" of the crime. _See_ D.C. MUN. REGS. tit. 28, app. 2-1. The 1991 Policy Guideline, which was in effect at the time Swinton committed his offense, clarified that a departure for "unusual cruelty" might be warranted where the offense involved "[e]specially vulnerable victims, _e.g.,_ children...." (Pls.' Mot. for Summary Judgment, Joint Ex. 8 [1991 Policy Guideline] at 7.) The USPC denied Sellmon parole on the grounds that killing his victim by battering her head with a gun was "extremely brutal" and denied Swinton parole on the grounds that his crime showed "callous disregard" for his victims, including two young children. _Sellmon, 551 F.Supp.2d at 93-96._

FN4. Defendants argue that the Board would not have given itself more flexibility in setting rehearing dates than it did in determining whether to grant or deny parole. In fact, however, it appears that the Board did just that and the Court need not speculate as to its reasons given the Supreme Court's directive that "[a]bsent evidence to the contrary, the Court presume[s] the Board follows its statutory commands and internal policies in fulfilling its obligations." _Garner v. Jones,_ 529 U.S. 244, 256, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).

FN5. The Court declines to posit, as defendants do, what the Board would have done in Ellis's case had his offense not been unusually cruel. (_See_ Defs.' Reply 3.)

D.D.C.,2008.
Sellmon v. Reilly
--- F.Supp.2d ----, 2008 WL 2470002 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT J

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2071652 (D.D.C.)

CNational R.R. Passenger Corp. v. R. and R Visual, Inc.
D.D.C.,2007.
Only the Westlaw citation is currently available.
  United States District Court,District of Columbia.
  NATIONAL R.R. PASSENGER CORP., Plaintiff,
v.
  R AND R VISUAL, INC., et al., Defendants.
  **Civil Action No. 05-822 (GK).**

July 19, 2007.

Christopher T. Koegel, Stephen Lybrook Neal, Jr., Manatt, Phelps & Phillips, LLP, Washington, DC, for Plaintiff.
David F. Grimaldi, Martell, Donnelly, Grimaldi & Gallagher, Robert David Rosenberg, I., Slover & Loftus, Gerald Hiroshi Yamada, James P. Ryan, Robert Martin Adler, O'Connor & Hannan, LLP, Washington, DC, Debra McVicker Lynch, Edward W. Harris, III, Sommer Barnard Attorneys, PC, Indianapolis, IN, for Defendants.

*MEMORANDUM OPINION*

GLADYS KESSLER, United States District Judge.
*1 Plaintiff National Railroad Passenger Corp. ("Amtrak") brings this action against R & R Visual, Inc. ("R & R") and its subcontractor American Pipe Lining, Incorporated ("APL"). Amtrak alleges that R & R and APL failed to perform certain contracts to repair corrosion and leakage in waste system piping located throughout a number of Amtrak passenger train cars. On September 13, 2006, the Court granted APL's motion to file a Third-Party Complaint against RLI Insurance Company ("RLI") and Constitution Insurance Company ("Constitution"), but ordered that the Third-Party Complaint be severed from the underlying action between Amtrak, R & R Visual, and APL.

This matter is now before the Court on Third-Party Defendant RLI Insurance Company's Motion to Dismiss or, in the Alternative, Motion to Transfer Venue [Dkt. No. 84/85]; Third Party Constitution Insurance Company's Motion to Dismiss or, in the Alternative, Motion to Transfer Venue [Dkt. No. 94];

and the Request for Oral Hearing by Third-Party Defendant Constitution Insurance Company [Dkt. No. 97]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Constitution's Motion to Dismiss is **granted,** RLI's Motion to Dismiss is **denied,** RLI's Motion to Transfer is **granted,** and Constitution's Request for Oral Hearing is **denied.**

**I. BACKGROUND**

Amtrak's Complaint in this case alleges that in 2001, Amtrak's operators and maintenance personnel began to report frequent and widespread leaks of waste into the passenger compartments and lavatories on its Superliner II passenger cars. Amtrak engaged APL and R & R to investigate and assess the problem and to restore the structural integrity of its metal pipes to prevent further corrosion and leakage. The Complaint alleges that APL and R & R failed to fulfill their obligations under their contracts with Amtrak, as evidenced by their failure to perform any repairs on ten cars as well as the appearance of new leakage and corrosion problems on the purportedly repaired pipes. On April 25, 2005, Amtrak brought this suit for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, negligence and unjust enrichment against APL and R & R.

On August 8, 2006, APL moved to file a third-party complaint against its insurers, RLI and Constitution, seeking insurance coverage for its defense of the claims alleged in Amtrak's Complaint. On September 13, 2006, the Court granted APL's motion, as well as its request to sever the Third-Party Complaint from Amtrak's underlying Complaint. APL filed a First Amended Third-Party Complaint ("Am.3PC") on October 5, 2006.

The First Amended Third-Party Complaint alleges that in August 2005, RLI denied coverage for APL's defense in this case. RLI subsequently agreed to provide coverage on the condition that APL accede to representation by a law firm designated by RLI. The First Amended Third-Party Complaint alleges that this condition is a breach of RLI's contract with APL

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                                        Page 2
Slip Copy, 2007 WL 2071652 (D.D.C.)

as well as a breach of the duty of good faith and fair
dealing. APL also seeks a declaratory judgment that
RLI and Constitution are required to provide
coverage and indemnification for their defense
against the claims asserted in Amtrak's Complaint.
RLI and Constitution have each filed motions to
dismiss or to transfer the First Amended Third-Party
Complaint to the Southern District of California.

## II. Analysis

### A. APL Has Made No Showing of Personal Jurisdiction over Constitution

**\*2** Constitution moves to dismiss the Third-Party
Complaint pursuant to Federal Rule of Civil
Procedure 12(b)(2) on the ground that the Court lacks
personal jurisdiction over it.[FN1] The Court agrees.
Constitution is not incorporated in the District of
Columbia, and does not have any employees or
offices or do any business here. Constitution Mot.,
Kossman Decl. at ¶¶ 2-4. Moreover, Constitution's
insurance policies at issue in the First Amended
Third-Party Complaint were negotiated and sold in
Glendale, California, and were issued from
Constitution's New York office for delivery to APL's
San Diego office. Id. at ¶¶ 6-8.Accordingly,
Constitution has no contacts with the District of
Columbia sufficient to provide a basis for the
exercise of personal jurisdiction under the District of
Columbia's Long Arm Statute. D.C.Code § 13-423.
See United States v. Phillip Morris, Inc., 116
F.Supp.2d 116, 129 (D.D.C.2000) ("A defendant has
minimum contacts with a jurisdiction when it has
'purposefully directed [its] activities at residents of
the forum, *and* the litigation results from alleged
injuries that arose out of or relate to those
activities.'") (internal citation omitted).

> FN1. In the alternative, Constitution joins
> RLI's Motion to dismiss the Third-Party
> Complaint based on *forum non conveniens.*

APL devotes its entire Opposition to an argument in
support of the Court's supplemental jurisdiction over
the claims in the Third-Party Complaint. APL's
argument completely misses the mark. Supplemental
jurisdiction relates to subject matter jurisdiction. It is
not a means for obtaining personal jurisdiction over
parties not otherwise properly before the Court. As
Wright and Miller have explained,

Supplemental jurisdiction, by whatever name, is a
doctrine of subject matter jurisdiction. It permits
federal courts to entertain claims that do not satisfy
an independent basis of federal subject matter
jurisdiction, such as diversity of citizenship or federal
question jurisdiction. As a matter of common law,
several courts of appeals have recognized a doctrine
of "pendent personal jurisdiction," which is wholly
unrelated to [28 U.S.C.] § 1367. Pendent personal
jurisdiction permits a court to entertain a claim
against a defendant over whom it lacks personal
jurisdiction, but only if that claim arises from a
common nucleus of operative fact with a claim in the
same suit for which the court does have personal
jurisdiction over the defendant.

13 Charles A. Wright, Arthur R. Miller & E. Cooper,
*Federal Practice and Procedure* § 3523 n. 21 (3d
Ed.2007). Since this Court has no personal
jurisdiction over Constitution arising from other
claims asserted in the lawsuit, it cannot exercise any
personal jurisdiction over Constitution in the Third-
Party Complaint.

The Court must have both subject matter jurisdiction
and personal jurisdiction. See Ruhrgas Ag v.
Marathon Oil Co., 526 U.S. 574, 577 (1999) (
"Jurisdiction to resolve cases on the merits requires
both authority over the category of claim in suit
(subject-matter jurisdiction) and authority over the
parties (personal jurisdiction), so that the court's
decision will bind them."). For personal jurisdiction
to exist, due process demands satisfaction of the
requirements of the District of Columbia Long Arm
Statute, D.C.Code § 13-423. APL has failed to make
any showing that such requirements have been met in
Constitution's case. "The plaintiff has the burden of
establishing a factual basis for the exercise of
personal jurisdiction over the defendant."Crane v.
New York Zoological Soc., 894 F.2d 454, 456
(D.C.Cir.1990). Because APL has failed to make any
showing of personal jurisdiction over Constitution, its
claims against Constitution are dismissed.

### B. RLI's Motion to Transfer Is Granted Because the Public Interest Factors in Favor of Transfer Outweigh any Factors Favoring Litigation in this Court

**\*3** RLI argues that the claims against it in the First

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Amended Third-Party Complaint should be dismissed on the basis of *forum* non *conveniens,* or transferred to the Southern District of California pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)").[FN2] As the Supreme Court recently stated,

> FN2. Although RLI brings its Motion pursuant to Federal Rule of Civil Procedure 12(b)(3), it does not provide any statutory basis for an argument that the District of Columbia is an improper venue. Moreover, RLI does not challenge the Court's jurisdiction. Accordingly, APL's argument regarding supplemental jurisdiction is not relevant to the Court's decision.

The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best. For the federal-court system, Congress has codified the doctrine [in 28 U.S.C. § 1404(a) ] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.
*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 127 S.Ct. 1184, 1190-91, 167 L.Ed.2d 15 (2007) (citing *American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2 (1994)) (other internal citations omitted). RLI's own Motion argues that the United States District Court for the Southern District of California is the more convenient place for this action. Accordingly, dismissal based on *forum non conveniens* is not appropriate in this case, and the Court will consider only the request for transfer.

Section 1404(a), the federal venue transfer statute, provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a). Our Court of Appeals has recognized that it may be "impossible to develop any fixed rules on when cases should be transferred."*SEC v. Savoy Indus.,* 587 F.2d 1149, 1154 (D.C.Cir.1978) (quoting *Starnes v. McGuire,* 512 F.2d 918, 929 (D.C.Cir.1974). Accordingly, § 1404(a) vests "discretion in the district court[ ] to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and

fairness."*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 27 (1988) (internal citation omitted). As the moving party, Defendant bears the burden of establishing that the transfer of these actions to another federal district is proper. *See Onyeneho v. Allstate Ins. Co.,* 466 F.Supp.2d 1, 3 (D.D.C.2006).

APL does not dispute that its claims against RLI could have been brought in the Southern District of California. *See* APL's Opp'n to RLI's Mot. at 17 n. 13. Accordingly, RLI must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer. *Trout v. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996). The Court weighs a number of private and public factors in that determination. *See id. at 13.*The private interest considerations include

(1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*\*4 Berenson v. Nat'l Fin. Services, LLC,* 319 F.Supp.2d 1, 2-3 (D.D.C 2004) (internal citations omitted). The public interest considerations include "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home."*Id.*

**1. Public Factors**

The interests of justice "are best served by having a case decided by the federal court in the state whose laws govern the interests at stake."*Trout,* 944 F.Supp. at 19 (internal citations omitted). The First Amended Third-Party Complaint in this case seeks a declaratory judgment regarding the rights and liabilities of the parties under APL's insurance policies with RLI and Constitution, and alleges that RLI breached those insurance policies. There is no dispute that each of those policies was negotiated, executed and delivered in California. Accordingly, APL's claims will undoubtedly be governed by

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

California law. *See YWCA v. Allstate Ins. Co., 275 F.3d 1145, 1150 n. 1 (D.C.Cir.2002)* (observing that either the "more substantial interest" test or the "place of delivery" rule would determine which law to apply to insurance policy disputes).[FN3] Because California law is far more likely to apply than the law of the District of Columbia, the interests of justice are best served by transfer. For the same reasons, the local interest in deciding local controversies at home also weighs in favor of transfer.

> FN3. Although the *YWCA* court noted that there is some uncertainty as to which choice of law analysis should apply in this context, *275 F.3d at 1150 n. 1*, RLI correctly points out that either test recognized by the *YWCA* court would result in application of California law.

RLI cites to statistics from the 2005 Annual Report on the Judicial Business of the Federal Judiciary to show that the Southern District of California has a lower per-judge civil case load than this District Court. RLI's Mot. at 9. "Although congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered."*Starnes v. McGuire, 512 F.2d 918, 932 (D.C.Cir.1974)*. Accordingly, this factor weighs in favor of transfer to the Southern District of California.

Moreover, a nearly identical coverage action between RLI and APL arising out of the same facts is currently pending in the Southern District of California. APL relies heavily on the "first-filed" rule, emphasizing that its Third-Party Complaint in this case was filed one day before RLI's complaint in California and therefore should take precedence over the California action. "The first-filed rule provides that, '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first.' " *FDIC v. Bank of New York, 479 F.Supp.2d 1, 12 (D.D.C.2007)* (citing *Wash. Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C.Cir.1980)*) (alteration in original).

However, "[t]he first-filed rule is not rigidly or mechanically applied."*Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., 196 F.Supp.2d 21, 29*

(D.D.C.2002) (citing *Columbia Plaza Corp. v. Security Nat'l Bank, 525 F.2d 620, 627 (D.C.Cir.1975); Lewis v. National Football League, 813 F.Supp. 1, 4 (D.D.C.1992)*). It carries little weight in this case, where RLI's complaint was filed in the Southern District of California just one day after APL filed its Third-Party Complaint in this case.

**\*5** APL also stresses that the California action will not resolve the issues in this case in their entirety. APL's Third-Party Complaint is substantively broader than RLI's California action, and the California action does not include Constitution as a party. APL's Opp'n at 15. Because the Court is not dismissing APL's claims against RLI, but is instead transferring them to the Southern District of California where they may be consolidated with the pending action in that court, any difference in the scope of the two actions is no longer meaningful. As to Constitution, APL is free to file against it in California.

APL further protests that its claims against RLI should remain in this Court because the underlying Amtrak action is being litigated here. The issues raised by APL's Third-Party Complaint relate to the insurance policies providing for litigation coverage, and are entirely separate from the merits of Amtrak's complex claims in this lawsuit. A number of courts have found that coverage actions need not be litigated in the same forum as the underlying claims, much less joined with them. *See, e.g., W. Am. Ins. Co. v. Potts, 908 F.2d 974 (table), 1990 WL 104034, at \*2 (6th Cir.1990); Nat'l Guardian Risk Retention Group, Inc. v. Central Ill. Emergency Physicians, LLP, No. 06-247, 2006 WL 1892529, at \*6 (W.D.Mich. July 10, 2006); Am. Motorists Ins. Co. v. CTS Corp., 356 F.Supp.2d 583, 586-89 (W.D.N.C.2005); United States Fire Ins. Co. v. Aldworth Co., Inc., No. 04-4963, 2005 WL 1522280 (D.N.J. June 28, 2005); Transcon. Ins. Co. v. Coreslab Structures (Okla.), Inc., No. 3:01-CV-2589-M, 2002 WL 570880, at \*2 n. 8 (N.D.Tex. Apr. 12, 2002)*.

Indeed, similar coverage litigation between R & R Visual and its insurers is currently pending in Indiana, not this District Court. *See Frankenmuth Mut. Ins. Co. v. R & R Visual, Inc., No. 06-147-ASPRC (N.D. Ind. filed Feb. 27, 2006)*. The Court's Order of September 13, 2006 in this case, which severed APL's Third-Party Complaint from Amtrak's Complaint, also recognized that the coverage issues

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                      Page 5
Slip Copy, 2007 WL 2071652 (D.D.C.)

are not intertwined with Amtrak's claims. Whatever validity there might have been to the notion that the insurance disputes should be litigated together with the underlying action in this forum, it is no longer relevant given the lack of personal jurisdiction over Constitution. We already have piecemeal litigation of the insurance coverage issues arising out of this case, given the litigation in Indiana and California. It is certainly preferable to limit that litigation to two fora, rather than three. Accordingly, retaining the coverage action in this Court does not contribute to judicial efficiency.

## 2. Private Factors

The private factors do not outweigh the public interest in transferring APL's claims against RLI to California. Three of the factors-the defendant's choice of forum, the locus of the claim, and the convenience of the parties-weigh in favor of transfer. RLI clearly prefers California, as evidenced by its motion to transfer the case to the Southern District of California. APL resides and does business in California, and none of the parties resides in the District of Columbia, which makes California a more convenient forum for the parties. The insurance claim did not arise in the District of Columbia; the RLI policies were negotiated, issued and delivered in California. *See* RLI's Mot. at 6.

*6 Two factors-the convenience of the witnesses and the ease of access to sources of proof-weigh against transfer. RLI argues that California is more convenient for the witnesses, but it does not contend that any of its witnesses would be unavailable here. Moreover, technological advances have significantly reduced the weight of the ease-of-access-to-proof factor. Although RLI argues that "[t]he documents relating to the policies and their issuance are in California," RLI's Mot. at 8, the small amount of documents likely to be relevant in this case may be easily transmitted electronically.

It is true, as APL argues, that the Court usually must afford deference to a plaintiff's choice of forum. However, "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum." *Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 53 (D.D.C.2000) (citing *Reyno,* 454 U.S. at 255-56). APL is a California corporation with headquarters in San Diego, California. *See* Am. 3PC

at ¶ 1. It would be quite farfetched for a California corporation to claim that litigating this action in California is inconvenient.

Moreover, "[w]hile a Plaintiff's choice of forum is certainly entitled to some deference, that is less true where, as here, 'there is an insubstantial factual nexus with the plaintiff's choice.' " *Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency,* 939 F.Supp. 1, 3 (D.D.C.1996) (citing *Comptroller of Currency v. Calhoun Nat'l Bank,* 626 F.Supp. 137, 140 n. 9 (D.D.C 1985)). In this case, APL has sued RLI based on three insurance contracts that were negotiated, issued and delivered in California, to a California resident, using a California broker. Accordingly, neither APL nor its claims have any relation to this forum, so this factor is accorded substantially less weight.

APL also argues that although the forum choices of foreign plaintiffs are accorded less weight, that principle should not apply in this case where APL was involuntarily made a Defendant by Amtrak. However, as discussed above, coverage actions need not be litigated in the same forum as the underlying claims. Accordingly, there is no basis for concluding that APL was forced to litigate its coverage claims in this Court. The Court therefore considers APL's forum choice as it would any other non-resident plaintiff, and finds that its choice of this forum does not outweigh the other factors supporting transfer to the Southern District of California.

## III. CONCLUSION

For the foregoing reasons, RLI's Motion to Dismiss [Dkt. No. 84] is **denied,** RLI's Motion to Transfer Venue [Dkt. No. 85] is **granted,** and Constitution's Motion to Dismiss or, in the Alternative, Motion to Transfer Venue [Dkt. No. 94] is **granted.** The Court has considered Constitution's Request for Oral Hearing and finds that it is not necessary to resolve the Motions to Dismiss. Accordingly, Constitution's Request for Oral Hearing [Dkt. No. 97] is **denied.**

*7 An Order will issue with this Memorandum Opinion.

D.D.C.,2007.
National R.R. Passenger Corp. v. R. and R Visual, Inc.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                          Page 6
Slip Copy, 2007 WL 2071652 (D.D.C.)


Slip Copy, 2007 WL 2071652 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.