**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ANSELL HEALTHCARE PRODUCTS LLC, and ANSELL PROTECTIVE PRODUCTS INC.,**

        **Counterclaimants,**

    **v.**

**TILLOTSON CORPORATION,**

        **Counterclaim Defendant.**

**C.A. 1:08-CV-585-RMC**

**REPLY MEMORANDUM
IN SUPPORT OF COUNTERCLAIMANTS' MOTION FOR
RECONSIDERATION OF THE COURT'S JULY 30, 2008 ORDER
TRANSFERRING THE CASE TO THE DISTRICT OF DELAWARE**

        Counterclaimants Ansell Healthcare Products LLC and Ansell Protective Products Inc. (collectively "Ansell") respectfully submit this reply memorandum to respond to the arguments in Tillotson's August 18, 2008 opposition memorandum.

**I.**    <u>**ANSELL'S RESPONSE TO TILLOTSON'S PURPORTED "FACTS"**</u>

        **A.**    **Ansell Did Indeed Choose To Challenge Tillotson's
Baseless Claim Of Infringement In Delaware Because
That Court "Has A National Reputation For The
<u>Expeditious And Insightful Handling Of Patent Cases"</u>**

        Ansell initiated litigation against Tillotson in Delaware, seeking "a judicial determination and declaration that Ansell has not infringed, induced others to infringe, or

contributed to the infringement of any valid claim of the '616 patent."  Ansell chose that

forum not only because it is incorporated there, but also because of the District of Delaware's

"national reputation for the expeditious and insightful handling of patent cases."  At the time

that suit was filed in August of 2006, however, the District of Delaware had a full complement

of judges[1/] and trials were generally scheduled to take place within 18 months of filing.  There

was no crisis with its docket, as has now become the case two years **after** Ansell filed suit in

Delaware.

### B.    Ansell Did Not Seek To Delay The Georgia Litigation From Proceeding Against It

Tillotson states that "[a]fter filing its claims in Delaware, Ansell sought to delay

the Georgia litigation from proceeding against it."  This is simply not true and is not supported

by the document relied upon.  What Ansell did seek to do was to enjoin altogether the pursuit of

baseless claims of infringement against Ansell entities who had nothing to do with the activities

which were alleged to infringe the '616 patent.  In the face of that motion for injunctive relief,

Tillotson backed down and **withdrew** all of those claims in Georgia.  *See* Exhibit B hereto.

### C.    Ansell's Positions Vis-à-Vis Stays In Delaware Are Totally Irrelevant To Whether This Case Should Be Transferred To Delaware

Ansell's positions vis-à-vis stays of the litigation in Delaware are totally irrel-

evant to whether **this case** should be transferred to Delaware.  The pertinent fact is that the

---

[1/]    Judge Jordan was not appointed to the Third Circuit until December 2006.  *See* Exhibit A hereto.

Delaware litigations are stayed and those stays will remain in effect until all appeals to the Federal Circuit finally resolve any determinations in the ITC action.[2/]  Central issues in the Delaware litigation are whether or not Ansell's accused gloves infringe the '616 patent, and if so, what are the damages to which Tillotson would be entitled.  Those issues do not even arise in this case.  Moreover, if in this case the '616 patent is found to be either invalid or unenforceable, there will be no need to litigate any issues in the Delaware cases.

To the extent the Court is interested as to the bases for either Ansell's opposition to Tillotson's motion for a stay, or Ansell's own subsequent motion for a stay pursuant to 28 U.S.C. § 1659, they are quite straight forward and a matter of record.  Ansell opposed Tillotson's original motion for a stay because any adjudication of the ITC as to the validity of the '616 patent in the ITC would have no *res judicata* effect in the District Court, whereas a finding of invalidity by the District Court **would be binding** on the ITC.  *See* Exhibit C hereto at pp. 5-8.  It was Ansell's intent to immediately file a motion in the District Court for summary judgment as to the invalidity of the '616 patent based on two grounds that involved no issues of disputed fact.  *Id.*  It was Ansell's hope that this would allow it to avoid duplicative proceedings in both the District Court and the ITC.  *Id.*

The Delaware Court denied Tillotson's motion for a stay, but also denied Ansell the right to file a summary judgment until June 20, 2008, which would be **after** the ITC case had already been tried.  *See* Exhibit D hereto.  Thus, the only hope to avoid duplicative proceedings was to seek a stay pursuant to 28 U.S.C. § 1659, which Ansell Healthcare and Ansell Protective Products promptly did after they were later added as respondents in the ITC.

---

[2/]    Those cases will thus likely be stayed until the '616 patent has expired in May of 2010.

### D. Any Motion That Tillotson May Pursue In The Delaware Litigation Is Completely Irrelevant To Any Motion To Transfer This Action

Tillotson raises the issue that in the Delaware litigation, after the stay is lifted the Court may address the issue of whether there was any violation of the Protective Order entered in the Delaware case because documents produced in the Delaware action were used in the ITC pursuant to a stipulation of the parties that all documents provided in the Delaware action could be used in the ITC. *See* Exhibit E hereto. The only apparent reason that Tillotson would have to even bring this issue to the Court's attention is in an attempt to cast Ansell and its counsel in a bad light. Although this point has absolutely no relevance to the issues before this Court, since Tillotson has raised it, the Court should be aware that the Judge in the ITC ordered that **all** of the documents which Tillotson claimed to have inadvertently produced in Delaware were not entitled to a claim of privilege because there had been a subject matter waiver resulting from Tillotson having voluntarily produced privileged documents on the same subject; he ordered those documents produced in the ITC; and he admitted them into evidence at trial.

### E. The Filing Of The Counterclaim Was Not Delayed

Although Tillotson does not suggest how it might be relevant to a possible transfer of this action to Delaware, Tillotson, for some reason, wants this Court to believe that Ansell was dilatory in filing the statutorily authorized counterclaim in the ITC. The counterclaim was filed on April 3, 2008. Tillotson states that Ansell "could have asserted those counterclaims in the ITC as much as six months earlier." [Tillotson Mem. at 3]. Again, Tillotson has the facts

wrong. Ansell Healthcare and Ansell Protective Products were not served with an ITC complaint until February 2008, and an entry of appearance on their behalves and response to the Amended Complaint were filed on March 11, 2008. *See* Exhibits F & G hereto.

The 3-week period between when an appearance was entered and when the counterclaim was filed was because Ansell hoped it could reach a settlement with Tillotson. On March 17, 2008, Ansell communicated a settlement proposal to Tillotson and agreed that while the proposal remained open, "the Ansell entities agree that they will not file a counterclaim in the ITC unless this offer has been rejected." *See* Exhibit H hereto. When Tillotson did not accept Ansell's offer, the counterclaim was filed.

## II.  ANSELL'S REBUTTAL OF TILLOTSON'S ARGUMENTS

### A.  There Are Legitimate Grounds For Reconsideration

A misapprehension of fact by the Court is unquestionably an appropriate ground for reconsideration. *See*, *e.g.*, *Dean v. Am. Fed'n of Gov't Employees*, 549 F. Supp. 2d 115, 120 (D.D.C. 2008). The dire situation with the docket in the District of Delaware was not something of which this Court was aware at the time it issued its transfer Order. Indeed, the Court was clearly of the view that there was "no reason to suspect that the [District of Delaware]'s docket could not accommodate this case." [July 30 Order at 7]. Moreover, aside from the fact that Ansell's counsel did not understand that the Court was even entertaining the idea of transferring this case to the District of Delaware before receipt of the Court's July 30 Order, the very article that alerted counsel to the crisis with the Delaware Court's docket was not even published until July 30, 2008, the same date as the Court's Order. [*See* Ansell Opening Mem., Ex. B].

Clearly, by any standard, reconsideration would be appropriate.

Tillotson suggests that it is of no moment that it improperly raised and briefed the issue of the advisability of a transfer to the District of Delaware in a reply brief such that Ansell had no opportunity to brief the issue, because the Court could have ordered a transfer, *sua sponte*, citing *Wells v. Liddy*, 115 F. Supp. 2d 1 (D.D.C. 2000). [*See* Tillotson Mem. at 5]. In *Liddy*, the Court did *sua sponte* order that the case be retransferred to the District of Maryland. However, the Court **stayed** that order to permit the filing of a motion to oppose transfer. 115 F. Supp.2d at 1. Such a motion was in fact filed, and thus before retransfer was effected, the party opposing transfer was given the opportunity to file both opening papers opposing transfer and reply papers. *Id.* Ansell's motion for reconsideration is the functional equivalent of the motion to oppose the transfer which the *Liddy* Court entertained after its *sua sponte* retransfer order.

Consideration of Ansell's argument against transfer, without any analysis of the requirements applicable to a normal motion for reconsideration, is entirely appropriate and consistent with *Liddy* and fundamental due process.

### B.    Ansell Is Not Trying To Avoid <br> The Stay It Sought In Delaware

Tillotson makes the incongruous argument that Ansell is now trying to avoid the stay that it sought and obtained in Delaware. [Tillotson Mem. at 5 ("Ansell Sought the Stay in Delaware that It Now Tries to Avoid")]. Ansell is by no means trying to avoid the stay that it sought and obtained in Delaware. It has a statutory right to that stay to avoid simultaneous litigation of the **same patent infringement claims** in both the ITC and District Court.

Although the issue of a stay is not the subject of this briefing, Tillotson cites

*Wash. Metro Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980), for the

proposition that "where two cases between the same parties on the **same cause of action** are

commenced in two different Federal courts, the one which is commenced first is to be allowed

to proceed to its conclusion first."  (Emphasis added).  Ansell's claims in this Court are for un-

fair competition and tortious interference with prospective economic advantage, for which

Ansell seeks, *inter alia*, injunctive relief against such continued tortious conduct.  In this precise

circumstance, the United States District Court for the Northern District of California has denied

a motion to stay such claims pending a final decision in parallel ITC proceedings.  *See Epistar*

*Corp. v. Phillips Lumileds Lighting Co., LLC.*, No. C 07-5194 CW, 2008 WL 913321 *4 (N.D.

Cal. Apr. 2, 2008).[3/]

> **C.**    **The Crisis In The Docket In Delaware Would Seriously**
> **Impact The "Just, Speedy And Inexpensive Determina-**
> **tion Of [This] Action" As Called For By Fed. R. Civ. P. 1**

For almost 20 months the District of Delaware has had only three judges available

to handle what is already a heavy caseload that would normally be split among four judges.[4/]

Thus, each of the three judges has a docket of **pending** cases that is 33% greater than it should

---

[3/]    In a surprising lack of candor to this Court, Tillotson and its counsel did not bring the *Epistar* case to this Court's attention when only four days earlier Tillotson and the same law firm had cited that opinion and the equally on-point decision in *American Honda Motor Co., Inc. v. Coast Distribution System, Inc.*, No. C 06-04752 JSW, 2007 WL 672521 (N.D. Cal. Feb. 26, 2007) in **opposing a motion to stay** Tillotson's own Georgia litigation alleging infringe-ment of the '616 patent pending final resolution of the ITC proceedings.  *See* Exhibit I hereto.

[4/]    This situation arose months **after** Ansell filed suit in Delaware.  *See* discussion at p. 2, *supra*.

be.  In view of the extraordinary measure of assigning judges from the Eastern District of

Pennsylvania, and now also from the District of New Jersey[5/] to share the load of **newly filed**

cases, the burden will not continue to grow, but the existing burden of the extra pending cases

will impact the orderly disposition of cases for some substantial period of time to come.

Tillotson appears to suggest that the burden will not impact Ansell because

Tillotson assumes that this case, if transferred, will be stayed.  Tillotson should not make that

assumption based on what happened in Delaware in the cases that are pending.  The **only** stay

that Judge Farnan granted was one pursuant to 28 U.S.C. § 1659, which **both sides agreed to**.

This case is not eligible for a stay pursuant to 28 U.S.C. § 1659, and Ansell is vigorously

opposing the stay that Tillotson is seeking in this case.

Indeed, case law that Tillotson itself is relying upon to **oppose** the stay sought by

various defendants in Tillotson's chosen forum of the Northern District of Georgia (where the

claims in the District Court and the ITC are identical) strongly supports the denial of a stay in

this case.  In *American Honda*, the Court was presented with the same arguments that are at the

core of Tillotson's motion for stay in this case – narrowing of the issues, avoidance of inconsis-

tent judgments, and giving this Court the benefit of the views of the ITC.  The *American Honda*

case, noting that, as here, the ITC proceeding would be resolved before it was called upon to

address the issues, aptly held as follows:

> As a result, the ITC proceeding record can be reviewed and
> considered by this Court and given whatever persuasive value it
> deems is justified.  *See Cypress*, 90 F.3d at 1569.  Pragmatically,
> staying the proceedings until completion of the ITC proceeding

---

[5/]    *See* Exhibit J hereto.

does not help narrow the issues for this Court or promote the orderly course of justice.

2007 WL 672521 at *2.

In the *Epistar* case, the Court held that where, as here, there was continuing tortious conduct on the part of the patentee upon which claims of unfair competition and tortious interference with prospective economic advantage were based, a stay of the unfair competition and tortious interference claims pending the final resolution of the ITC proceeding was inappropriate.  2008 WL 913321 at *4.

The issue of a transfer to Delaware is wholly independent of the issue of whether this case should be stayed where a stay will prejudice Ansell.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, together with those set forth in its opening memorandum, Ansell respectfully requests the Court to reconsider its July 30, 2008 Order insofar as it ordered the transfer of this case to the District of Delaware, and upon reconsideration deny Tillotson's request for transfer to the District of Delaware.

Respectfully submitted,

DATED:  August 22, 2008

_____/s/_____
David M. Morris (D.C. Bar No. 432593)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 739-5882
Facsimile:   (202) 739-3001
dmorris@morganlewis.com

and

Thomas B. Kenworthy (Admitted Pro Hac Vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
Telephone:  (215) 963-5702
Facsimile:  (215) 963-5001
tkenworthy@morganlewis.com

*Counsel for Counterclaimants*
*Ansell Healthcare Products LLC*
*and Ansell Protective Products Inc.*

## CERTIFICATE OF SERVICE

I, DAVID M. MORRIS, do hereby certify that on this date, I caused copies of the foregoing Reply Memorandum In Support Of Counterclaimants' Motion For Reconsideration Of The Court's July 30, 2008 Order Transferring The Case To The District Of Delaware to be served upon the following individuals by Electronic and First Class Mail:

Brian Meiners, Esquire
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-2706

M. Russell Wofford, Jr., Esquire
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309

*Counsel for Counterclaim Defendant*
*Tillotson Corporation*

DATED:   August 22, 2008                          /s/
                                         DAVID M. MORRIS

DB1/62068666.1

# Exhibit A



# THE WHITE HOUSE

PRESIDENT GEORGE W. BUSH

Home > News & Policies > Policies in Focus

**JUDICIAL NOMINATIONS**

Judge Kent A. Jordan
*U.S. Court of Appeals for the Third Circuit*

**JUDGE KENT A. JORDAN**



**Confirmed on December 8, 2006**

- Judge Kent A. Jordan was confirmed on December 8, 2006 to the U.S. Court of Appeals for the Third Circuit, which hears appeals from the federal district courts of Delaware, New Jersey, Pennsylvania and the Virgin Islands.

- Judge Jordan has a distinguished record as a practicing attorney in the public and private sectors and as a district court judge.

  - In 2002, Judge Jordan was confirmed to the U.S. District Court for the District of Delaware, where he served until his elevation to the Third Circuit.

  - From 1997 until 2002, Judge Jordan was General Counsel and Vice President of Corporation Service Company (CSC), where he managed all of the corporation's legal affairs.

  - In 1992, Judge Jordan joined the Wilmington, Delaware firm of Morris James Hitchens & Williams as an associate, becoming a partner in 1994. His practice focused on patent and related disputes in the U.S. District Court for the District of Delaware.

  - Judge Jordan served as an Assistant United States Attorney for the District of Delaware from 1987 to 1992, becoming Chief of the Office's Civil Division in 1991. His clients in civil cases consisted mainly of federal agencies with a broad array of legal disputes, from basic torts to complex federal regulatory and contractual problems. He also prosecuted a variety of criminal cases, involving matters such as drug trafficking, environmental crime, extortion, tax violations, and fraud.

  - Judge Jordan has written and spoken on a number of legal issues, predominantly on intellectual property and patent law.

- Judge Jordan has impeccable academic credentials and professional training.

  - Judge Jordan served as a law clerk to the Honorable James L. Latchum of the United States District Court for the District of Delaware.

  - He attended Brigham Young University and graduated in 1981 with high honors and a B.A. in Economics.

  - Judge Jordan received his J.D. cum laude from the Georgetown University Law Center in 1984.

**RELATED LINKS**

June 29, 2006
Press Briefing by Tony Snow

June 28, 2006
Nominations Sent to the Senate

July 30, 2002
Nominations Sent to the Senate

July 25, 2002
Nominations Sent to the Senate

July 25, 2002
Nominations to Federal Judiciary

⇦ BACK TO NOMINEES

- Judge Jordan has been an active member of his community in both legal and non-legal capacities.

  ○ Judge Jordan is a member of the Board of Directors of the Community Legal Aid Society in Wilmington, Delaware, and from 1998 to 2002 was a member of the Delaware Bar Association's Standing Committee on the Provision of Legal Services to Low Income People.

  ○ Judge Jordan is active in a variety of non-legal organizations, including his church and local civic organizations, and has regularly volunteered at a local group home for the disabled.

  ○ During 1977 to 1978, Judge Jordan served in Japan as a full missionary with the Church of Jesus Christ of Latter-Day Saints.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF WITHDRAWAL OF MOTION OF PLAINTIFF
ANSELL HEALTHCARE PRODUCTS LLC TO ENJOIN THE PURSUIT OF A NEW
LATER-FILED GEORGIA ACTION AGAINST ADDITIONAL ANSELL ENTITIES,
AND FOR SANCTIONS AGAINST TILLOTSON AND ITS GEORGIA ATTORNEYS**

In light of Tillotson's dismissal of all claims against all of the Ansell entities in

the new Georgia action, the Motion Of Plaintiff Ansell Healthcare Products LLC To Enjoin The

Pursuit Of A New Later-Filed Georgia Action Against Additional Ansell Entities, And For

Sanctions Against Tillotson And Its Georgia Attorneys (D.I. 76) is hereby withdrawn.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Maryellen Noreika
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
    *Attorneys for Plaintiff*
    *Ansell Healthcare Products LLC*

*Of Counsel:*
Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 11, 2007

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
TILLOTSON'S MOTION TO STAY PROCEEDINGS PENDING THE
OUTCOME OF THE INTERNATIONAL TRADE COMMISSION'S INVESTIGATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(320) 658-9200
*Attorneys for Plaintiffs
Ansell Healthcare Products LLC and
Ansell Protective Products Inc.*

*Of Counsel:*
Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 26, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 2

STATEMENT OF PERTINENT FACTS ....................................................................... 2

ARGUMENT ...................................................................................................................... 3

    A.    Tillotson Has Repeatedly Conjured Up Ways To Try To Avoid
        An Adjudication By This Court ......................................................................... 3

    B.    Until Ansell Brought The Issues Of The Noninfringement, Invalidity
        And Unenforceability Of The '616 Patent Before This Court, Tillotson
        Had No Concerns For Either Judicial Economy Or A Comprehensive
        Resolution Of Its Claims In One Proceeding ................................................... 4

    C.    A Stay Of This Action Would Seriously Prejudice Ansell Healthcare
        And Ansell Protective Products ........................................................................ 5

        (1)   A stay would prejudice plaintiffs' ability to obtain a
              prompt summary judgment ruling by an Article III Court
              that would be binding on the ITC ............................................................ 5

        (2)   A stay would require duplicative depositions ...................................... 7

    D.    Staying This Action Would Not Simplify The Issues Between
        The Parties And Before This Court .................................................................. 8

    E.    Tillotson's Reliance On Cases Addressing Which Of Two District
        Courts Should Take Priority Has No Bearing On The Issue Of
        Whether A District Court Action Should Be Stayed In Favor Of
        An Administrative Adjudicatory Proceeding .................................................. 9

    F.    The Two District Cases Cited By Tillotson Are Distinguishable
        And Not Persuasive ............................................................................................. 9

    G.    Granting A Stay Would Be Wholly Inconsistent With Congressional
        Intent In Enacting 28 U.S.C. § 1659 .............................................................. 10

CONCLUSION ................................................................................................................... 12

i

## TABLE OF AUTHORITIES

CASES

*Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*,
No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) .................................... 9-10

*Hester Indus., Inc. v. Stein, Inc.*,
142 F.3d 1472 (Fed. Cir. 1998) ................................................................................6

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
183 F.3d 1369 (Fed. Cir. 1999) ................................................................................6

*Iljin USA v. NIN Corp.*,
No. 06-10145, 2006 WL 568351 (E. D. Mich. Mar. 7, 2006) ............................... 9-10

*Nupla Corp. v. IXL Mfg. Co., Inc.*,
114 F.3d 191 (Fed. Cir. 1997) ...................................................................................7

*Pannu v. Storz Instruments, Inc.*,
258 F.3d 1366 (Fed. Cir. 2001) ................................................................................6

*Pegasus Development Corp. v. DirecTV, Inc.*,
No. C. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ...................9

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed.Cir. 1996) ..................................................................................8

*Tillotson, Ltd. v. Walbro Corp.*,
831 F.2d 1033 (Fed.Cir. 1987) .................................................................................6

*Vectra Fitness, Inc. v. TNWK Corp.*,
162 F.3d 1379 (Fed. Cir. 1998) ................................................................................6

*Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*,
721 F.2d 1305 (Fed. Cir. 1983) ............................................................................ 8-9

STATUTES

28 U.S.C. § 1659 ....................................................................................................... 9-11

35 U.S.C. § 251 ............................................................................................................5

OTHER AUTHORITIES

H. R. Rep. No. 103-826(I) (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773 ....................11

RULES

Fed. R. Civ. P. 1 ..........................................................................................................12

## NATURE AND STAGE OF THE PROCEEDINGS

These are declaratory judgment actions filed respectively by Ansell Healthcare Products LLC ("Ansell Healthcare") and Ansell Protective Products Inc. ("Ansell Protective Products"), U.S.-based suppliers of nitrile gloves, against Tillotson Corporation ("Tillotson"), the record owner of U.S. Patent No. Re. 35,616 ("the '616 patent"), seeking declarations that certain gloves that Tillotson had accused of infringing did not infringe any valid and enforceable claim of the '616 patent. The first action was filed on August 25, 2006 and discovery has been ongoing in that action since October of 2006. Ansell Heathcare has served three sets of interrogatories and one set of requests for production of documents and things. [*See* C.A. 06-527-JJF, D.I. 21; 48; 62]. Ansell Protective Products has served three sets of interrogatories, one set of requests for production of documents and things and one set of requests for admission. [*See* C.A. 07-93-JJF, D.I. 10; 11; 18; 19; 20]. In the two actions, Tillotson has served four sets of interrogatories, one set of requests for production of documents and things, and one set of requests for admission. [*See* C.A. 06-527-JJF, D.I. 34; 40; 68; 71; C.A. 07-93-JJF, D.I. 9]. The Court has heard and ruled on three discovery motions. [*See* C.A. 06-527-JJF, D.I. 44; 64; 66]. This is the third motion that has addressed efforts by Tillotson to have the dispute decided in another forum and to avoid a ruling on the merits by this Court. [*See id.,* D.I. 10; 75; 90].

Although a specific trial date has not been set, by Order dated July 13, 2007, the Court has directed that trial in the Ansell Healthcare case will commence in the 120-day period between September 4, 2008 and January 2, 2009 and that counsel should make themselves available for trial during that period. [*See id.,* D.I. 92].

## SUMMARY OF ARGUMENT

Even though Ansell Healthcare's case has been pending for 11 months, and is before an Article III Court, Tillotson argues that this Court should stay its cases in favor of an administrative adjudicatory body – the ITC. No issues would be narrowed if a stay were granted because any ruling by the ITC will have no binding effect on either this Court or the parties. Moreover, the grant of a stay would substantially prejudice Ansell Healthcare and Ansell Protective Products, particularly insofar as it would delay the determination of a discrete motion for summary judgment of invalidity that involves no issues of fact and that is ripe for decision now. Such a determination by this Court would be binding on Tillotson in the ITC.

Tillotson's motion for stay should be denied and Ansell Healthcare and Ansell Protective Products should be granted leave to file at this point in the proceedings a motion for summary judgment of invalidity on the grounds set forth herein.[1]

## STATEMENT OF PERTINENT FACTS

The pertinent facts are set forth in the Nature and Stage of the Proceedings section and in the Argument section in the context of the points to which they relate.

---

[1]    To the extent the Court feels that this request should be by a separate formal motion, Ansell Healthcare and Ansell Protective Products will do so promptly.

## ARGUMENT

### A.   Tillotson Has Repeatedly Conjured Up Ways To Try To Avoid An Adjudication By This Court

Tillotson has repeatedly conjured up ways to have the dispute between the Ansell parties and Tillotson first raised in this Court decided by some other tribunal and to avoid an adjudication of the merits by this Court:

- **Motion To Transfer** - Tillotson's first effort to avoid a ruling by this Court was its motion to transfer the Ansell Healthcare case to Georgia. That was a legitimate motion, albeit lacking in merit, and this Court denied it on February 2, 2007. [*See* C.A. 06-527-JJF, D.I. 10; 44].

- **Suit Against Additional Entities In Georgia** - Tillotson next tried to accomplish indirectly what this Court had denied when done directly – on May 30, 2007, it filed suit in Georgia against a host of Ansell entities, including a company that had been merged into Ansell Healthcare. In the face of a motion to enjoin pursuit of those claims against the Ansell entities and for sanctions, Tillotson withdrew all claims against Ansell entities in the new Georgia action. [*See id.*, D.I. 88].

- **Motion To Stay Or Transfer These Proceedings In Favor Of New Georgia Action** - On June 21, 2007, Tillotson's counsel stated that Tillotson was "considering asking the Delaware court to either stay or transfer the AHP [Ansell Healthcare] and the Ansell Protective Products cases to Georgia in favor of the Georgia case . . . ." [*See* Declaration of Thomas B. Kenworthy filed contemporaneously herewith ("Kenworthy Decl."), ¶ 2 and Ex. A].

- **Motion To Stay These Proceedings Pending Adjudication In The ITC** - On July 12, 2007, Tillotson filed this motion to stay the proceedings in this Court pending an adjudication in the ITC.

B.    **Until Ansell Brought The Issues Of The Noninfringement, Invalidity And Unenforceability Of The '616 Patent Before This Court, Tillotson Had No Concerns For Either Judicial Economy Or A Comprehensive Resolution Of Its Claims In One Proceeding**

Over 9 months *after* Ansell Healthcare brought this declaratory judgment action to obtain a judicial resolution of Tillotson's charge that the Micro-Touch nitrile glove infringed the '616 patent, Tillotson filed a complaint in the ITC. A month and a half later, Tillotson has filed a motion to stay this judicial proceeding pending a resolution of the recently-filed administrative proceeding in which Tillotson did not name either Ansell Healthcare or Ansell Protective Products as a respondent.[2/] In support of this motion for a stay, Tillotson now touts the purported benefits of a comprehensive disposition against all pertinent parties and the conservation of judicial resources. These new-found "positions" are the antithesis of Tillotson's actual conduct prior to the bringing of declaratory judgment actions in this Court by Ansell Healthcare and Ansell Protective Products. Indeed, over an 8-year period, Tillotson has filed at least 18 separate actions alleging infringement of the '616 patent, none of which it has sought to consolidate for any purpose. Given this course of conduct whereby Tillotson and various opposing parties were simultaneously addressing the same issues of infringement, invalidity and

---

[2/]    Tillotson makes the statement in its brief, unsupported by any declaration, that "Tillotson is in the process of seeking to amend its ITC Complaint to include Ansell HC [Ansell Healthcare] and Ansell PP [Ansell Protective Products] as respondents." [Tillotson Br. at 2]. A review of the ITC docket as of July 26, 2007, however, reflects no effort on the part of Tillotson to amend its ITC Complaint to include either Ansell Healthcare or Ansell Protective Products as respondents. [*See* Kenworthy Decl., ¶ 3 and Ex.B].

enforceability in three or more proceedings at the same time, Tillotson's objection – when it is outside its favored forum – to proceeding in two fora at the same time rings hollow. That is particularly so, given that it was Tillotson that brought the second proceeding on itself over 9 months after this suit had begun.

**C.    A Stay Of This Action Would Seriously Prejudice Ansell Healthcare And Ansell Protective Products**

**(1)    A stay would prejudice plaintiffs' ability to obtain a prompt summary judgment ruling by an Article III Court that would be binding on the ITC.**

Ansell Healthcare and Ansell Protective Products initiated these declaratory judgment actions because of Tillotson's accusations against them (but failure to sue), and to seek a judgment by an Article III Court to remove the cloud in the marketplace posed by Tillotson's unfounded accusations of the infringement of an invalid and unenforceable patent. The stay now requested by Tillotson would undercut that objective and seriously prejudice Ansell Healthcare and Ansell Protective Products.

Before Tillotson filed its motion for a stay, it was aware that Ansell Healthcare and Ansell Protective Products intended to ask this Court for leave to file now a motion for summary judgment of the invalidity of the '616 patent. [*See* Kenworthy Decl., ¶ 4]. As shown below, the two grounds for that motion are straightforward, involve no disputed issues of fact, and are legally unassailable:

**(a)    Invalidity because of a broadening of the claims during reissue after more than two (2) years.**

- A patentee may not broaden the scope of the claims of the original patent in a reissue patent unless the patentee applies for the reissue within two years from the date the original patent was granted. 35 U.S.C. § 251.

- Whether amendments made during reissue or reexamination proceedings enlarge the scope of a claim is a matter of claim construction and thus purely a question of law for the Court. *See Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1373 (Fed. Cir. 1999).

- "A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n.2 (Fed.Cir. 1987).

- "A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id.*

- The original claims of the '362 patent were limited by the requirement that the glove "initially exert[] **a predetermined** pressure on the hand." (Emphasis added).

- During reissue, the term "predetermined" was replaced with the term "initial."

- All gloves that exert any pressure on the hand at all will exert an initial pressure on the hand after being stretched to fit about the hand.

- The effect of the reissue amendment was to eliminate the "predetermined" limitation altogether. There clearly are gloves that would have an **initial** pressure on the hand and thus potentially within the scope of the reissue claims, that would not have a **predetermined** pressure and would have been outside the scope of the original claims. A reissue claim that does not include a limitation in the original claim is broader than the original claim. *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1371 (Fed. Cir. 2001) quoting *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998).

- The broadening of the claims during reissue after two years renders the broadened claims of the '616 patent invalid. *See Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1380-81, 1384-85 (Fed. Cir. 1998).

6

        **(b)**      **The reissue declaration is defective<br>so as to invalidate the claims.**

- The reissue regulations require a declaration identifying each error sought to be corrected and explaining how each such error arose or occurred, and that it was without deceptive intent. *See Nupla Corp. v. IXL Mfg. Co., Inc.,* 114 F.3d 191, 195 (Fed. Cir. 1997).

- Neither the original nor supplemental reissue declaration submitted by Tillotson during the reissue proceedings that led to the '616 patent identified the original use of the term "predetermined" as an error, explained how it arose or occurred, or stated that it arose without deceptive intent.

- All the reissue claims contain the limitation of "an initial pressure" in lieu of the original "a predetermined pressure."

- The inadequacy of the reissue declaration renders all of these claims invalid. *See Nupla,* 114 F.3d at 195.

      **(2)**      **A stay would require duplicative depositions.**

Whereas the denial of a stay would not cause any duplicative depositions at all,[3/] staying this case would because there would be a need to redepose persons who had knowledge relevant to issues before this Court but not the ITC, *i.e.,* a myriad of damages-related issues. Moreover, if depositions involving confidential subjects were taken only in the ITC proceeding, the Protective Order in the ITC would preclude the use of the depositions in this Court. [*See* Kenworthy Decl., ¶ 5 and Ex. C].

---

[3/]    All depositions could be double captioned and the use of the depositions would be governed as to each tribunal by its rules and protective order. The depositions would thus cover all matters reasonably calculated to lead to the discovery of admissible evidence in *either* proceeding.

**D.    Staying This Action Would Not Simplify The Issues
Between The Parties And Before This Court**

Tillotson **argues** that "staying the instant action will greatly simplify the issues between the parties and before the Court." [Tillotson Br. at 11]. Nowhere, however, does Tillotson **explain how** the issues would be simplified. It is an established principle that no ruling in the ITC on even common issues such as claim construction, infringement, validity and enforceability will have any *res judicata* or collateral estoppel effect in this Court. *See Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed.Cir. 1996). Tillotson has also declined to agree to be bound in this Court by any determination of noninfringement, invalidity or unenforceability in the ITC. [*See* Kenworthy Decl., ¶ 6]. Thus, if a stay were granted, the issues would not be narrowed at all.

On the other hand, however, if this Court grants summary judgment in favor of Ansell Healthcare and Ansell Protective Products and finds the '616 patent to be invalid, this Court's ruling will be binding on Tillotson in the ITC, and in every other District Court in which it is attempting to enforce this invalid patent. *See Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1315-16 (Fed. Cir. 1983). Thus, to the extent that considerations of efficiency and judicial economy come into play, they clearly weigh in favor of denying the requested stay. As the Federal Circuit aptly noted in *Young Engineers*, "the evils of vexatious litigation and waste of resources are no less serious because the second proceeding is before an administrative tribunal." *Id.* at 1315.

8

**E.    Tillotson's Reliance On Cases Addressing Which
Of Two District Courts Should Take Priority Has
No Bearing On The Issue Of Whether A District
Court Action Should Be Stayed In Favor Of An
Administrative Adjudicatory Proceeding**

Tillotson's first argument based on the priority between a first-filed **District
Court** action and a second-filed **District Court** action [Tillotson Br. at 8-11] has no applicability
here at all.  In the circumstances addressed in that section of Tillotson's brief, an adjudication of
the common issues by one court will be binding on the parties in the second court under
principles of claim preclusion or issue preclusion.  *See Young Engineers*, 721 F.2d at 1316.  As
shown above, that is not so in a patent case where one of the two fora is an administrative
adjudicatory tribunal.  Equally inapplicable are cases involving stays pending reexamination.  In
a reexamination proceeding, the PTO can materially affect the issues by having the subject
claims found unpatentable or narrowed in scope by amendment.  *See e.g.*, *Pegasus Development
Corp. v. DirecTV, Inc.*, No. C. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003).

**F.    The Two District Cases Cited By Tillotson
Are Distinguishable And Not Persuasive**

Tillotson relies on two cases addressing stays of District Court cases pending a
determination by the ITC: *Iljin USA v. NIN Corp.*, No. 06-10145, 2006 WL 568351 (E. D. Mich.
Mar. 7, 2006) and *Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*, No. 5:05 CV 156, 2005 WL
1126750 (N.D. Ohio Apr. 29, 2005).  Both of these cases are distinguishable from the
circumstances presented here and neither are persuasive authority for this case.

The *Flexsys* case involved a motion by ITC respondents and related companies
who were also defendants in a District Court proceeding that involved allegations of
infringement of four patents, three of which were also the subject of the ITC proceeding.  Thus,
under 28 U.S.C. § 1659, three of the movants were absolutely entitled to a stay of the District

Court action as to three of the four patents. The fourth patent was a member of the same family. The reasons that the *Flexsys* Court stayed the entire litigation after the core of the case was required to be stayed provide no support whatsoever for a stay in this case where no part of it is required to be stayed at Tillotson's request.

In *Iljin*, the District Court action was filed over 2 ½ months after the filing of the ITC complaint and only five months before the ITC hearing was to be held. The party that filed the **later** District Court action opposed the stay. Here, the litigation in this Court began over 10 months before the ITC investigation was instituted and the party opposing the stay filed the **earlier** District Court proceeding. Aside from this significant factual distinction, it also appears that the *Iljin* Court was influenced by the view that "the ITC is more experienced in deciding patent disputes that the district court." 2006 WL 568351 at *2. With all due respect to the experience Administrative Law Judge Bullock has obtained in patent litigation since being appointed as an Administrative Law Judge in the ITC in 2003,[4/] surely Tillotson is not suggesting that he has more experience in deciding patent cases than this Court.

Finally, the *Iljin* Court did not appear to appreciate that an ITC decision will have no *res judicata* or collateral estoppel effect. Thus, its belief that if the ITC investigation proceeded first, it would narrow the issues, was not well-grounded.

G.   **Granting A Stay Would Be Wholly Inconsistent With Congressional Intent In Enacting 28 U.S.C. § 1659**

Contrary to Tillotson's suggestion, Congress did not express any view that there were inherent benefits in staying a District Court action pending the resolution of parallel proceedings before the ITC. Neither the language of 28 U.S.C. § 1659 nor the Legislative

---

[4/]   Prior to that, Administrative Law Judge Bullock was an Administrative Law Judge at the EPA and FERC. [*See* Kenworthy Decl., ¶ 7 and Ex. D].

History support such a proposition. To the contrary, allowing Tillotson to obtain a stay based on its belated filing of a Complaint in the ITC would be wholly inconsistent with Congressional intent in enacting 28 U.S.C. § 1659.

In November 1989, the General Agreement on Tariffs and Trade (GATT) adopted a dispute settlement report that found that ITC investigation procedures were inconsistent with the national treatment rule because they treat imported goods less favorably than the procedures that District Courts apply to domestic goods in infringement proceedings. H. R. Rep. No. 103-826(I) (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773, 3912. In particular, the panel found, *inter alia*, that importers and producers of imported products may have to defend claims in both the ITC and in District Court, possibly at the same time, whereas infringement claims against domestic goods can be heard only in District Court. *Id.* In order to rectify this disparate treatment, 28 U.S.C. § 1659 was enacted so as to give importers and producers of imported goods, the ability, **at their election**, to preclude two parallel proceedings, and there is a short window within which to exercise that right. *Id.* at 3913.

Here the importers of goods **do not want** to have the declaratory judgment actions, which they instituted to remove the cloud over their gloves, derailed by the belated ITC investigation initiated by Tillotson. Application of the national treatment rule which underlies 28 U.S.C. § 1659 should result in the denial of Tillotson's requested stay, because Tillotson would not be able to use the pendency of ITC proceedings to derail an earlier declaratory judgment action filed by a supplier of domestic gloves. A stay of a District Court proceeding (pending completion of an ITC proceeding) at the patentee's request and over the respondents' objections is not only inconsistent with the policies giving rise to 28 U.S.C. § 1659, but also is inconsistent

with the bedrock precept that cases be administered "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1.

## CONCLUSION

For all the foregoing reasons, plaintiffs Ansell Healthcare and Ansell Protective Products respectfully request the Court to (1) deny Tillotson's motion for a stay; and (2) grant plaintiffs' leave to file within ten (10) days hereof a motion for summary judgment as to the invalidity of the '616 patent on the grounds set forth herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(302) 658-9200

*Attorneys for Plaintiffs*
*Ansell Healthcare Products LLC and*
*Ansell Protective Products Inc.*

*Of Counsel:*

Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

July 26, 2007

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | C.A. No. 06-527-JJF |
| TILLOTSON CORPORATION, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant | ) | |
| _____ | ) | |
| ANSELL PROTECTIVE PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | C.A. No. 07-93-JJF |
| TILLOTSON CORPORATION, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## <u>ORDER</u>

WHEREAS, on July 12, 2007, Defendant Tillotson Corporation ("Tillotson") filed Motions To Stay Proceedings Pending The Outcome Of The International Trade Commission's Investigation [C.A. No. 06-527-JJF D.I. 90; C.A. No. 07-93-JJF D.I. 22]; and

WHEREAS, on July 26, 2007, Plaintiff Ansell Healthcare Products LLC and Plaintiff Ansell Protective Products Inc. requested leave to file a motion for summary judgment as to the validity of the '616 Patent at this stage of the proceedings [C.A. No. 06-527-JJF D.I. 96; C.A. No. 07-93-JJF D.I. 27];

IT IS HEREBY ORDERED as follows:

1.    Tillotson's Motions To Stay Proceedings Pending The Outcome Of The International Trade Commission's Investigation are DENIED. The Court will permit double captioning of discovery for use in both the International Trade Commission Investigation No. 337-TA-608 and the instant case before this Court.

2.    Plaintiff Ansell Healthcare Products LLC and Plaintiff Ansell Protective

Products Inc.'s request for leave to file a motion for summary judgment at this stage of the

proceedings is DENIED.

IT IS SO ORDERED this _24_ day of _August_ 2007.

_Joseph J. Faunce_
United States District Judge

813969/30675

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ANSELL HEALTHCARE PRODUCTS LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **C.A. No. 06-527 (JJF)** |
| ) | |
| **TILLOTSON CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ANSELL PROTECTIVE PRODUCTS INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **C.A. No. 07-93 (JJF)** |
| ) | |
| **TILLOTSON CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Charles E. Bullock
Administrative Law Judge**

| | |
|---|---|
| **In the Matter of:** | |
| **CERTAIN NITRILE GLOVES** | **Investigation
No. 337-TA-608** |

**STIPULATION TO ALLOW CROSS-USE AND
<u>CROSS-PRODUCTION OF INFORMATION, DOCUMENTS AND TESTIMONY</u>**

It is hereby stipulated and agreed among Tillotson Corporation ("Tillotson"),

Ansell Ltd., Ansell Healthcare Products LLC ("Ansell Healthcare") and Ansell Protective

Products Inc. ("Ansell Protective Products") through their respective counsel, as follows:

(1)     This Stipulation shall govern the cross-use and cross-production of in-

formation and documents[1] in *In the Matter of Certain Nitrile Gloves*, USITC Inv. No. 337-

TA-608 (the "ITC Investigation") and two cases pending in the United States District Court

for the District of Delaware:  *Ansell Healthcare Products LLC v. Tillotson Corporation*, C.A.

No. 06-527-JJF, and *Ansell Protective Products Inc. v. Tillotson Corporation*, C.A. No. 07-93-

JJF (collectively, the "Delaware Actions").

(2)     All information and documents provided by Tillotson, Ansell Healthcare

or Ansell Protective Products in the Delaware Actions shall be deemed to have been also pro-

vided in the ITC Investigation.

(3)     Before any information and documents designated as "CONFIDENTIAL"

or "HIGHLY CONFIDENTIAL" and provided by Tillotson, Ansell Healthcare, or Ansell Pro-

tective Products in the Delaware Actions may be used in the ITC Investigation, it shall be

marked as confidential business information as set forth in paragraph (a) of the ITC Protective

Order. The use of such information and documents in the ITC Investigation shall be governed

by the terms of the ITC Protective Order.

---

[1]     For the purposes of this Stipulation, the phrase "information and documents" is defined to
include, but not be limited to, discovery requests and responses thereto, documents and
things produced in response to discovery requests, expert reports, and deposition and
hearing transcripts.

(4)    All information and documents provided by Tillotson, Ansell Ltd., Ansell Healthcare, or Ansell Protective Products in the ITC Investigation, including any confidential business information, may be used in the Delaware Actions. Before use in the Delaware Actions, any such confidential business information shall be marked "HIGHLY CONFIDENTIAL," and its use in the Delaware Actions shall be governed by the Protective Order in the Delaware Actions.

(5)    Nothing provided in the ITC Investigation or the Delaware Actions under the terms of this Stipulation shall in any way limit the parties' rights to object to the admissibility of such information and documents on any ground.

DATED:  August 28, 2007

_____
Gilbert B. Kaplan, Esquire
Jeffrey M. Telep, Esquire
Matthew S. Dunne, Esquire
Taryn L. Koball, Esquire
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706
(202) 737-0500

*and*

Anthony B. Askew, Esquire
Stephen M. Schaetzel, Esquire
Katrina M. Quicker, Esquire
Jason M. Pass, Esquire
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
(404) 572-4600

*Attorneys for Tillotson Corporation*

DATED:  August 28, 2007

_____
Thomas B. Kenworthy, Esquire
David W. Marston, Jr., Esquire
Rebecca J. Hillyer, Esquire
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5000

*Attorneys for Ansell Ltd.,*
*Ansell Healthcare Products LLC,*
*and Ansell Protective Products Inc.,*

- 3 -

# Exhibit F

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Theodore R. Essex
Administrative Law Judge

In the Matter of:

**CERTAIN NITRILE GLOVES**

Investigation
No. 337-TA-608

## NOTICE OF APPEARANCE

Notice is hereby given, pursuant to Commission Rule of Practice and Procedure

201.11, (19 C.F.R. § 201.11), of the appearance of the following counsel for Respondents Ansell

Healthcare Products LLC, Ansell Protective Products Inc., and Ansell (Thailand) Ltd.:

Thomas B. Kenworthy
David W. Marston Jr.
Kenneth J. Davis
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

Respectfully submitted,

DATED:   March 11, 2008

Thomas B. Kenworthy
David W. Marston Jr.
Kenneth J. Davis
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921

Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001

Counsel for Respondents
Ansell Healthcare Products LLC,
Ansell Protective Products Inc.,
and Ansell (Thailand) Ltd.

# Exhibit G

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Theodore R. Essex
Administrative Law Judge

In the Matter of:

CERTAIN NITRILE GLOVES

Investigation
No. 337-TA-608

VERIFIED RESPONSE OF RESPONDENTS ANSELL LTD.,
ANSELL HEALTHCARE PRODUCTS LLC, ANSELL PROTECTIVE
PRODUCTS INC. AND ANSELL (THAILAND) LTD. TO THE AMENDED COMPLAINT

Respondents Ansell Ltd., Ansell Healthcare Products LLC ("Ansell Health-care"), Ansell Protective Products Inc. ("Ansell Protective Products") and Ansell (Thailand) Ltd. ("Ansell (Thailand)") (collectively "Ansell") hereby respond to the Amended Complaint in this investigation in accordance with the numbered paragraphs thereof as follows:

1.     It is admitted only that Tillotson (1) has filed an amended complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, alleging the unlawful importation into the United States, the sale for importation within the United States, and/or the sale within the United States after importation of certain nitrile gloves that allegedly utilize, without Tillotson's authorization, the invention claimed in Tillotson's '616 patent; and (2) requested the ITC to commence an investigation.  It is specifically denied that Ansell has imported into the United States, sold for importation into the United States or sold within the United States after importation any nitrile gloves that infringe the '616 patent.  Finally, it is specifically denied that the '616 patent is valid.

2.     It is admitted only that Ansell (Thailand) manufactures certain nitrile gloves and that Ansell Healthcare and Ansell Protective Products import into and distribute nitrile gloves in the United States. The allegations of this paragraph are otherwise denied as to Ansell. As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

3.     As to Ansell, the allegations of this paragraph are denied. No accused nitrile gloves manufactured, imported into the United States, used within the United States, or offered for sale or sold within the United States after importation by Ansell infringe any valid and enforceable claim of the '616 patent. As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

4.     As to Ansell, the allegations of this paragraph are denied. No accused nitrile gloves manufactured, imported into the United States, used within the United States, or offered for sale or sold within the United States after importation by Ansell infringe any valid and enforceable claim of the '616 patent. As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

5.     As to Ansell, the allegations of this paragraph are denied. No activity by Ansell, as alleged, is either unlawful or a violation of Section 337. By way of further response, no accused nitrile gloves manufactured, imported into the United States, used within the United States, or offered for sale or sold within the United States after importation by Ansell infringe any valid and enforceable claim of the '616 patent. As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

414.    The allegations of this paragraph are denied.  By way of further response, Ansell avers that under no circumstances would the issuance of a General Exclusion Order be fair, equitable or appropriate, particularly given the number of licensed nitrile gloves and the number of gloves that Tillotson's own testing show not to infringe.

## ADDITIONAL DEFENSES

1.    The asserted claims of the '616 patent are invalid.  Prior art products embodying subject matter claimed in the '616 patent were in public use more than a year before the effective filing date of the '616 patent, including a 1988 thin close-fitting nitrile dental glove manufactured by the company now known as Ansell Protective Products Inc.  Prior art patents and publications render the claims of the '616 patent obvious.  See e.g., U.S. Patent Nos. 2,880,189, 3,094,704 and 4,115,873.  The claims of the '616 patent are impermissively broader in certain regards than the claims of the '362 patent.  The reissue declaration is defective so as to render the '616 patent invalid.

2.    Tillotson's claims for relief are barred by laches and/or estoppel.

3.    The '616 patent is unenforceable by reason of the inequitable conduct of Tillotson, the inventors and/or their attorneys by reason, inter alia, of the following:

(a)    During the prosecution of the '616 patent there was an indefinite-ness objection in the prosecution of a European counterpart of the '616 patent, where the examiner in the EPO seriously objected to portions of claim 1 of the European counterpart that are similar to claim 1 of the '616 patent.  In particular, the EPO objected that the elastic properties of the material were defined by the result to be achieved, but that this functional definition omits

- 19 -

which type of "pressure" is meant and how and at which stretch it is measured.  The EPO further

noted "[t]his functional feature of defining the elastic properties objected to above needs to be

clearly defined since it is the essential feature of the invention and is supposed to delimit the

subject-matter from the prior art."

> (b)　　Tillotson and its attorneys who prosecuted the '616 patent knew

of this objection during the prosecution of the '616 patent, but withheld this information from

the PTO.

> (c)　　This objection by the EPO was highly material information.

> (d)　　Tillotson and its attorneys withheld this information from the

PTO with the intent to deceive or mislead the PTO.

> (e)　　Tillotson filed the application for a reissue patent that led to the

'616 patent because, <u>inter alia</u>, it believed the original U.S. Patent No. 5,014,362 ("the '362

patent") to be partly inoperative or invalid by reason of Tillotson claiming in error more than

Tillotson had a right to claim in view of prior art that Tillotson claimed it was not aware of

until after the '362 patent issued.

> (f)　　Pursuant to 35 U.S.C. § 251, the reissue of a defective patent is

only authorized when the error was "without deceptive intent."

> (g)　　In an attempt to establish that the "error" was without deceptive

intent, Tillotson filed with the PTO a declaration by Neil E. Tillotson, one of the named inven-

tors.  In the declaration, Mr. Tillotson represented that during the prosecution of the '362 patent

"neither the patent Applicant nor its attorneys were aware of the prior art" that rendered the '362

patent partly inoperative or invalid, which included two prior art products, the SOLVEX® glove

and the DERMA-THIN™ glove.

- 20 -

(h)     This representation was knowingly false.

(i)     This representation was highly material.

(j)     This representation was made with the intent to deceive or mislead the PTO.

(k)     The SOLVEX® and DERMA-THIN™ gloves were material to the patentability of the '362 patent.

(l)     Tillotson's failure to disclose the SOLVEX® and DERMA-THIN™ gloves during the prosecution of the '362 patent was with the intent to deceive or mislead the PTO.

(m)     Tillotson and its attorneys submitted test data to support claims that it was seeking in the reissue.

(n)     Tillotson and its attorneys knew that this test data was unreliable, but intentionally withheld that fact from the PTO.

(o)     The unreliability of the test data was highly material.

(p)     The withholding of the fact that the test data was unreliable was done with the intent to deceive or mislead the PTO.

4.     The equitable relief sought by Tillotson in this Tribunal is barred by unclean hands.

5.     To the extent Tillotson bases its claims against Ansell on gloves manufactured by Seal Polymer, those gloves are licensed.

WHEREFORE, Ansell requests that the United States International Trade Commission issue a Final Determination that the asserted claims of the '616 patent are invalid, unenforceable and not infringed by Ansell, and award such other relief as the Commission deems just and proper.

DATED:    March 11, 2008

Thomas B. Kenworthy
David W. Marston Jr.
Kenneth J. Davis
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001

Counsel for Respondents
Ansell Ltd., Ansell Healthcare Products
LLC, Ansell Protective Products Inc.,
and Ansell (Thailand) Ltd.

## VERIFICATION

I, CRAIG M. CAMERON, declare as follows:

1.    I am the Company Secretary of Ansell Ltd. and duly authorized to execute this verification on its behalf;

2.    I have read the Verified Response Of Respondents Ansell Ltd., Ansell Healthcare Products LLC, Ansell Protective Products Inc. And Ansell (Thailand) Ltd. To The Amended Complaint ("Response"), and am familiar with the allegations and statements contained therein;

3.    To the best of my knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the allegations and statements made in the Response are well-grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

4.    The Response is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of the investigation.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 11th day of March, 2008.

CRAIG M. CAMERON

# Exhibit H

Thomas B.
Kenworthy/PH/MLBLaw
03/17/2008 12:30 PM

To  gkaplan@kslaw.com, jtelep@kslaw.com

cc  David W. Marston/PH/MLBLaw@MorganLewis, Kenneth J.
Davis/PH/MLBLaw@MorganLewis, Rebecca Jill
Hillyer/PH/MLBLaw

bcc  breilly@ansell.com; mgilleece@ansell.com

Subject  Certain Nitrile Gloves,  Inv. Nos. 337-TA-608 & 612  -  TIME
SENSITIVE PROPOSAL

Gil & Jeff:

Although the Third Settlement Conference is not required to be held until April 11, if any settlement between Tillotson and Ansell is going to occur it will not happen unless it occurs by the end of this week and under the following terms:

(1)  Tillotson agrees to dismiss with prejudice in all forums all claims based on the '616 patent against all Ansell entities, and with respect to Ansell products, their suppliers, distributors and customers;

(2)  Tillotson agrees to release the Ansell entities their officers, directors, employees, customers, distributors and suppliers of all claims based on the alleged infringement of the '616 patent by reason of any Ansell product;

(3)  Tillotson agrees to reimburse Ansell for the additional costs it has been obliged to pay Seal Polymer as a result of Tillotson's claims and license under the '616 patent;

(4)  Tillotson agrees to grant to the Ansell entities a worldwide paid-up royalty-free license to make, have made, import, use, sell and offer for sale gloves falling within the scope of the '616 patent and any foreign counterpart;

(5)  Ansell Healthcare and Ansell Protective Products agree to dismiss with prejudice their claims against Tillotson in the Delaware Court;

(6)  The Ansell entities agree to release Tillotson, its officers, directors, employees and attorneys of all claims arising out of the enforcement of the '616 patent and the conduct of the Georgia, Delaware and ITC litigations; and

(7)  Ansell Ltd. agrees to withdraw all pending motions in the ITC.

This proposal will remain open until the close of business Friday, March 21.  During that period, the Ansell entities agree that they will not file a counterclaim in the ITC proceeding unless this offer has been rejected.

I would envision that if an agreement as outlined above is reached, there be a separate agreement to arbitrate such that the Amended Complaint against the Ansell entities in the ITC could be dismissed pursuant to Rule 210.21.

This is a proposal to be accepted or rejected by Tillotson.  We are not interested in discussing any counterproposals that would not include points (1) through (4) above.

Finally, in view of Order No. 63 on claim construction, we direct your attention to the recent decision in *Medtronic Navigation, Inc. v. BrainLAB AG*, No. 1:98-cv-01072, 2008 U.S. Dist. LEXIS 13483 (D. Colo. Feb. 12, 2008).

Tom

Thomas B. Kenworthy
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5702
(215) 963-5001 (fax)

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| TILLOTSON CORPORATION, d/b/a BEST MANUFACTURING COMPANY | ) ) ) | |
| | ) | CIVIL ACTION FILE NO.: |
| Plaintiff, | ) ) | 4:07-CV-00193-RLV |
| v. | ) | |
| SUPERMAX CORPORATION BHD., *et al.*; | ) ) | |
| | ) | |
| Defendants. | ) | |

_____

TILLOTSON'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

Plaintiff Tillotson Corporation ("Tillotson") submits this memorandum in

opposition to the motion to stay filed by Hartalega Holdings Bhd., Hartalega Sdn.

Bhd., Kossan Rubber Industries Bhd., Laglove (M) Sdn. Bhd., Perusahaan Getah

Asas Sdn. Bhd., PT Haloni Jane, PT Shamrock Manufacturing Corporation,

Riverstone Resources Sdn. Bhd., YTY Holdings Sdn. Bhd., YTY Industry

(Manjung) Sdn. Bhd., Smart Glove Corporation Sdn. Bhd., PT Smart Glove

Indonesia, and Smart Glove Holdings Sdn. Bhd. (collectively "Defendants").

## INTRODUCTION

Defendants seek a statutory stay of this action under 28 U.S.C. § 1659, or in the alternative, they request that this Court enter a discretionary stay. Tillotson opposes Defendants' motion on two grounds. First, because of Defendants' delay in bringing this motion, 28 U.S.C. § 1659 is simply inapplicable. Second, Defendants have not met their burden of showing that they are entitled to a discretionary stay. Such a stay would also place an undue hardship on Tillotson.

## ARGUMENT

I.    DEFENDANTS' DELAY OF ALMOST ONE YEAR PRECLUDES APPLICATION OF 28 U.S.C. § 1659.

28 U.S.C. § 1659 provides in relevant part that:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under Section 337 . . . the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, *but only if such request is made within --*
> *(1) 30 days after the party is named as a respondent in the proceeding before the Commission, or*
> *(2) 30 days after the district court action is filed,*
> *whichever is later.*

28 U.S.C. § 1659(a) (2008) (emphasis added). Thus, Congress has placed express 30-day time limits on when a respondent at the International Trade Commission (the "ITC") may invoke 28 U.S.C. § 1659. *Id.* According to the legislative history

of 28 U.S.C. § 1659(a), these time limits were intended "[t]o avoid abuse of this provision and to encourage prompt adjudication in the district courts . . ." H.R. REP. NO. 103-826(I), at 141-142 (1994).

Here, because Defendants are well beyond the time limits of 28 U.S.C. § 1659, they are not entitled to the statutory stay that they request. More particularly, Defendants were named as respondents at the ITC on June 28, 2007, the date that the ITC issued its Notice of Investigation. The parties are now more than a year beyond that date. Similarly, the instant action was filed on September 27, 2007. Thus, the last date on which Defendants were entitled to a stay under 28 U.S.C. § 1659 was October 27, 2007 -- roughly 300 days ago. Contrary to Defendants' arguments, they are not entitled to a statutory stay of this action. Permitting a stay under 28 U.S.C. § 1659 would undermine both the express language of this statue and the intent of Congress that 28 U.S.C. § 1659 not be abused. Defendants' motion thus should be denied.

## II. RESPONDENTS HAVE NOT MET THEIR BURDEN OF SHOWING THAT A DISCRETIONARY STAY IS WARRANTED.

Though the mandatory stay provision of 28 U.S.C. § 1659 is inapplicable, this Court has "the inherent power to manage [its] docket and stay proceedings." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *see also Epistar Corp. v. Philips Lumileds Lighting Co., LLC*, No. C07-5194, 2008 WL 913321, at

*2 (N.D. Cal. April 2, 2008); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But in exercising its inherent power, a court must consider both the judicial efficiency of a stay and the relative interests of the parties. *Iljin USA v. NTN Corp.*, No. 06-10145, 2006 WL 568351, at *2 (E.D. Mich. Mar. 7, 2006). With respect to the parties' interests, a stay is inappropriate if it will unduly prejudice "or present a clear tactical disadvantage" to the non-movant. *Epistar*, 2008 WL 913321 at *2. The moving party must also establish "a clear case of hardship or inequity in being required to go forward . . . ." *Id.*

The moving party bears the burden of showing that a stay is warranted. *Am. Honda Motor Co., Inc. v. Coast Dist. Sys., Inc.*, No. C. 06-04752, 2007 WL 672521, at *1 (N.D. Cal. Feb. 26, 2007). Ultimately, Defendants must show that a stay (1) is proper to further judicial efficiency, (2) is proper to reduce any *significant* burden Defendants face in moving forward with the action, and (3) that a stay will not tactically disadvantage or prejudice Tillotson. *Micron Tech., Inc. v. Mosel Vitelic Corp.*, No. Civ. 98-0293, 1999 WL 458168, *4 (D. Idaho, Mar. 31, 1999). Defendants have failed to establish any of these factors.

A.   A Stay Of This Action Will Not Promote Judicial Efficiency.

In determining the appropriateness of a stay at a particular stage of the litigation, courts consider matters of judicial efficiency.   These considerations

include whether there remains a need for substantial discovery, whether a trial date has been set, and whether simultaneous proceedings will ensue. *See e.g., Epistar*, 2008 WL 913321 at *2 (weighing the stage of the litigation, the duration of the stay, and the overlap between proceedings in considering motion to stay); *Tompkins Seals, Inc. v. The West Co.*, 22 U.S.P.Q. 469, 470 (E.D. Pa. 1985) (considering potential for parallel proceedings and attendant waste of judicial resources in granting stay).

As an initial matter, simultaneous proceedings are not at issue in this action. The ITC record was closed on May 30, 2008 and the ALJ's decision is expected seven days from today on August 25, 2008. The availability of a ruling from the ITC mitigates against a stay entered on the grounds of judicial efficiency. *Am. Honda*, 2007 WL 672521 at *2 (denying motion to stay when ITC proceeding would be resolved before trial date). And contrary to Defendants' arguments, there is no reason why this Court cannot benefit from the ALJ's claim construction order, the hearing transcript, and the ALJ's decision before this action proceeds to trial. The ALJ's decision will be available to this Court on August 25, one day before the due date for the parties' initial disclosures and commencement of discovery in this action.

With regard to discovery, the parties engaged in substantial discovery at the ITC. This included discovery related to patent infringement, invalidity, and unenforceability. Much of this discovery may be made available to the parties in this action.[1] As such, there does not exist a substantial need for discovery in this action. In fact, Tillotson expects that discovery in this action will be limited to the amount of Tillotson's damages.[2]

Notably, while the Court and the parties may be able to rely on the record from the ITC, the ITC's ruling is not binding on this Court. *See e.g., Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) (noting that "Congress did not intend decisions of the ITC on patent issues to have preclusive effect."); *Tex. Instruments, Inc. v. U.S.I.T.C.*, 851 F.2d 342, 344 (Fed. Cir. 1988) ("[T]he ITC's determinations regarding patent issues should be given no res judicata or collateral estoppel effect[.]"); *Am. Honda*, 2007 WL 672521, at *2. Thus, there is no reason to delay this litigation and await a ruling that is not precedential or even dispositive. In short, given the late stage of the ITC proceedings, the very early stage of these proceedings, the non-binding effect of

---

[1] Whether discovery obtained at the ITC may be used in this action will depend on the language of the parties' forthcoming protective order and whether the parties can negotiate any type of mutually-agreeable cross-use provision.

[2] Since damages are not available at the ITC, no discovery at the ITC was specifically directed to damages.

any ITC determination, and Tillotson's intention to pursue this action in this forum, judicial economy will not be served by postponement. Defendants have not met their burden of showing otherwise.

> B.    Defendants Have Failed To Establish That Allowing This Action To Proceed Will Present A Clear Hardship.

It is long-standing precedent that "the suppliant for a stay *must make out a clear case of hardship* or inequity in being required to go forward, if there is even a fair possibility that the stay for which one prays will work damage to some one else." *Landis*, 299 U.S. at 255 (emphasis added); *see also GFL Advantage Fund v. Colkitt*, 216 F.R.D. 189, 193 (D.C. 2003) ("The party requesting such a stay must make out a clear case of hardship or inequity in order to prevail."). As discussed below, there is more than a "fair possibility" that Tillotson will be damaged by entry of a stay of this action. Thus, under the *Landis* standard, Defendants must show "clear hardship" to warrant a stay of this action.

Here, Defendants have failed to make such a showing. Perhaps the best indication that Defendants will not be disadvantaged by proceeding with this action is the fact that they have waited so long to request a stay. As noted above, the ITC issued its Notice of Investigation on June 28, 2007. Then, on September 27, 2007, Tillotson filed this action. Defendants Smart Glove Corporation Sdn. Bhd., PT Smart Glove Indonesia, and Smart Glove Holdings Sdn. Bhd. have known about

this action since they were served with the Complaint in December 2007. (*See* D.E. 10). The other Defendants have also known about this action since at least December 2007 when they were provided a copy of the Complaint by international mail. (*See* D.E. 19 (#2) at 4-5). Nevertheless, Defendants have only now moved to stay this action. Furthermore, over the course of this litigation, Defendants and Tillotson have filed four joint motions for the extension of time for the commencement of discovery and attendant deadlines. During this time, Defendants failed to seek a stay of this action.

In seeking a stay now, Defendants argue only that they will be harmed because "there will be similar and overlapping issues addressed in both proceedings." (*See* D.E. 60 at 14). To the extent that any duplicative litigation will occur, that duplication is unavoidable and a stay will only prolong that duplication. Besides, the ITC action is almost over -- the trial occurred in May and the ALJ's decision is due on August 25. In essence, it appears that Defendants are suggesting that *actual litigation* in this Court will present a hardship. That argument is unpersuasive, particularly because "the hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay." *Am. Honda*, 2007 WL 672521, at *2 (citing *Lockyer v. Mirant*, 398 F.33d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not

constitute a 'clear case of hardship or inequity.'")).  In other words, the only

hardship Defendants point to is the unavoidable hardship that accompanies all

litigation.  Without more, Defendants have failed to meet the heightened burden of

"a clear case of hardship."

> C.   Tillotson Will Be Unduly Prejudiced And Tactically
> Disadvantaged By A Stay Of This Action.

Defendants incorrectly argue that, by moving for a General Exclusion Order

in the ITC, Tillotson has alleviated any disadvantage that Tillotson will suffer if

this action is stayed.  Yet even if this order is granted, it will not address the

damages that Tillotson has incurred because of Defendants' extensive infringement

of the patent-at-issue.  Rather, the entry of a General Exclusion Order will only

stem the tide of infringing gloves that will enter the United States *after* entry of the

order.  It will not compensate Tillotson for Defendants' past damages or preclude

the sale of infringing gloves already imported by Defendants.

A stay of this action -- if combined with a General Exclusion Order -- may

also erode Tillotson's ability to collect damages from the Defendants in the future.

More particularly, Defendants import into the United States and sell a vast number

of infringing gloves.  A General Exclusion Order would inevitably cut into this

large revenue stream and may potentially cause a number of the Defendants to

rapidly become financially insolvent.   Other Defendants may attempt to

reorganize their assets in an effort to evade liability. *See Tillotson v. Omni Int'l, LLC & Omnigrace (Thailand) Ltd.*, Civ. No. 4:02-CV-261 (HLM) (N.D. Ga. Nov. 7, 2002) (Omnigrace filed for bankruptcy reorganization after Tillotson sued); *Tillotson v. Shijiazhaung Hongray Plastic Prods., Ltd., et. al.*, No. 4:05-CV-00118 (N.D. Ga. Sept. 29, 2005) (after engaging in settlement negotiations with Tillotson and before answering the complaint, Defendants Island Dental and Darby Dental sold their company assets for $51.5 million to Henry Schein). A stay of this action while Defendants either become financially insolvent or reorganize their assets will unduly prejudice Tillotson.

It is also incorrect for Defendants to accuse Tillotson of any delay in service of process in this action. (*See* D.E. at 12). As established in Tillotson's January 24, 2008 Motion to Permit Alternate Methods of Service, Tillotson never contributed to any delay in service. (*See* D.E. 19 at 2-6). Rather, Tillotson's ability to effect service on certain Defendants[3] was obstructed by those Defendants. (*Id.* at 3-5). When the Court granted Tillotson's Motion to Permit Alternate Methods of Service on May 21, 2008, Tillotson moved swiftly to effect service on

---

[3] Those defendants include Hartalega Holdings Bhd., Hartalega Sdn. Bhd., Kossan Rubber Industries Bhd., Laglove (M) Sdn. Bhd., Perusahaan Getah Asas Sdn. Bhd., PT Haloni Jane, PT Shamrock Manufacturing Corporation, Riverstone Resources Sdn. Bhd., YTY Holdings Sdn. Bhd., and YTY Industry (Manjung) Sdn. Bhd.

the subject Defendants. (*See* D.E. at 33, 38-47). Tillotson did not delay as Defendants contend.

Defendants' reliance on Tillotson's motion to stay in separate Delaware declaratory judgment actions is similarly misplaced. (*See* D.E. 60 at 13). As an initial matter, those actions against Tillotson were filed by plaintiffs that have never been parties to this action. *See Ansell Healthcare Prods. LLC v. Tillotson*, C.A. No. 06-527 (D. Del. Aug. 25, 2006); *Ansell Protective Prods. v. Tillotson*, C.A. No. 07-093 (D. Del. Feb. 20, 2007). Those actions also involve different gloves than those that are at issue in this case. Also, Defendants ignore that Tillotson filed its motion to stay those Delaware actions on July 12, 2007 -- less than one month after the initiation of the ITC investigation on June 28, 2007. Thus, unlike the stay that Defendants request, there existed the potential in the Delaware actions to conserve judicial and party resources. Defendants also neglect to mention that the plaintiffs in the Delaware actions -- not Tillotson -- ultimately stayed those cases under 28 U.S.C. § 1659 (a recourse that is inapplicable to Defendants for the reasons explained above).

Lastly, a stay is particularly inappropriate because the Defendants, collectively, are still manufacturing, importing, and selling the infringing gloves at issue. Any delay of this action, particularly a delay as lengthy as Defendants

request, provides Defendants with additional time to leverage infringement in their favor as the expiration date of the '616 Patent approaches in May 2010. Beyond that date, Tillotson has little opportunity for meaningful recourse. Under these and the facts set forth above, a delay of this litigation will prejudice and tactically disadvantage Tillotson.

CONCLUSION

Defendants are not entitled to a statutory stay of this action because they failed to satisfy the mandatory time-limit provisions of 28 U.S.C. §1659. Further, Defendants have not met their burden of showing that a discretionary stay of this action is warranted. Such a stay would not promote judicial efficiency and would work an unnecessary and especially prejudicial hardship on Tillotson. Defendants' failure to show that their own hardship in moving forward with this litigation further mitigates against a discretionary stay. For these reasons, Tillotson respectfully requests that the Court deny Defendants' motion for a stay of this proceeding.

CERTICATE OF COMPLIANCE

I certify that this brief complies with the type-face and size limitations set

forth in Local Rules 5.1(B) and 7.1(D).  This brief was prepared in Times New

Roman, 14 point font.

Respectfully submitted, this 18th of August, 2008.

KING & SPALDING LLP

*/s/ Katrina M. Quicker*
Anthony B. Askew (Ga. Bar No. 025300)
Stephen M. Schaetzel (Ga. Bar No. 628653)
Katrina M. Quicker (Ga. Bar No. 590859)
Jason M. Pass (Ga. Bar No. 140972)
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5135
*Attorneys for Plaintiff Tillotson Corporation*

CERTIFICATE OF SERVICE

I certify that, on this day, a copy of TILLOTSON'S MEMORANDUM IN

OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS was

electronically filed with the Clerk of Court using the CM/ECF System, which will

automatically send electronic mail notification of such filing to the following

attorneys of record:

    Perry R. Clark
    Kirkland & Ellis LLP
    555 California Street
    San Francisco, CA 94104
    415-439-1400

    Sarah L. Forney
    Kirkland & Ellis LLP
    555 California Street
    San Francisco, CA 94104
    415-439-1400

    Joseph Duane Wargo
    Wargo & French
    1170 Peachtree Street, NE
    Suite 2020
    Atlanta, GA 30309
    404-853-1500

    Sarah-Nell Walsh
    Wargo & French LLP
    1170 Peachtree Street, N.E.
    Suite 2020
    Atlanta, GA  30309
    (404) 853-1500

Michael Kovaka
Dow Lohnes, PLLC
Six Concourse Parkway
Atlanta, GA 30328-6117
(770) 901-8910

Scott M. Daniels
Westerman, Hattori, Daniels & Adrian
Suite 700
1250 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 822-1100

This 18th day of August, 2008.

_/s/ Katrina M. Quicker_
Katrina M. Quicker

# Exhibit J

Case 1:08-cv-00561-UNA    Document 27-2    Filed 08/22/2008    Page 59 of 59

BLOG HOME      CONTACT US

Home > D. Del. News and Events Featured > Six New Jersey District Judges Designated to Sit in
Delaware

« Previous | Home | Next »

# Six New Jersey District Judges Designated to Sit in Delaware

Posted In: D. Del. News and Events, Featured on August 11, 2008 By Andrew Lundgren

On the heels of the announcement that judges from the
Eastern District of Pennsylvania will begin hearing cases filed
in Delaware, Third Circuit Chief Judge Anthony J. Scirica has
designated six judges from the District of New Jersey to do
the same. The designation orders, effective last Thursday,
increase the total non-Delaware judicial delegation to twelve
(navigate to revised "7/28/2008" link).

According to the Wilmington News Journal, every fourth civil
case will be assigned to one of the designated district
judges. Although the judges will likely hear pretrial matters
in either Pennsylvania or New Jersey, trials will be conducted
in Delaware.

The six designated district judges from New Jersey are: Hon.
Renee Marie Bumb, Hon. Mary Little Cooper, Hon. Noel L.
Hillman, Hon. Robert B. Kugler, Hon. Joel A. Pisano, and Hon.
Jerome B. Simandle.



« Previous | Home | Next »

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF WITHDRAWAL OF MOTION OF PLAINTIFF
ANSELL HEALTHCARE PRODUCTS LLC TO ENJOIN THE PURSUIT OF A NEW
LATER-FILED GEORGIA ACTION AGAINST ADDITIONAL ANSELL ENTITIES,
AND FOR SANCTIONS AGAINST TILLOTSON AND ITS GEORGIA ATTORNEYS**

In light of Tillotson's dismissal of all claims against all of the Ansell entities in the new Georgia action, the Motion Of Plaintiff Ansell Healthcare Products LLC To Enjoin The Pursuit Of A New Later-Filed Georgia Action Against Additional Ansell Entities, And For Sanctions Against Tillotson And Its Georgia Attorneys (D.I. 76) is hereby withdrawn.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

*Of Counsel:*
Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 11, 2007

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
TILLOTSON'S MOTION TO STAY PROCEEDINGS PENDING THE
OUTCOME OF THE INTERNATIONAL TRADE COMMISSION'S INVESTIGATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(320) 658-9200
*Attorneys for Plaintiffs*
*Ansell Healthcare Products LLC and*
*Ansell Protective Products Inc.*

*Of Counsel:*
Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 26, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

SUMMARY OF ARGUMENT ..............................................................................2

STATEMENT OF PERTINENT FACTS ...................................................................2

ARGUMENT ......................................................................................................3

    A.    Tillotson Has Repeatedly Conjured Up Ways To Try To Avoid
An Adjudication By This Court ...............................................................3

    B.    Until Ansell Brought The Issues Of The Noninfringement, Invalidity
And Unenforceability Of The '616 Patent Before This Court, Tillotson
Had No Concerns For Either Judicial Economy Or A Comprehensive
Resolution Of Its Claims In One Proceeding.................................................4

    C.    A Stay Of This Action Would Seriously Prejudice Ansell Healthcare
And Ansell Protective Products ..............................................................5

        (1)  A stay would prejudice plaintiffs' ability to obtain a
prompt summary judgment ruling by an Article III Court
that would be binding on the ITC .................................................5

        (2)  A stay would require duplicative depositions ...............................7

    D.    Staying This Action Would Not Simplify The Issues Between
The Parties And Before This Court ..........................................................8

    E.    Tillotson's Reliance On Cases Addressing Which Of Two District
Courts Should Take Priority Has No Bearing On The Issue Of
Whether A District Court Action Should Be Stayed In Favor Of
An Administrative Adjudicatory Proceeding.................................................9

    F.    The Two District Cases Cited By Tillotson Are Distinguishable
And Not Persuasive...............................................................................9

    G.    Granting A Stay Would Be Wholly Inconsistent With Congressional
Intent In Enacting 28 U.S.C. § 1659 .......................................................10

CONCLUSION...................................................................................................12

## TABLE OF AUTHORITIES

CASES

*Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*,
    No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) ..................................... 9-10

*Hester Indus., Inc. v. Stein, Inc.*,
    142 F.3d 1472 (Fed. Cir. 1998)..................................................................................................6

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
    183 F.3d 1369 (Fed. Cir. 1999).................................................................................................6

*Iljin USA v. NIN Corp.*,
    No. 06-10145, 2006 WL 568351 (E. D. Mich. Mar. 7, 2006) ............................................. 9-10

*Nupla Corp. v. IXL Mfg. Co., Inc.*,
    114 F.3d 191 (Fed. Cir. 1997)...................................................................................................7

*Pannu v. Storz Instruments, Inc.*,
    258 F.3d 1366 (Fed. Cir. 2001)................................................................................................6

*Pegasus Development Corp. v. DirecTV, Inc.*,
    No. C. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)...................................9

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed.Cir. 1996)...................................................................................................8

*Tillotson, Ltd. v. Walbro Corp.*,
    831 F.2d 1033 (Fed.Cir. 1987).................................................................................................6

*Vectra Fitness, Inc. v. TNWK Corp.*,
    162 F.3d 1379 (Fed. Cir. 1998)................................................................................................6

*Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*,
    721 F.2d 1305 (Fed. Cir. 1983)............................................................................................ 8-9

STATUTES

28 U.S.C. § 1659........................................................................................................................ 9-11

35 U.S.C. § 251.............................................................................................................................5

OTHER AUTHORITIES

H. R. Rep. No. 103-826(I) (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773 .....................................11

RULES

Fed. R. Civ. P. 1 ..........................................................................................................................12

## NATURE AND STAGE OF THE PROCEEDINGS

These are declaratory judgment actions filed respectively by Ansell Healthcare Products LLC ("Ansell Healthcare") and Ansell Protective Products Inc. ("Ansell Protective Products"), U.S.-based suppliers of nitrile gloves, against Tillotson Corporation ("Tillotson"), the record owner of U.S. Patent No. Re. 35,616 ("the '616 patent"), seeking declarations that certain gloves that Tillotson had accused of infringing did not infringe any valid and enforceable claim of the '616 patent. The first action was filed on August 25, 2006 and discovery has been ongoing in that action since October of 2006. Ansell Heathcare has served three sets of interrogatories and one set of requests for production of documents and things. [*See* C.A. 06-527-JJF, D.I. 21; 48; 62]. Ansell Protective Products has served three sets of interrogatories, one set of requests for production of documents and things and one set of requests for admission. [*See* C.A. 07-93-JJF, D.I. 10; 11; 18; 19; 20]. In the two actions, Tillotson has served four sets of interrogatories, one set of requests for production of documents and things, and one set of requests for admission. [*See* C.A. 06-527-JJF, D.I. 34; 40; 68; 71; C.A. 07-93-JJF, D.I. 9]. The Court has heard and ruled on three discovery motions. [*See* C.A. 06-527-JJF, D.I. 44; 64; 66]. This is the third motion that has addressed efforts by Tillotson to have the dispute decided in another forum and to avoid a ruling on the merits by this Court. [*See id.,* D.I. 10; 75; 90].

Although a specific trial date has not been set, by Order dated July 13, 2007, the Court has directed that trial in the Ansell Healthcare case will commence in the 120-day period between September 4, 2008 and January 2, 2009 and that counsel should make themselves available for trial during that period. [*See id.,* D.I. 92].

## SUMMARY OF ARGUMENT

Even though Ansell Healthcare's case has been pending for 11 months, and is before an Article III Court, Tillotson argues that this Court should stay its cases in favor of an administrative adjudicatory body – the ITC.  No issues would be narrowed if a stay were granted because any ruling by the ITC will have no binding effect on either this Court or the parties.  Moreover, the grant of a stay would substantially prejudice Ansell Healthcare and Ansell Protective Products, particularly insofar as it would delay the determination of a discrete motion for summary judgment of invalidity that involves no issues of fact and that is ripe for decision now.  Such a determination by this Court would be binding on Tillotson in the ITC.

Tillotson's motion for stay should be denied and Ansell Healthcare and Ansell Protective Products should be granted leave to file at this point in the proceedings a motion for summary judgment of invalidity on the grounds set forth herein.[1]

## STATEMENT OF PERTINENT FACTS

The pertinent facts are set forth in the Nature and Stage of the Proceedings section and in the Argument section in the context of the points to which they relate.

---

[1]   To the extent the Court feels that this request should be by a separate formal motion, Ansell Healthcare and Ansell Protective Products will do so promptly.

## ARGUMENT

**A.    Tillotson Has Repeatedly Conjured Up Ways
        To Try To Avoid An Adjudication By This Court**

Tillotson has repeatedly conjured up ways to have the dispute between the Ansell parties and Tillotson first raised in this Court decided by some other tribunal and to avoid an adjudication of the merits by this Court:

- **Motion To Transfer** - Tillotson's first effort to avoid a ruling by this Court was its motion to transfer the Ansell Healthcare case to Georgia. That was a legitimate motion, albeit lacking in merit, and this Court denied it on February 2, 2007. [*See* C.A. 06-527-JJF, D.I. 10; 44].

- **Suit Against Additional Entities In Georgia** - Tillotson next tried to accomplish indirectly what this Court had denied when done directly – on May 30, 2007, it filed suit in Georgia against a host of Ansell entities, including a company that had been merged into Ansell Healthcare. In the face of a motion to enjoin pursuit of those claims against the Ansell entities and for sanctions, Tillotson withdrew all claims against Ansell entities in the new Georgia action. [*See id.*, D.I. 88].

- **Motion To Stay Or Transfer These Proceedings In Favor Of New Georgia Action** - On June 21, 2007, Tillotson's counsel stated that Tillotson was "considering asking the Delaware court to either stay or transfer the AHP [Ansell Healthcare] and the Ansell Protective Products cases to Georgia in favor of the Georgia case . . . ." [*See* Declaration of Thomas B. Kenworthy filed contemporaneously herewith ("Kenworthy Decl."), ¶ 2 and Ex. A].

- **Motion To Stay These Proceedings Pending Adjudication In The ITC** - On July 12, 2007, Tillotson filed this motion to stay the proceedings in this Court pending an adjudication in the ITC.

**B.**  **Until Ansell Brought The Issues Of The Noninfringement, Invalidity And Unenforceability Of The '616 Patent Before This Court, Tillotson Had No Concerns For Either Judicial Economy Or A Comprehensive <u>Resolution Of Its Claims In One Proceeding</u>**

Over 9 months *after* Ansell Healthcare brought this declaratory judgment action to obtain a judicial resolution of Tillotson's charge that the Micro-Touch nitrile glove infringed the '616 patent, Tillotson filed a complaint in the ITC. A month and a half later, Tillotson has filed a motion to stay this judicial proceeding pending a resolution of the recently-filed administrative proceeding in which Tillotson did not name either Ansell Healthcare or Ansell Protective Products as a respondent.[2/] In support of this motion for a stay, Tillotson now touts the purported benefits of a comprehensive disposition against all pertinent parties and the conservation of judicial resources. These new-found "positions" are the antithesis of Tillotson's actual conduct prior to the bringing of declaratory judgment actions in this Court by Ansell Healthcare and Ansell Protective Products. Indeed, over an 8-year period, Tillotson has filed at least 18 separate actions alleging infringement of the '616 patent, none of which it has sought to consolidate for any purpose. Given this course of conduct whereby Tillotson and various opposing parties were simultaneously addressing the same issues of infringement, invalidity and

---

[2/]  Tillotson makes the statement in its brief, unsupported by any declaration, that "Tillotson is in the process of seeking to amend its ITC Complaint to include Ansell HC [Ansell Healthcare] and Ansell PP [Ansell Protective Products] as respondents." [Tillotson Br. at 2]. A review of the ITC docket as of July 26, 2007, however, reflects no effort on the part of Tillotson to amend its ITC Complaint to include either Ansell Healthcare or Ansell Protective Products as respondents. [*See* Kenworthy Decl., ¶ 3 and Ex.B].

4

enforceability in three or more proceedings at the same time, Tillotson's objection – when it is outside its favored forum – to proceeding in two fora at the same time rings hollow. That is particularly so, given that it was Tillotson that brought the second proceeding on itself over 9 months after this suit had begun.

<b>C.    A Stay Of This Action Would Seriously Prejudice Ansell Healthcare And Ansell Protective Products</b>

<b>(1)    A stay would prejudice plaintiffs' ability to obtain a prompt summary judgment ruling by an Article III Court that would be binding on the ITC.</b>

Ansell Healthcare and Ansell Protective Products initiated these declaratory judgment actions because of Tillotson's accusations against them (but failure to sue), and to seek a judgment by an Article III Court to remove the cloud in the marketplace posed by Tillotson's unfounded accusations of the infringement of an invalid and unenforceable patent. The stay now requested by Tillotson would undercut that objective and seriously prejudice Ansell Healthcare and Ansell Protective Products.

Before Tillotson filed its motion for a stay, it was aware that Ansell Healthcare and Ansell Protective Products intended to ask this Court for leave to file now a motion for summary judgment of the invalidity of the '616 patent. [*See* Kenworthy Decl., ¶ 4]. As shown below, the two grounds for that motion are straightforward, involve no disputed issues of fact, and are legally unassailable:

<b>(a)    Invalidity because of a broadening of the claims during reissue after more than two (2) years.</b>

- A patentee may not broaden the scope of the claims of the original patent in a reissue patent unless the patentee applies for the reissue within two years from the date the original patent was granted. 35 U.S.C. § 251.

5

- Whether amendments made during reissue or reexamination proceedings enlarge the scope of a claim is a matter of claim construction and thus purely a question of law for the Court. *See Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1373 (Fed. Cir. 1999).

- "A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n.2 (Fed.Cir. 1987).

- "A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id.*

- The original claims of the '362 patent were limited by the requirement that the glove "initially exert[] **a predetermined** pressure on the hand." (Emphasis added).

- During reissue, the term "predetermined" was replaced with the term "initial."

- All gloves that exert any pressure on the hand at all will exert an initial pressure on the hand after being stretched to fit about the hand.

- The effect of the reissue amendment was to eliminate the "predetermined" limitation altogether. There clearly are gloves that would have an **initial** pressure on the hand and thus potentially within the scope of the reissue claims, that would not have a **predetermined** pressure and would have been outside the scope of the original claims. A reissue claim that does not include a limitation in the original claim is broader than the original claim. *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1371 (Fed. Cir. 2001) quoting *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998).

- The broadening of the claims during reissue after two years renders the broadened claims of the '616 patent invalid. *See Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1380-81, 1384-85 (Fed. Cir. 1998).

(b)  **The reissue declaration is defective**
**so as to invalidate the claims.**

- The reissue regulations require a declaration identifying each error sought to be corrected and explaining how each such error arose or occurred, and that it was without deceptive intent. *See Nupla Corp. v. IXL Mfg. Co., Inc.*, 114 F.3d 191, 195 (Fed. Cir. 1997).

- Neither the original nor supplemental reissue declaration submitted by Tillotson during the reissue proceedings that led to the '616 patent identified the original use of the term "predetermined" as an error, explained how it arose or occurred, or stated that it arose without deceptive intent.

- All the reissue claims contain the limitation of "an initial pressure" in lieu of the original "a predetermined pressure."

- The inadequacy of the reissue declaration renders all of these claims invalid. *See Nupla*, 114 F.3d at 195.

(2)  **A stay would require duplicative depositions.**

Whereas the denial of a stay would not cause any duplicative depositions at all,[3/] staying this case would because there would be a need to redepose persons who had knowledge relevant to issues before this Court but not the ITC, *i.e.*, a myriad of damages-related issues. Moreover, if depositions involving confidential subjects were taken only in the ITC proceeding, the Protective Order in the ITC would preclude the use of the depositions in this Court. [*See* Kenworthy Decl., ¶ 5 and Ex. C].

---

[3/]  All depositions could be double captioned and the use of the depositions would be governed as to each tribunal by its rules and protective order. The depositions would thus cover all matters reasonably calculated to lead to the discovery of admissible evidence in *either* proceeding.

7

**D.    Staying This Action Would Not Simplify The Issues
Between The Parties And Before This Court**

Tillotson **argues** that "staying the instant action will greatly simplify the issues between the parties and before the Court." [Tillotson Br. at 11]. Nowhere, however, does Tillotson **explain how** the issues would be simplified. It is an established principle that no ruling in the ITC on even common issues such as claim construction, infringement, validity and enforceability will have any *res judicata* or collateral estoppel effect in this Court. *See Texas Instruments, Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1568 (Fed.Cir. 1996). Tillotson has also declined to agree to be bound in this Court by any determination of noninfringement, invalidity or unenforceability in the ITC. [*See* Kenworthy Decl., ¶ 6]. Thus, if a stay were granted, the issues would not be narrowed at all.

On the other hand, however, if this Court grants summary judgment in favor of Ansell Healthcare and Ansell Protective Products and finds the '616 patent to be invalid, this Court's ruling will be binding on Tillotson in the ITC, and in every other District Court in which it is attempting to enforce this invalid patent. *See Young Engineers, Inc. v. U.S. Int'l Trade Comm'n,* 721 F.2d 1305, 1315-16 (Fed. Cir. 1983). Thus, to the extent that considerations of efficiency and judicial economy come into play, they clearly weigh in favor of denying the requested stay. As the Federal Circuit aptly noted in *Young Engineers,* "the evils of vexatious litigation and waste of resources are no less serious because the second proceeding is before an administrative tribunal." *Id.* at 1315.

**E.    Tillotson's Reliance On Cases Addressing Which Of Two District Courts Should Take Priority Has No Bearing On The Issue Of Whether A District Court Action Should Be Stayed In Favor Of An Administrative Adjudicatory Proceeding**

Tillotson's first argument based on the priority between a first-filed **District Court** action and a second-filed **District Court** action [Tillotson Br. at 8-11] has no applicability here at all. In the circumstances addressed in that section of Tillotson's brief, an adjudication of the common issues by one court will be binding on the parties in the second court under principles of claim preclusion or issue preclusion. *See Young Engineers*, 721 F.2d at 1316. As shown above, that is not so in a patent case where one of the two fora is an administrative adjudicatory tribunal. Equally inapplicable are cases involving stays pending reexamination. In a reexamination proceeding, the PTO can materially affect the issues by having the subject claims found unpatentable or narrowed in scope by amendment. *See e.g., Pegasus Development Corp. v. DirecTV, Inc.*, No. C. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003).

**F.    The Two District Cases Cited By Tillotson Are Distinguishable And Not Persuasive**

Tillotson relies on two cases addressing stays of District Court cases pending a determination by the ITC: *Iljin USA v. NIN Corp.*, No. 06-10145, 2006 WL 568351 (E. D. Mich. Mar. 7, 2006) and *Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*, No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005). Both of these cases are distinguishable from the circumstances presented here and neither are persuasive authority for this case.

The *Flexsys* case involved a motion by ITC respondents and related companies who were also defendants in a District Court proceeding that involved allegations of infringement of four patents, three of which were also the subject of the ITC proceeding. Thus, under 28 U.S.C. § 1659, three of the movants were absolutely entitled to a stay of the District

9

Court action as to three of the four patents. The fourth patent was a member of the same family. The reasons that the *Flexsys* Court stayed the entire litigation after the core of the case was required to be stayed provide no support whatsoever for a stay in this case where no part of it is required to be stayed at Tillotson's request.

In *Iljin*, the District Court action was filed over 2 ½ months after the filing of the ITC complaint and only five months before the ITC hearing was to be held. The party that filed the **later** District Court action opposed the stay. Here, the litigation in this Court began over 10 months before the ITC investigation was instituted and the party opposing the stay filed the **earlier** District Court proceeding. Aside from this significant factual distinction, it also appears that the *Iljin* Court was influenced by the view that "the ITC is more experienced in deciding patent disputes that the district court." 2006 WL 568351 at *2. With all due respect to the experience Administrative Law Judge Bullock has obtained in patent litigation since being appointed as an Administrative Law Judge in the ITC in 2003,[4] surely Tillotson is not suggesting that he has more experience in deciding patent cases than this Court.

Finally, the *Iljin* Court did not appear to appreciate that an ITC decision will have no *res judicata* or collateral estoppel effect. Thus, its belief that if the ITC investigation proceeded first, it would narrow the issues, was not well-grounded.

### G. Granting A Stay Would Be Wholly Inconsistent With Congressional Intent In Enacting 28 U.S.C. § 1659

Contrary to Tillotson's suggestion, Congress did not express any view that there were inherent benefits in staying a District Court action pending the resolution of parallel proceedings before the ITC. Neither the language of 28 U.S.C. § 1659 nor the Legislative

---

[4]   Prior to that, Administrative Law Judge Bullock was an Administrative Law Judge at the EPA and FERC. [*See* Kenworthy Decl., ¶ 7 and Ex. D].

History support such a proposition. To the contrary, allowing Tillotson to obtain a stay based on its belated filing of a Complaint in the ITC would be wholly inconsistent with Congressional intent in enacting 28 U.S.C. § 1659.

In November 1989, the General Agreement on Tariffs and Trade (GATT) adopted a dispute settlement report that found that ITC investigation procedures were inconsistent with the national treatment rule because they treat imported goods less favorably than the procedures that District Courts apply to domestic goods in infringement proceedings. H. R. Rep. No. 103-826(I) (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773, 3912. In particular, the panel found, *inter alia*, that importers and producers of imported products may have to defend claims in both the ITC and in District Court, possibly at the same time, whereas infringement claims against domestic goods can be heard only in District Court. *Id.* In order to rectify this disparate treatment, 28 U.S.C. § 1659 was enacted so as to give importers and producers of imported goods, the ability, **at their election**, to preclude two parallel proceedings, and there is a short window within which to exercise that right. *Id.* at 3913.

Here the importers of goods **do not want** to have the declaratory judgment actions, which they instituted to remove the cloud over their gloves, derailed by the belated ITC investigation initiated by Tillotson. Application of the national treatment rule which underlies 28 U.S.C. § 1659 should result in the denial of Tillotson's requested stay, because Tillotson would not be able to use the pendency of ITC proceedings to derail an earlier declaratory judgment action filed by a supplier of domestic gloves. A stay of a District Court proceeding (pending completion of an ITC proceeding) at the patentee's request and over the respondents' objections is not only inconsistent with the policies giving rise to 28 U.S.C. § 1659, but also is inconsistent

11

with the bedrock precept that cases be administered "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1.

**CONCLUSION**

For all the foregoing reasons, plaintiffs Ansell Healthcare and Ansell Protective Products respectfully request the Court to (1) deny Tillotson's motion for a stay; and (2) grant plaintiffs' leave to file within ten (10) days hereof a motion for summary judgment as to the invalidity of the '616 patent on the grounds set forth herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(302) 658-9200

*Attorneys for Plaintiffs*
*Ansell Healthcare Products LLC and*
*Ansell Protective Products Inc.*

*Of Counsel:*

Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

July 26, 2007

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC,    ) | |
|          ) | |
|     Plaintiff,    ) | |
|          ) | C.A. No. 06-527-JJF |
|   v.    ) | |
|          ) | **JURY TRIAL DEMANDED** |
| TILLOTSON CORPORATION,    ) | |
|          ) | |
|     Defendant    ) | |
| _____ ) | |
| ANSELL PROTECTIVE PRODUCTS, INC., ) | |
|          ) | |
|     Plaintiff,    ) | |
|   v.    ) | |
|          ) | C.A. No. 07-93-JJF |
| TILLOTSON CORPORATION,    ) | |
|          ) | **JURY TRIAL DEMANDED** |
|     Defendant.    ) | |

## ORDER

WHEREAS, on July 12, 2007, Defendant Tillotson Corporation ("Tillotson") filed Motions To Stay Proceedings Pending The Outcome Of The International Trade Commission's Investigation [C.A. No. 06-527-JJF D.I. 90; C.A. No. 07-93-JJF D.I. 22]; and

WHEREAS, on July 26, 2007, Plaintiff Ansell Healthcare Products LLC and Plaintiff Ansell Protective Products Inc. requested leave to file a motion for summary judgment as to the validity of the '616 Patent at this stage of the proceedings [C.A. No. 06-527-JJF D.I. 96; C.A. No. 07-93-JJF D.I. 27];

IT IS HEREBY ORDERED as follows:

1.    Tillotson's Motions To Stay Proceedings Pending The Outcome Of The International Trade Commission's Investigation are DENIED. The Court will permit double captioning of discovery for use in both the International Trade Commission Investigation No. 337-TA-608 and the instant case before this Court.

2.      Plaintiff Ansell Healthcare Products LLC and Plaintiff Ansell Protective

Products Inc.'s request for leave to file a motion for summary judgment at this stage of the

proceedings is DENIED.

IT IS SO ORDERED this _24_ day of _August_ 2007.

_____
United States District Judge

813969/30675

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93 (JJF) |
| | ) | |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Charles E. Bullock
Administrative Law Judge

| | |
|---|---|
| In the Matter of: | |
| | Investigation |
| CERTAIN NITRILE GLOVES | No. 337-TA-608 |

STIPULATION TO ALLOW CROSS-USE AND
CROSS-PRODUCTION OF INFORMATION, DOCUMENTS AND TESTIMONY

It is hereby stipulated and agreed among Tillotson Corporation ("Tillotson"), Ansell Ltd., Ansell Healthcare Products LLC ("Ansell Healthcare") and Ansell Protective Products Inc. ("Ansell Protective Products") through their respective counsel, as follows:

(1)     This Stipulation shall govern the cross-use and cross-production of information and documents[1/] in *In the Matter of Certain Nitrile Gloves*, USITC Inv. No. 337-TA-608 (the "ITC Investigation") and two cases pending in the United States District Court for the District of Delaware: *Ansell Healthcare Products LLC v. Tillotson Corporation*, C.A. No. 06-527-JJF, and *Ansell Protective Products Inc. v. Tillotson Corporation*, C.A. No. 07-93-JJF (collectively, the "Delaware Actions").

(2)     All information and documents provided by Tillotson, Ansell Healthcare or Ansell Protective Products in the Delaware Actions shall be deemed to have been also provided in the ITC Investigation.

(3)     Before any information and documents designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and provided by Tillotson, Ansell Healthcare, or Ansell Protective Products in the Delaware Actions may be used in the ITC Investigation, it shall be marked as confidential business information as set forth in paragraph (a) of the ITC Protective Order. The use of such information and documents in the ITC Investigation shall be governed by the terms of the ITC Protective Order.

---

[1/]     For the purposes of this Stipulation, the phrase "information and documents" is defined to include, but not be limited to, discovery requests and responses thereto, documents and things produced in response to discovery requests, expert reports, and deposition and hearing transcripts.

(4)    All information and documents provided by Tillotson, Ansell Ltd., Ansell Healthcare, or Ansell Protective Products in the ITC Investigation, including any confidential business information, may be used in the Delaware Actions. Before use in the Delaware Actions, any such confidential business information shall be marked "HIGHLY CONFIDENTIAL," and its use in the Delaware Actions shall be governed by the Protective Order in the Delaware Actions.

(5)    Nothing provided in the ITC Investigation or the Delaware Actions under the terms of this Stipulation shall in any way limit the parties' rights to object to the admissibility of such information and documents on any ground.

DATED: August 28, 2007

_____
Gilbert B. Kaplan, Esquire
Jeffrey M. Telep, Esquire
Matthew S. Dunne, Esquire
Taryn L. Koball, Esquire
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706
(202) 737-0500

*and*

Anthony B. Askew, Esquire
Stephen M. Schaetzel, Esquire
Katrina M. Quicker, Esquire
Jason M. Pass, Esquire
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
(404) 572-4600

*Attorneys for Tillotson Corporation*

DATED: August 28, 2007

_____
Thomas B. Kenworthy, Esquire
David W. Marston, Jr., Esquire
Rebecca J. Hillyer, Esquire
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5000

*Attorneys for Ansell Ltd.,*
*Ansell Healthcare Products LLC,*
*and Ansell Protective Products Inc.,*

- 3 -

# Exhibit F

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Theodore R. Essex
Administrative Law Judge

In the Matter of:

CERTAIN NITRILE GLOVES

Investigation
No. 337-TA-608

NOTICE OF APPEARANCE

Notice is hereby given, pursuant to Commission Rule of Practice and Procedure

201.11, (19 C.F.R. § 201.11), of the appearance of the following counsel for Respondents Ansell

Healthcare Products LLC, Ansell Protective Products Inc., and Ansell (Thailand) Ltd.:

Thomas B. Kenworthy
David W. Marston Jr.
Kenneth J. Davis
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

Respectfully submitted,

DATED:   March 11, 2008

Thomas B. Kenworthy
David W. Marston Jr.
Kenneth J. Davis
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921

Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001

Counsel for Respondents
Ansell Healthcare Products LLC,
Ansell Protective Products Inc.,
and Ansell (Thailand) Ltd.

# Exhibit G

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**
**Before The Honorable Theodore R. Essex**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of:<br><br>**CERTAIN NITRILE GLOVES** | **Investigation**<br>**No. 337-TA-608** |

**VERIFIED RESPONSE OF RESPONDENTS ANSELL LTD.,**
**ANSELL HEALTHCARE PRODUCTS LLC, ANSELL PROTECTIVE**
**PRODUCTS INC. AND ANSELL (THAILAND) LTD. TO THE AMENDED COMPLAINT**

Respondents Ansell Ltd., Ansell Healthcare Products LLC ("Ansell Health-care"), Ansell Protective Products Inc. ("Ansell Protective Products") and Ansell (Thailand) Ltd. ("Ansell (Thailand)") (collectively "Ansell") hereby respond to the Amended Complaint in this investigation in accordance with the numbered paragraphs thereof as follows:

1.      It is admitted only that Tillotson (1) has filed an amended complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, alleging the unlawful importation into the United States, the sale for importation within the United States, and/or the sale within the United States after importation of certain nitrile gloves that allegedly utilize, without Tillotson's authorization, the invention claimed in Tillotson's '616 patent; and (2) requested the ITC to commence an investigation.  It is specifically denied that Ansell has imported into the United States, sold for importation into the United States or sold within the United States after importation any nitrile gloves that infringe the '616 patent.  Finally, it is specifically denied that the '616 patent is valid.

2.      It is admitted only that Ansell (Thailand) manufactures certain nitrile gloves and that Ansell Healthcare and Ansell Protective Products import into and distribute nitrile gloves in the United States.  The allegations of this paragraph are otherwise denied as to Ansell.  As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

3.      As to Ansell, the allegations of this paragraph are denied.  No accused nitrile gloves manufactured, imported into the United States, used within the United States, or offered for sale or sold within the United States after importation by Ansell infringe any valid and enforceable claim of the '616 patent.  As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

4.      As to Ansell, the allegations of this paragraph are denied.  No accused nitrile gloves manufactured, imported into the United States, used within the United States, or offered for sale or sold within the United States after importation by Ansell infringe any valid and enforceable claim of the '616 patent.  As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

5.      As to Ansell, the allegations of this paragraph are denied.  No activity by Ansell, as alleged, is either unlawful or a violation of Section 337.  By way of further response, no accused nitrile gloves manufactured, imported into the United States, used within the United States, or offered for sale or sold within the United States after importation by Ansell infringe any valid and enforceable claim of the '616 patent.  As to the other named respondents, Ansell is without knowledge or information sufficient to respond to the allegations of this paragraph.

414.    The allegations of this paragraph are denied.  By way of further response, Ansell avers that under no circumstances would the issuance of a General Exclusion Order be fair, equitable or appropriate, particularly given the number of licensed nitrile gloves and the number of gloves that Tillotson's own testing show not to infringe.

## ADDITIONAL DEFENSES

1.    The asserted claims of the '616 patent are invalid.  Prior art products embodying subject matter claimed in the '616 patent were in public use more than a year before the effective filing date of the '616 patent, including a 1988 thin close-fitting nitrile dental glove manufactured by the company now known as Ansell Protective Products Inc.  Prior art patents and publications render the claims of the '616 patent obvious.  See e.g., U.S. Patent Nos. 2,880,189, 3,094,704 and 4,115,873.  The claims of the '616 patent are impermissively broader in certain regards than the claims of the '362 patent.  The reissue declaration is defective so as to render the '616 patent invalid.

2.    Tillotson's claims for relief are barred by laches and/or estoppel.

3.    The '616 patent is unenforceable by reason of the inequitable conduct of Tillotson, the inventors and/or their attorneys by reason, inter alia, of the following:

(a)    During the prosecution of the '616 patent there was an indefiniteness objection in the prosecution of a European counterpart of the '616 patent, where the examiner in the EPO seriously objected to portions of claim 1 of the European counterpart that are similar to claim 1 of the '616 patent.  In particular, the EPO objected that the elastic properties of the material were defined by the result to be achieved, but that this functional definition omits

- 19 -

which type of "pressure" is meant and how and at which stretch it is measured. The EPO further

noted "[t]his functional feature of defining the elastic properties objected to above needs to be

clearly defined since it is the essential feature of the invention and is supposed to delimit the

subject-matter from the prior art."

      (b)    Tillotson and its attorneys who prosecuted the '616 patent knew

of this objection during the prosecution of the '616 patent, but withheld this information from

the PTO.

      (c)    This objection by the EPO was highly material information.

      (d)    Tillotson and its attorneys withheld this information from the

PTO with the intent to deceive or mislead the PTO.

      (e)    Tillotson filed the application for a reissue patent that led to the

'616 patent because, inter alia, it believed the original U.S. Patent No. 5,014,362 ("the '362

patent") to be partly inoperative or invalid by reason of Tillotson claiming in error more than

Tillotson had a right to claim in view of prior art that Tillotson claimed it was not aware of

until after the '362 patent issued.

      (f)    Pursuant to 35 U.S.C. § 251, the reissue of a defective patent is

only authorized when the error was "without deceptive intent."

      (g)    In an attempt to establish that the "error" was without deceptive

intent, Tillotson filed with the PTO a declaration by Neil E. Tillotson, one of the named inven-

tors. In the declaration, Mr. Tillotson represented that during the prosecution of the '362 patent

"neither the patent Applicant nor its attorneys were aware of the prior art" that rendered the '362

patent partly inoperative or invalid, which included two prior art products, the SOLVEX® glove

and the DERMA-THIN™ glove.

(h)    This representation was knowingly false.

(i)    This representation was highly material.

(j)    This representation was made with the intent to deceive or mislead the PTO.

(k)    The SOLVEX® and DERMA-THIN™ gloves were material to the patentability of the '362 patent.

(l)    Tillotson's failure to disclose the SOLVEX® and DERMA-THIN™ gloves during the prosecution of the '362 patent was with the intent to deceive or mislead the PTO.

(m)    Tillotson and its attorneys submitted test data to support claims that it was seeking in the reissue.

(n)    Tillotson and its attorneys knew that this test data was unreliable, but intentionally withheld that fact from the PTO.

(o)    The unreliability of the test data was highly material.

(p)    The withholding of the fact that the test data was unreliable was done with the intent to deceive or mislead the PTO.

4.    The equitable relief sought by Tillotson in this Tribunal is barred by unclean hands.

5.    To the extent Tillotson bases its claims against Ansell on gloves manufactured by Seal Polymer, those gloves are licensed.

WHEREFORE, Ansell requests that the United States International Trade Commission issue a Final Determination that the asserted claims of the '616 patent are invalid, unenforceable and not infringed by Ansell, and award such other relief as the Commission deems just and proper.

DATED:    March 11, 2008

Thomas B. Kenworthy
David W. Marston Jr.
Kenneth J. Davis
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001

Counsel for Respondents
Ansell Ltd., Ansell Healthcare Products
LLC, Ansell Protective Products Inc.,
and Ansell (Thailand) Ltd.

## VERIFICATION

I, CRAIG M. CAMERON, declare as follows:

1.    I am the Company Secretary of Ansell Ltd. and duly authorized to execute this verification on its behalf;

2.    I have read the Verified Response Of Respondents Ansell Ltd., Ansell Healthcare Products LLC, Ansell Protective Products Inc. And Ansell (Thailand) Ltd. To The Amended Complaint ("Response"), and am familiar with the allegations and statements contained therein;

3.    To the best of my knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the allegations and statements made in the Response are well-grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

4.    The Response is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of the investigation.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 11th day of March, 2008.

CRAIG M. CAMERON

# Exhibit H

| | |
|---|---|
| **Thomas B. Kenworthy**/PH/MLBLaw<br>03/17/2008 12:30 PM | To   gkaplan@kslaw.com, jtelep@kslaw.com |
| | cc   David W. Marston/PH/MLBLaw@MorganLewis, Kenneth J. Davis/PH/MLBLaw@MorganLewis, Rebecca Jill Hillyer/PH/MLBLaw |
| | bcc   breilly@ansell.com; mgilleece@ansell.com |
| | Subject   Certain Nitrile Gloves, Inv. Nos. 337-TA-608 & 612  -  TIME SENSITIVE PROPOSAL |

Gil & Jeff:

Although the Third Settlement Conference is not required to be held until April 11, if any settlement between Tillotson and Ansell is going to occur it will not happen unless it occurs by the end of this week and under the following terms:

(1)  Tillotson agrees to dismiss with prejudice in all forums all claims based on the '616 patent against all Ansell entities, and with respect to Ansell products, their suppliers, distributors and customers;

(2)  Tillotson agrees to release the Ansell entities their officers, directors, employees, customers, distributors and suppliers of all claims based on the alleged infringement of the '616 patent by reason of any Ansell product;

(3)  Tillotson agrees to reimburse Ansell for the additional costs it has been obliged to pay Seal Polymer as a result of Tillotson's claims and license under the '616 patent;

(4)  Tillotson agrees to grant to the Ansell entities a worldwide paid-up royalty-free license to make, have made, import, use, sell and offer for sale gloves falling within the scope of the '616 patent and any foreign counterpart;

(5)  Ansell Healthcare and Ansell Protective Products agree to dismiss with prejudice their claims against Tillotson in the Delaware Court;

(6)  The Ansell entities agree to release Tillotson, its officers, directors, employees and attorneys of all claims arising out of the enforcement of the '616 patent and the conduct of the Georgia, Delaware and ITC litigations; and

(7)  Ansell Ltd. agrees to withdraw all pending motions in the ITC.

This proposal will remain open until the close of business Friday, March 21.  During that period, the Ansell entities agree that they will not file a counterclaim in the ITC proceeding unless this offer has been rejected.

I would envision that if an agreement as outlined above is reached, there be a separate agreement to arbitrate such that the Amended Complaint against the Ansell entities in the ITC could be dismissed pursuant to Rule 210.21.

This is a proposal to be accepted or rejected by Tillotson.  We are not interested in discussing any counterproposals that would not include points (1) through (4) above.

Finally, in view of Order No. 63 on claim construction, we direct your attention to the recent decision in *Medtronic Navigation, Inc. v. BrainLAB AG*, No. 1:98-cv-01072, 2008 U.S. Dist. LEXIS 13483 (D. Colo. Feb. 12, 2008).

Tom

Thomas B. Kenworthy
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5702
(215) 963-5001 (fax)

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| TILLOTSON CORPORATION, d/b/a BEST MANUFACTURING COMPANY | ) ) ) |
| Plaintiff, | ) CIVIL ACTION FILE NO.: ) 4:07-CV-00193-RLV ) |
| v. | ) |
| SUPERMAX CORPORATION BHD., *et al.*; | ) ) |
| Defendants. | ) ) ) |

## TILLOTSON'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

Plaintiff Tillotson Corporation ("Tillotson") submits this memorandum in opposition to the motion to stay filed by Hartalega Holdings Bhd., Hartalega Sdn. Bhd., Kossan Rubber Industries Bhd., Laglove (M) Sdn. Bhd., Perusahaan Getah Asas Sdn. Bhd., PT Haloni Jane, PT Shamrock Manufacturing Corporation, Riverstone Resources Sdn. Bhd., YTY Holdings Sdn. Bhd., YTY Industry (Manjung) Sdn. Bhd., Smart Glove Corporation Sdn. Bhd., PT Smart Glove Indonesia, and Smart Glove Holdings Sdn. Bhd. (collectively "Defendants").

## INTRODUCTION

Defendants seek a statutory stay of this action under 28 U.S.C. § 1659, or in the alternative, they request that this Court enter a discretionary stay. Tillotson opposes Defendants' motion on two grounds. First, because of Defendants' delay in bringing this motion, 28 U.S.C. § 1659 is simply inapplicable. Second, Defendants have not met their burden of showing that they are entitled to a discretionary stay. Such a stay would also place an undue hardship on Tillotson.

## ARGUMENT

I.   DEFENDANTS' DELAY OF ALMOST ONE YEAR PRECLUDES
     APPLICATION OF 28 U.S.C. § 1659.

28 U.S.C. § 1659 provides in relevant part that:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under Section 337 . . . the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, *but only if such request is made within --*
> *(1) 30 days after the party is named as a respondent in the proceeding before the Commission, or*
> *(2) 30 days after the district court action is filed,*
> *whichever is later.*

28 U.S.C. § 1659(a) (2008) (emphasis added). Thus, Congress has placed express 30-day time limits on when a respondent at the International Trade Commission (the "ITC") may invoke 28 U.S.C. § 1659. *Id.* According to the legislative history

2

of 28 U.S.C. § 1659(a), these time limits were intended "[t]o avoid abuse of this provision and to encourage prompt adjudication in the district courts . . ." H.R. REP. NO. 103-826(I), at 141-142 (1994).

Here, because Defendants are well beyond the time limits of 28 U.S.C. § 1659, they are not entitled to the statutory stay that they request.    More particularly, Defendants were named as respondents at the ITC on June 28, 2007, the date that the ITC issued its Notice of Investigation.  The parties are now more than a year beyond that date.   Similarly, the instant action was filed on September 27, 2007.  Thus, the last date on which Defendants were entitled to a stay under 28 U.S.C. § 1659 was October 27, 2007 -- roughly 300 days ago.   Contrary to Defendants' arguments, they are not entitled to a statutory stay of this action. Permitting a stay under 28 U.S.C. § 1659 would undermine both the express language of this statue and the intent of Congress that 28 U.S.C. § 1659 not be abused.  Defendants' motion thus should be denied.

II.    RESPONDENTS HAVE NOT MET THEIR BURDEN OF SHOWING THAT A DISCRETIONARY STAY IS WARRANTED.

Though the mandatory stay provision of 28 U.S.C. § 1659 is inapplicable, this Court has "the inherent power to manage [its] docket and stay proceedings." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *see also Epistar Corp. v. Philips Lumileds Lighting Co., LLC*, No. C07-5194, 2008 WL 913321, at

*2 (N.D. Cal. April 2, 2008); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But in exercising its inherent power, a court must consider both the judicial efficiency of a stay and the relative interests of the parties. *Iljin USA v. NTN Corp.*, No. 06-10145, 2006 WL 568351, at *2 (E.D. Mich. Mar. 7, 2006). With respect to the parties' interests, a stay is inappropriate if it will unduly prejudice "or present a clear tactical disadvantage" to the non-movant. *Epistar*, 2008 WL 913321 at *2. The moving party must also establish "a clear case of hardship or inequity in being required to go forward . . . ." *Id.*

The moving party bears the burden of showing that a stay is warranted. *Am. Honda Motor Co., Inc. v. Coast Dist. Sys., Inc.*, No. C. 06-04752, 2007 WL 672521, at *1 (N.D. Cal. Feb. 26, 2007). Ultimately, Defendants must show that a stay (1) is proper to further judicial efficiency, (2) is proper to reduce any *significant* burden Defendants face in moving forward with the action, and (3) that a stay will not tactically disadvantage or prejudice Tillotson. *Micron Tech., Inc. v. Mosel Vitelic Corp.*, No. Civ. 98-0293, 1999 WL 458168, *4 (D. Idaho, Mar. 31, 1999). Defendants have failed to establish any of these factors.

A.    A Stay Of This Action Will Not Promote Judicial Efficiency.

In determining the appropriateness of a stay at a particular stage of the litigation, courts consider matters of judicial efficiency. These considerations

include whether there remains a need for substantial discovery, whether a trial date has been set, and whether simultaneous proceedings will ensue. *See e.g., Epistar*, 2008 WL 913321 at *2 (weighing the stage of the litigation, the duration of the stay, and the overlap between proceedings in considering motion to stay); *Tompkins Seals, Inc. v. The West Co.,* 22 U.S.P.Q. 469, 470 (E.D. Pa. 1985) (considering potential for parallel proceedings and attendant waste of judicial resources in granting stay).

As an initial matter, simultaneous proceedings are not at issue in this action. The ITC record was closed on May 30, 2008 and the ALJ's decision is expected seven days from today on August 25, 2008. The availability of a ruling from the ITC mitigates against a stay entered on the grounds of judicial efficiency. *Am. Honda*, 2007 WL 672521 at *2 (denying motion to stay when ITC proceeding would be resolved before trial date). And contrary to Defendants' arguments, there is no reason why this Court cannot benefit from the ALJ's claim construction order, the hearing transcript, and the ALJ's decision before this action proceeds to trial. The ALJ's decision will be available to this Court on August 25, one day before the due date for the parties' initial disclosures and commencement of discovery in this action.

With regard to discovery, the parties engaged in substantial discovery at the ITC. This included discovery related to patent infringement, invalidity, and unenforceability. Much of this discovery may be made available to the parties in this action.[1] As such, there does not exist a substantial need for discovery in this action. In fact, Tillotson expects that discovery in this action will be limited to the amount of Tillotson's damages.[2]

Notably, while the Court and the parties may be able to rely on the record from the ITC, the ITC's ruling is not binding on this Court. *See e.g.*, *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) (noting that "Congress did not intend decisions of the ITC on patent issues to have preclusive effect."); *Tex. Instruments, Inc. v. U.S.I.T.C.*, 851 F.2d 342, 344 (Fed. Cir. 1988) ("[T]he ITC's determinations regarding patent issues should be given no res judicata or collateral estoppel effect[.]"); *Am. Honda*, 2007 WL 672521, at *2. Thus, there is no reason to delay this litigation and await a ruling that is not precedential or even dispositive. In short, given the late stage of the ITC proceedings, the very early stage of these proceedings, the non-binding effect of

---

[1] Whether discovery obtained at the ITC may be used in this action will depend on the language of the parties' forthcoming protective order and whether the parties can negotiate any type of mutually-agreeable cross-use provision.
[2] Since damages are not available at the ITC, no discovery at the ITC was specifically directed to damages.

any ITC determination, and Tillotson's intention to pursue this action in this forum, judicial economy will not be served by postponement. Defendants have not met their burden of showing otherwise.

B.    Defendants Have Failed To Establish That Allowing This Action To Proceed Will Present A Clear Hardship.

It is long-standing precedent that "the suppliant for a stay *must make out a clear case of hardship* or inequity in being required to go forward, if there is even a fair possibility that the stay for which one prays will work damage to some one else." *Landis*, 299 U.S. at 255 (emphasis added); *see also GFL Advantage Fund v. Colkitt*, 216 F.R.D. 189, 193 (D.C. 2003) ("The party requesting such a stay must make out a clear case of hardship or inequity in order to prevail."). As discussed below, there is more than a "fair possibility" that Tillotson will be damaged by entry of a stay of this action. Thus, under the *Landis* standard, Defendants must show "clear hardship" to warrant a stay of this action.

Here, Defendants have failed to make such a showing. Perhaps the best indication that Defendants will not be disadvantaged by proceeding with this action is the fact that they have waited so long to request a stay. As noted above, the ITC issued its Notice of Investigation on June 28, 2007. Then, on September 27, 2007, Tillotson filed this action. Defendants Smart Glove Corporation Sdn. Bhd., PT Smart Glove Indonesia, and Smart Glove Holdings Sdn. Bhd. have known about

this action since they were served with the Complaint in December 2007. (*See* D.E. 10). The other Defendants have also known about this action since at least December 2007 when they were provided a copy of the Complaint by international mail. (*See* D.E. 19 (#2) at 4-5). Nevertheless, Defendants have only now moved to stay this action. Furthermore, over the course of this litigation, Defendants and Tillotson have filed four joint motions for the extension of time for the commencement of discovery and attendant deadlines. During this time, Defendants failed to seek a stay of this action.

In seeking a stay now, Defendants argue only that they will be harmed because "there will be similar and overlapping issues addressed in both proceedings." (*See* D.E. 60 at 14). To the extent that any duplicative litigation will occur, that duplication is unavoidable and a stay will only prolong that duplication. Besides, the ITC action is almost over -- the trial occurred in May and the ALJ's decision is due on August 25. In essence, it appears that Defendants are suggesting that *actual litigation* in this Court will present a hardship. That argument is unpersuasive, particularly because "the hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay." *Am. Honda*, 2007 WL 672521, at *2 (citing *Lockyer v. Mirant*, 398 F.33d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not

constitute a 'clear case of hardship or inequity.'")).  In other words, the only

hardship Defendants point to is the unavoidable hardship that accompanies all

litigation.  Without more, Defendants have failed to meet the heightened burden of

"a clear case of hardship."

    C.    Tillotson Will Be Unduly Prejudiced And Tactically
           Disadvantaged By A Stay Of This Action.

Defendants incorrectly argue that, by moving for a General Exclusion Order

in the ITC, Tillotson has alleviated any disadvantage that Tillotson will suffer if

this action is stayed.  Yet even if this order is granted, it will not address the

damages that Tillotson has incurred because of Defendants' extensive infringement

of the patent-at-issue.  Rather, the entry of a General Exclusion Order will only

stem the tide of infringing gloves that will enter the United States *after* entry of the

order.  It will not compensate Tillotson for Defendants' past damages or preclude

the sale of infringing gloves already imported by Defendants.

A stay of this action -- if combined with a General Exclusion Order -- may

also erode Tillotson's ability to collect damages from the Defendants in the future.

More particularly, Defendants import into the United States and sell a vast number

of infringing gloves.  A General Exclusion Order would inevitably cut into this

large revenue stream and may potentially cause a number of the Defendants to

rapidly become financially insolvent.  Other Defendants may attempt to

reorganize their assets in an effort to evade liability. *See Tillotson v. Omni Int'l, LLC & Omnigrace (Thailand) Ltd.*, Civ. No. 4:02-CV-261 (HLM) (N.D. Ga. Nov. 7, 2002) (Omnigrace filed for bankruptcy reorganization after Tillotson sued); *Tillotson v. Shijiazhuang Hongray Plastic Prods., Ltd., et. al.*, No. 4:05-CV-00118 (N.D. Ga. Sept. 29, 2005) (after engaging in settlement negotiations with Tillotson and before answering the complaint, Defendants Island Dental and Darby Dental sold their company assets for $51.5 million to Henry Schein). A stay of this action while Defendants either become financially insolvent or reorganize their assets will unduly prejudice Tillotson.

It is also incorrect for Defendants to accuse Tillotson of any delay in service of process in this action. (*See* D.E. at 12). As established in Tillotson's January 24, 2008 Motion to Permit Alternate Methods of Service, Tillotson never contributed to any delay in service. (*See* D.E. 19 at 2-6). Rather, Tillotson's ability to effect service on certain Defendants[3] was obstructed by those Defendants. (*Id.* at 3-5). When the Court granted Tillotson's Motion to Permit Alternate Methods of Service on May 21, 2008, Tillotson moved swiftly to effect service on

---

[3] Those defendants include Hartalega Holdings Bhd., Hartalega Sdn. Bhd., Kossan Rubber Industries Bhd., Laglove (M) Sdn. Bhd., Perusahaan Getah Asas Sdn. Bhd., PT Haloni Jane, PT Shamrock Manufacturing Corporation, Riverstone Resources Sdn. Bhd., YTY Holdings Sdn. Bhd., and YTY Industry (Manjung) Sdn. Bhd.

the subject Defendants.  (*See* D.E. at 33, 38-47).  Tillotson did not delay as Defendants contend.

Defendants' reliance on Tillotson's motion to stay in separate Delaware declaratory judgment actions is similarly misplaced.  (*See* D.E. 60 at 13).  As an initial matter, those actions against Tillotson were filed by plaintiffs that have never been parties to this action.  *See Ansell Healthcare Prods. LLC v. Tillotson*, C.A. No. 06-527 (D. Del. Aug. 25, 2006); *Ansell Protective Prods. v. Tillotson*, C.A. No. 07-093 (D. Del. Feb. 20, 2007).  Those actions also involve different gloves than those that are at issue in this case.  Also, Defendants ignore that Tillotson filed its motion to stay those Delaware actions on July 12, 2007 -- less than one month after the initiation of the ITC investigation on June 28, 2007.  Thus, unlike the stay that Defendants request, there existed the potential in the Delaware actions to conserve judicial and party resources.  Defendants also neglect to mention that the plaintiffs in the Delaware actions -- not Tillotson -- ultimately stayed those cases under 28 U.S.C. § 1659 (a recourse that is inapplicable to Defendants for the reasons explained above).

Lastly, a stay is particularly inappropriate because the Defendants, collectively, are still manufacturing, importing, and selling the infringing gloves at issue.  Any delay of this action, particularly a delay as lengthy as Defendants

request, provides Defendants with additional time to leverage infringement in their favor as the expiration date of the '616 Patent approaches in May 2010. Beyond that date, Tillotson has little opportunity for meaningful recourse. Under these and the facts set forth above, a delay of this litigation will prejudice and tactically disadvantage Tillotson.

## CONCLUSION

Defendants are not entitled to a statutory stay of this action because they failed to satisfy the mandatory time-limit provisions of 28 U.S.C. §1659. Further, Defendants have not met their burden of showing that a discretionary stay of this action is warranted. Such a stay would not promote judicial efficiency and would work an unnecessary and especially prejudicial hardship on Tillotson. Defendants' failure to show that their own hardship in moving forward with this litigation further mitigates against a discretionary stay. For these reasons, Tillotson respectfully requests that the Court deny Defendants' motion for a stay of this proceeding.

<u>CERTICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-face and size limitations set forth in Local Rules 5.1(B) and 7.1(D). This brief was prepared in Times New Roman, 14 point font.

Respectfully submitted, this 18th of August, 2008.

KING & SPALDING LLP

<u>/s/ Katrina M. Quicker</u>
Anthony B. Askew (Ga. Bar No. 025300)
Stephen M. Schaetzel (Ga. Bar No. 628653)
Katrina M. Quicker (Ga. Bar No. 590859)
Jason M. Pass (Ga. Bar No. 140972)
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5135
*Attorneys for Plaintiff Tillotson Corporation*

CERTIFICATE OF SERVICE

I certify that, on this day, a copy of TILLOTSON'S MEMORANDUM IN

OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS was

electronically filed with the Clerk of Court using the CM/ECF System, which will

automatically send electronic mail notification of such filing to the following

attorneys of record:

> Perry R. Clark
> Kirkland & Ellis LLP
> 555 California Street
> San Francisco, CA 94104
> 415-439-1400
>
> Sarah L. Forney
> Kirkland & Ellis LLP
> 555 California Street
> San Francisco, CA 94104
> 415-439-1400
>
> Joseph Duane Wargo
> Wargo & French
> 1170 Peachtree Street, NE
> Suite 2020
> Atlanta, GA 30309
> 404-853-1500
>
> Sarah-Nell Walsh
> Wargo & French LLP
> 1170 Peachtree Street, N.E.
> Suite 2020
> Atlanta, GA  30309
> (404) 853-1500

Michael Kovaka
Dow Lohnes, PLLC
Six Concourse Parkway
Atlanta, GA 30328-6117
(770) 901-8910

Scott M. Daniels
Westerman, Hattori, Daniels & Adrian
Suite 700
1250 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 822-1100

This 18th day of August, 2008.

_/s/ Katrina M. Quicker_
Katrina M. Quicker

# Exhibit J

Case 1:08-cv-00561-UNA    Document 27-11    Filed 08/22/2008    Page 2 of 2

BLOG HOME      CONTACT US

Home > D. Del. News and Events Featured > Six New Jersey District Judges Designated to Sit in Delaware

« Previous | Home | Next »

# Six New Jersey District Judges Designated to Sit in Delaware

Posted In: D. Del. News and Events, Featured on August 11, 2008 By Andrew Lundgren

On the heels of the announcement that judges from the Eastern District of Pennsylvania will begin hearing cases filed in Delaware, Third Circuit Chief Judge Anthony J. Scirica has designated six judges from the District of New Jersey to do the same. The designation orders, effective last Thursday, increase the total non-Delaware judicial delegation to twelve (navigate to revised "7/28/2008" link).

According to the Wilmington News Journal, every fourth civil case will be assigned to one of the designated district judges. Although the judges will likely hear pretrial matters in either Pennsylvania or New Jersey, trials will be conducted in Delaware.

The six designated district judges from New Jersey are: Hon. Renee Marie Bumb, Hon. Mary Little Cooper, Hon. Noel L. Hillman, Hon. Robert B. Kugler, Hon. Joel A. Pisano, and Hon. Jerome B. Simandle.



« Previous | Home | Next »